Harry "Hap" P. Weitzel (SBN 149934)
Jeffrey M. Goldman (SBN 233840)
PEPPER HAMILTON LLP
4 Park Plaza, Suite 1200
Irvine, CA 92614-5955
Tel.:  949.567.3500
Fax:  949.863.0151
weitzelh@pepperlaw.com

M. Kelly Tillery[1]
Noah S. Robbins[1]
Sean P. McConnell[1]
PEPPER HAMILTON LLP
3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, PA 19103-2799
Tel:  215.981.4000
Fax:  215.981.4750
tilleryk@pepperlaw.com
robbinsn@pepperlaw.com
mcconnells@pepperlaw.com

Attorneys for Plaintiffs ADT Services A.G. and
ADT Security Services, Inc.

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF CALIFORNIA**

|  |  |
|---|---|
| ADT SERVICES A.G., and<br>ADT SECURITY SERVICES, INC.,<br><br>    Plaintiffs,<br><br>  vs.<br><br>SKYLINE SECURITY MANAGEMENT,<br>INC. (aka SIMPLY ALARMS), EDWIN<br>ARROYAVE, VICTOR MARQUEZ, ALI<br>BATIARA and ADDISON AMMO,<br><br>    Defendants. | CIVIL ACTION No.<br><br><br>**COMPLAINT**<br><br><br>JURY TRIAL DEMANDED |

ADT Services A.G. ("ADT A.G.") and ADT Security Services, Inc. ("ADT")

(collectively, "Plaintiffs"), by and through its undersigned counsel, bring this action against

_____

[1] Pro Hac Vice Applications forthcoming.

Defendants, SKYLINE SECURITY MANAGEMENT INC. ("SKYLINE"), EDWIN ARROYAVE ("ARROYAVE"), VICTOR MARQUEZ ("MARQUEZ"), ALI BATIARA ("BATIARA"), and ADDISON AMMO ("AMMO") for: (1) Federal Trademark Infringement under § 1125(a) of the Lanham Act; (2) Unfair Competition and False Advertising under § 1125(a) of the Lanham Act; (3) Federal Trademark Dilution under § 1125(c) of the Lanham Act; (4) Violation of the California Unfair Competition Statutes; (5) Violation of the California False Advertising Statute; (6) Trade Libel/Trade Disparagement under California Law; (7) Intentional Interference with Current Economic Advantage under California Law; (8) Intentional Interference with Prospective Economic Advantage under California Law; (9) Unfair Competition under California Common Law; (10) Fraud/Deceit under California Statutory Law; and (11) Fraud under California Common Law.

Plaintiff seeks damages, treble damages, attorneys' fees and costs, lost profits, punitive damages, prejudgment interest and injunctive relief to enjoin Defendants from continuing to engage in the unlawful activities described herein.

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over Plaintiffs' Lanham Act claims pursuant to Title 28 U.S.C. §§ 1331 and § 1338.

2.      This Court's jurisdiction over Plaintiffs' State Law claims are supported by Supplemental Jurisdiction as set forth in Title 28 U.S.C. § 1367.

3.      Venue is proper in this Court pursuant to Title 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District.

4.      Intradistrict Assignment – Pursuant to L.R. 120(d), this civil action arises in Stanislaus County where a substantial part of the events or omissions which gave rise to the claim occurred.  This action is appropriately assigned to the Fresno Division.

**THE PARTIES**

5.      Plaintiff ADT Services A.G. is a corporation organized under the laws of Switzerland with its principal place of business located at Freier Platz 10, CH-8200 Schaffhausen, Switzerland.

6.      Plaintiff ADT Security Services, Inc. is a Delaware corporation with its principal place of business at One Town Center Road, Boca Raton, Florida 33486.  ADT is a Licensee of ADT A.G. and is in the business of providing residential and commercial security monitoring and related services.

7.      Upon information and belief, SKYLINE is a California corporation with its principal place of business at 8211 Firestone Boulevard, Downey, California 90241.  SKYLINE provides security services for homes in, at least, California, and is a competitor of ADT.

8.      Upon information and belief, SKYLINE is also registered with the Public Safety and Security Board in Arlington, Texas.

9.      Upon information and belief, SKYLINE also represents itself as "SIMPLY ALARMS."

10.     Upon information and belief, ARROYAVE is the President of SKYLINE.

11.     Upon information and belief, MARQUEZ is an individual who resides in California and who is an employee of SKYLINE in California or alternatively is an independent residential security systems contractor acting as an agent of SKYLINE in, at least, California.

12.     Upon information and belief, BATIARA is an individual who resides in California and who is an employee of SKYLINE in California or alternatively is an independent residential security systems contractor acting as an agent of SKYLINE in, at least, California.

13.     Upon information and belief, AMMO is an individual who resides in California

and who is an employee of SKYLINE in California or alternatively is an independent residential security systems contractor acting as an agent of SKYLINE in, at least, California.

## RELEVANT FACTS

14.     In 1874, 57 diverse "district" telegraph delivery companies merged to create the new American District Telegraph Company – the forerunner to today's ADT.

15.     ADT Services A.G. ("ADT A.G.") is a Swiss company that owns the worldwide trademark rights in the ADT marks.

16.     ADT A.G. owns numerous Federal Registrations and Common Law rights in and to the ADT marks in the United States, including, but not limited to, the following trademark ("ADT Trademarks") that are registered with the United States Patent and Trademark Office ("USPTO"):

| Mark | Registration No. |
|------|------------------|
| ADT | 0710708 |
| ADT | 1034716 |
| ADT | 0710507 |
| ADT & Design | 3511264 |

Information regarding these registrations from the USPTO is attached as Exhibit "A," Declaration of Sean P. McConnell, Esq.

17.     ADT A.G.'s licensees provide, install and service electronic security systems, fire protection, detection and suppression systems, and provide alarm monitoring services for these systems throughout the world.  Consequently, the ADT brand has become well known to consumers as signifying the world leader in fire protection and electronic security services.

18.     ADT Security Services, Inc. ("ADT") is a Licensee of the U.S. Federal Trademark Rights for the ADT name and mark and Federal Registrations including, but not limited to the ADT Trademarks.

19.     ADT is the largest and best-known provider of electronic security services in the

United States.

20.     ADT provides security services for homes and businesses around the country and, of particular relevance to this matter, throughout California.

21.     No less than 7.4 million commercial, government and residential customers throughout the world receive security services provided under the ADT name and mark. Plaintiffs' total security solutions include intrusion, closed circuit television, access control, critical condition monitoring, electronic article surveillance and integrated systems.  In the U.S. alone, ADT receives over 16 million alarm signals per year warning of a threat to people and property.

22.     ADT A.G. is one of the largest electronic security services providers in the world and has enjoyed substantial sales.

23.     ADT is one of the largest electronic security services providers in the United States and has likewise enjoyed substantial sales.

24.     ADT sells home security products and services in this District and throughout the United States.  ADT manufactures and sells those products and services under the ADT name and mark and the ADT Trademarks.  ADT A.G. and ADT's services are well known and of superior quality.

25.     The ADT name and mark and the ADT Trademarks indicate the origin of Plaintiffs' products and services, which purchasers rely upon and recognize as a symbol of and assurance as to the quality of those products and services.

26.     ADT has extensively sold its products and services under the ADT Trademarks throughout the United States.

27.     ADT has advertised its products and services bearing the ADT Trademarks widely to the purchasing public in the United States by all means and all types of media,

including but not limited to, magazines, trade publications, marketing brochures, television, and websites long prior to Defendants' acts complained of by Plaintiffs.

28.     Plaintiffs' products and services sold under the ADT name and mark and the ADT Trademarks, by reason of their high quality of components, systems, and services, have come to be known to the purchasing public and the trade as being of the highest quality, sold under the highest standard of manufacture, marketing, and good merchandising and with the highest quality customer service conditions.  As a result thereof, the ADT name and mark and the ADT Trademarks, as well as the goodwill associated with them are of tremendous value to Plaintiffs.

29.     Plaintiffs have established and maintained high quality standards for the products and services offered under the ADT name and mark and the ADT Trademarks in the United States, and has won numerous awards for its products.

30.     By virtue of the notoriety and recognition of the ADT name and mark and the ADT Trademarks, together with the wide geographic distribution and extensive sale of products and services bearing these marks, the ADT name and mark and the ADT Trademarks have developed secondary meaning and significance in the minds of the purchasing public.  Products and services that bear the ADT name and mark or the ADT Trademarks are immediately associated with Plaintiffs by the purchasing public and trade.

31.     The ADT name and mark and the ADT Trademarks are distinctive, have been used throughout the United States and the world, and are well known to the trade and members of the purchasing public.  The public generally associates and identifies the ADT name and mak and the ADT Trademarks with the high reputation and quality of Plaintiffs.

32.     The ADT name and mark and the ADT Trademarks have acquired significant secondary meaning and have not been diluted.

33.     ADT has used the ADT name and mark and the ADT Trademarks continuously in the United States.

34.     The ADT name and mark and the ADT Trademarks are famous and distinctive, and were so long before Defendants' unlawful use thereof as described more particularly below.

35.     The ADT name and mark and the ADT Trademarks are in full force and effect, are used nationwide by ADT and have never been abandoned.  Their potential dilution would be detrimental to Plaintiffs.

36.     Plaintiffs have spent millions of dollars to establish and enforce the ADT name and mark and the ADT Trademarks and Plaintiffs' reputation in the United States and abroad. Plaintiffs intend to preserve and maintain their rights to the ADT name and mark and the ADT Trademarks and to continues of them in connection with the manufacture, sale, licensing, and merchandising of a wide variety of authorized goods, including the goods and services listed in the Federal Registrations.

37.     SKYLINE is a California corporation with its principal place of business at 8211 Firestone Boulevard, 1st Floor, Downey, California 90241.

38.     SKYLINE also provides security services for homes in California and is a competitor of ADT.

39.     Upon information and belief, SKYLINE, through its sales representatives, including, but not limited to, BATIARA, MARQUEZ, and AMMO, is engaged in a systematic effort to steal ADT Customers by falsely representing itself as ADT or as being affiliated with ADT.

40.     Upon information and belief, Defendants are using the ADT name and mark and the ADT Trademarks without permission and contrary to federal and state law, as more fully outlined below.

**SKYLINE'S Unlawful Conduct In 2010**

41.     As part of its regular operations, ADT collects customer complaints related to misleading and deceptive sales tactics that are employed by competing alarm companies.  The complaints collected include descriptions of unlawful efforts made by ADT competitors who are attempting to steal ADT Customers.  *See* Exhibit "B,"  Declaration of June Adams, Esq.

42.     ADT began receiving customer complaints involving SKYLINE in 2010.

43.     From May to July 2010, ADT received five (5) customer complaints, each involving SKYLINE sales representatives who were engaging in efforts to steal ADT's business through an unlawful campaign to mislead ADT Customers into believing that either the SKYLINE representative worked for ADT, or that ADT had been "taken over" or "bought out" by SKYLINE and was therefore switching ADT Customers' accounts to SKYLINE.

The 2010 customer complaints compiled involving SKYLINE included the following:

44.     On or about May 20, 2010, ADT Employee, Sharon Watkins received a complaint from ADT Customer, Lois Dodds of Tustin, California.  Ms. Dodds reported that she was visited at her residence by a SKYLINE representative claiming to be the manufacturer of ADT equipment, who was there to update the ADT equipment in Ms. Dodds' home.  The representative did not have any ADT-branded equipment to install and left the house without making any changes to Ms. Dodds' ADT system.  *See* Exhibit "B."

45.     On or about June 8, 2010, ADT Employee, Michael Schultz received a complaint involving a SKYLINE representative claiming to be an authorized ADT dealer.  *See* Exhibit "B."

46.     On or about July 1, 2010, ADT Customer, Maria Rawald of Los Angeles, California, reported a representative from SKYLINE came to her residence claiming to be

working for ADT, who was there to upgrade the ADT equipment in Ms. Rawald's home.  The SKYLINE employee eventually conceded that he was not an employee of ADT.  *See* Exhibit "B."

47.    On or about May 12, 2010, ADT Employee, Sharon Watkins received a complaint from ADT Customer, Patricia Detweiler of Santa Ana, California.   Ms. Detweiler reported a representative from SKYLINE came to her residence claiming to be ADT to check and update her security system.  Ms. Detweiler discovered the representative was not from ADT only after he removed the ADT equipment and signs from Ms. Detweiler's home.   When Ms. Detweiler attempted to cancel her service with SKYLINE, the SKYLINE representative on the phone told Ms. Detweiler that she was legally bound to SKYLINE because she had signed a contract.  *See* Exhibit "B."

48.    On or about June 1, 2010, ADT Employee, Del Nelson received a complaint from ADT Customer, Paul Nelson of Anaheim, California.   Mr. Nelson reported a SKYLINE representative had come to his residence claiming to be a representative of ADT to upgrade his security system.  As a result, the ADT system was replaced with one monitored by Monitronics, another alarm company.  *See* Exhibit "B."

49.    In October 2010, ADT initially attempted to stop this misconduct by sending a letter to SKYLINE.  ADT's counsel at the time noted that SKYLINE was improperly using and was not authorized to use ADT's name and mark in marketing its security systems.  *See* Exhibit "B."

50.    SKYLINE responded to this letter, stating that it had informed its sales representatives that no further use of the ADT name or mark was permitted in marketing SKYLINE's security systems.  *See* Exhibit "B."

51.    ADT trusted that SKYLINE would be true to its word and cease its deceptive sales activities.

**Defendants' Unlawful Conduct In 2011**

52.     However, SKYLINE resumed its deceptive sales practices again in 2011. Beginning in March 2011, ADT began to receive a series of new customer complaints involving SKYLINE representatives using the same kind of deceptive and misleading sales tactics.

53.     From March to May 2011, ADT received seventeen (17) customer complaints, each describing a deceptive or misleading sales and marketing effort conducted by or on behalf of SKYLINE.  *See* Exhibit "B."

54.     ADT received seven (7) customer complaints involving a SKYLINE representative who called the ADT Customer and ten (10) customer complaints involving a SKYLINE representative who made a door-to-door visit to the ADT Customer's home or business.  *See* Exhibit "B."

The 2011 telephone customer complaints involving SKYLINE included the following:

55.     On or about April 13, 2011, ADT received a complaint from ADT Customer, Patty Goble of San Pedro, California.  Ms. Goble reported receiving a call from Skyline Security at the following phone number - 253-736-2901.  The Skyline representative told Ms. Goble that he knew she was an ADT customer and how old her system was and that her security system was not up to date.  Ms. Goble was concerned that Skyline had her personal information because her phone number was not listed.  Ms. Goble also believed Skyline was taping the phone call.  Ms. Goble told the representative not to call anymore, that she would discuss the matter with her husband and call back the representative if she wanted to learn more about options from Skyline. Despite being told not to call again, a representative from Skyline called from the same number at least one more time within two weeks of the first call.  *See* Exhibit "B."

56.     On or about April 18, 2011, ADT Employee, Sharon Watkins received a complaint from ADT Customer, Jeanine Leedom of Foothill Ranch, California.  Ms. Leedom reported that

she was contacted by a SKYLINE representative who knew how long Ms. Leedon had been an ADT customer and who could describe the exact type of security system that Ms. Leedon had installed. The SKYLINE representative also told Ms. Leedom that her ADT system was not safe. *See* Exhibit "B."

57.    On or about April 20, 2011, ADT Employee, Sharon Watkins received a complaint from ADT Customer, Bob Anthis of Dana Point, California.  Mr. Anthis reported that a SKYLINE representative called his home and misled Mr. Anthis into believing the SKYLINE representative was working for or on behalf of ADT.  *See* Exhibit "B."

58.    On or about April 21, 2011, ADT Employee, Sharon Watkins received a complaint from ADT Customer, Hansen Ho of Diamond Bar, California.  Mr. Ho reported that he had been contacted by a SKYLINE representative who claimed that SKYLINE had taken over ADT customers and that Mr. Ho's home was without proper protection.  *See* Exhibit "B."

59.    On or about May 5, 2011, ADT Employee, Heather Page received a complaint from ADT Customers, Mr. & Mrs. Ronald Ruther, of Cowan Heights, California.  The Ruthers reported that a representative from SKYLINE had called their residence claiming that ADT had been sued by the State of California and that the Ruthers no longer had proper security coverage for their home.  *See* Exhibit "B."

60.    On or about April 28, 2011, ADT received a complaint from ADT Customer, Brian Nixon of Long Beach, California.  Mr. Nixon has been contacted by a very demanding and pushy SKYLINE representative on his unlisted cellular phone.  The SKYLINE representative also indicated that SKYLINE went by the name SIMPLY ALARMS.  The SKYLINE representative described the exact type of ADT system installed in Mr. Nixon's residence and identified the year it was installed.  The SKYLINE representative told Mr. Nixon this ADT system would not protect him.  *See* Exhibit "B."

61.     On or about May 16, 2011, ADT received a complaint from ADT Customer, Neil Korneff of Diamond Bar, California.  Mr. Korneff reported that he had been contacted by a SKYLINE representative who described Mr. Korneff's personal information and who wanted to "upgrade" Mr. Korneff's security system.  *See* Exhibit "B."

62.     The door-to-door customer complaints include SKYLINE's more brazenly fraudulent sales tactics.  *See* Exhibit "B."

The 2011 door-to-door customer complaints involving SKYLINE included the following:

63.     On or about May 7, 2011, ADT Employee, Harold F. Johnson received a complaint from ADT Customer, Ruth Bermudez of Santa Ana, California.  Ms. Bermudez, a Spanish speaking customer, was visited at her home by SKYLINE representatives who told her to cancel her contract with ADT.  The SKYLINE representatives then switched her equipment and service to SKYLINE despite her desire to remain with ADT.  *See* Exhibit "B."

64.     On or about April 20, 2011, ADT Employee, Addison Perez received a complaint from ADT Customers Jim and Shawna Milner of Huntington Beach, California.  The Milners were contacted by a SKYLINE representative who described the type of ADT system the Milners had installed in their home and identified the date on which the system was installed.  The SKYLINE representative also identified the Milner's unlisted telephone number.  The Milners were very upset that SKYLINE had secured all of their personal information.  *See* Exhibit "B."

65.     On or about April 25, 2011, ADT Employee, Sharon Watkins received a complaint from ADT Customer, Marsha King of Los Angeles, California.  Ms. King reported that she had been visited by SKYLINE representatives who told her that her home was in jeopardy of a break-in.  The SKYLINE representatives described Ms. King's personal information including how long she had been an ADT Customer.  The SKYLINE representatives told Ms. King that ADT was endorsing SKYLINE and encouraging customers to sign with SKYLINE.  *See* Exhibit "B."

66.     On or about May 9, 2011, ADT Employee, Harold Johnson received a complaint from the Josephine Beauty Salon in San Antonio, Texas.  The Salon, an ADT Business Customer, reported that it was visited by a SKYLINE representative who said that the Salon was now out of ADT's contract and that ADT had been stealing from the Salon.  *See* Exhibit "B."

67.     On or about April 20, 2011, ADT Employee, Sharon Watkins received a complaint from Louis Trembath of Santa Ana, California.  Ms. Trembath had received a visit to her home from SKYLINE representatives who described the type of ADT equipment Ms. Trembath had installed and identified the date on which the equipment was installed.  The SKYLINE representatives gave her the impression that SKYLINE was working for ADT.  The SKYLINE representatives also said that teenagers would cut her phone lines and that this would block her access from coming into or leaving her home.  *See* Exhibit "B."

68.     On or about May 19, 2011, ADT received a complaint from ADT Customer, Zerafina Garcia of Los Angeles, California.  Mr. Garcia had received a visit at his business, Expression Oaxaquena, from a female Skyline representative who told him ADT was going to close down and change its name to Skyline.  Because ADT was closing, his account was going to close and he would need to sign with Skyline. The Skyline representative told Mr. Garcia there would be no cancellation fees from ADT and that Skyline would provide him with new equipment.  However, after signing with Skyline, Mr. Garcia received an additional bill with what he believed were cancellation fees.  *See* Exhibit "B."

69.     On or about May 18, 2011, ADT received a complaint from ADT Customer, Armien Ross of Los Angeles, California.  Mr. Ross reported that he had received a visit from a SKYLINE representative named "Ali."  Ali told Mr. Ross that his home was subject to a big mandatory equipment upgrade that was to begin in July 2011.  Ali also stated that ADT would not have this upgraded equipment and that ADT and SKYLINE were working closely together.  Ali

told Mr. Ross not to contact ADT, that everything would be taken care of in regards to changing his system and service to SKYLINE.  *See* Exhibit "B."

70. Upon information and belief, the SKYLINE representative identified by Mr. Ross as "Ali" is Defendant, BATIARA.

71. Upon information and belief, BATIARA was also the subject of a complaint by another of ADT's Customers, Ms. Theresa Lowe.

**Ms. Theresa Lowe**

72. On or about May 18, 2011, ADT Customer, Theresa Lowe received a visit to her home in Los Angeles, California from a man named "Ali" [Batiara] who stated he was from "Skyline Security."  *See* Exhibit "C," Affidavit of Ms. Theresa Lowe.

73. BATIARA told Ms. Lowe that all of ADT's equipment would be "obsolete" in the next couple of months.  *See* Exhibit "C."

74. BATIARA further told Ms. Lowe that SKYLINE was the new security service provider in her area and that ADT was "handing over" customers in the area over to SKYLINE. *See* Exhibit "C."

75. Because of BATIARA's claim that SKYLINE was taking over ADT's customers, Ms. Lowe believed that SKYLINE and ALI were affiliated with ADT.  *See* Exhibit "C."

76. BATIARA also told Ms. Lowe that ADT would require her to "upgrade" her system, which would cost her thousands, if she did not switch over to SKYLINE.  *See* Exhibit "C."

77. BATIARA further told Ms. Lowe not to contact ADT, that SKYLINE and ADT were working "closely together" on the upgrades, and that SKYLINE would handle everything related to the cancellation of her current ADT service.  *See* Exhibit "C."

78. Ms. Lowe did not sign up to do the "upgrade" with SKYLINE as BATIARA had

requested.  *See* Exhibit "C."

79.    Ms. Lowe did speak to ADT Customer Service about this incident.  *See* Exhibit "C."

80.    Ms. Lowe has been an ADT Customer since 2005, had no reason to leave ADT and remains a satisfied ADT Customer today.  *See* Exhibit "C."

### **SKYLINE Representatives Impersonating ADT Employees**

81.    SKYLINE'S most fraudulent activity involved SKYLINE representatives actually posing as ADT employees and using materials with branded with ADT's name and mark in order to gain access to an ADT Customer's residence.  Upon entry, the SKYLINE representative would attempt to switch out ADT equipment for SKYLINE equipment and confuse customers into signing agreements for SKYLINE's services.  *See* Exhibit "B."

82.    The following incidents are indicative of this patently false and misleading scheme.

### **Mr. Wesley Richert**

83.    On or about March 31, 2011, Wesley Richert, an ADT Customer, received a visit at his home in Stockton, California from two men wearing ADT badges around their necks.  *See* Exhibit "D," Affidavit of Mr. Wesley Richert.

84.    The men told Mr. Richert they were from "Skyline Security" and were there to upgrade his ADT system.  *See* Exhibit "D."

85.    One of the men gave Mr. Richert a business card that included an "Authorized Dealer ADT Security Systems" logo on it.  The name on the business card was that of Defendant, ADDISON AMMO.  *See* Exhibit "D."

86.    AMMO also provided Mr. Richert with a flyer that included several ADT logos.  *See* Exhibit "D."

87.     Mr. Richert believed AMMO and the other man were affiliated with ADT because each were wearing ADT badges, had ADT business cards, had disseminated a flyer with ADT logos, and had claimed to be at his house to upgrade his ADT security system.  *See* Exhibit "D."

88.     AMMO explained to Mr. Richert that ADT had partnered with Monotronics, another alarm company, and that SKYLINE was acting as a broker for both companies.  *See* Exhibit "D."

89.     AMMO had Mr. Richert sign paperwork and provided him a check and AMMO set up an appointment for the "upgrade" to Mr. Richert's ADT security system.  *See* Exhibit "D."

90.     After AMMO and the other man left, Mr. Richert was suspicious and called ADT's Customer Service Line.  *See* Exhibit "D."

91.     ADT Customer Service informed Mr. Richert that SKYLINE was <u>not</u> an ADT Authorized Dealer and was <u>not</u> affiliated with ADT.  *See* Exhibit "D."

92.     Mr. Richert was instructed by ADT Customer Service to cancel the paperwork with SKYLINE in order to continue service with ADT, if he wanted to remain an ADT Customer.  *See* Exhibit "D."

93.     Mr. Richert got off the telephone with ADT Customer Service and called the general manager for SKYLINE, whose name (Jerry S.) and number were listed on the flyer provided to Mr. Richert by AMMO, and canceled the contract with SKYLINE.  *See* Exhibit "D."

94.     Mr. Richert also made a stop payment order through his bank on the check he provided to AMMO.  *See* Exhibit "D."

95.     Mr. Richert has been a satisfied ADT Customer since 1990, and remains a satisfied ADT Customer at this time.

**Mr. Willie Hunter**

96.     On or about, May 5, 2011, ADT Customer, Willie Hunter, received a visit to his

home in Los Angeles, California from a man wearing a shirt with an ADT logo who was carrying an ADT badge that read ADT Authorized Dealer. *See* Exhibit "E," Affidavit of Mr. Willie Hunter.

97.   As an ADT Customer, Mr. Hunter believed this visit was in reference to his ADT security system. *See* Exhibit "E."

98.   The man wearing the shirt with the ADT logo introduced himself to Mr. Hunter as Defendant, Victor Marquez and stated that he was affiliated with ADT and was there to "upgrade" Mr. Hunter's ADT security system. *See* Exhibit "E."

99.   Mr. Hunter believed MARQUEZ was affiliated with ADT because MARQUEZ was wearing an ADT shirt and was carrying an ADT badge. *See* Exhibit "E."

100.   At MARQUEZ's request, Mr. Hunter signed some paperwork. *See* Exhibit "E."

101.   After signing the paperwork, MARQUEZ instructed Mr. Hunter to remove his ADT yard sign and replace it with a "Skyline Security" sign. *See* Exhibit "E."

102.   After MARQUEZ left, Mr. Hunter became suspicious and thought he had potentially been deceived. *See* Exhibit "E."

103.   Mr. Hunter reviewed the contract provided to him by MARQUEZ more closely and discovered the contract was with Skyline Security and not ADT. *See* Exhibit "E."

104.   Mr. Hunter called ADT Customer Service that same day and explained MARQUEZ's visit. *See* Exhibit "E."

105.   ADT Customer Service explained to Mr. Hunter that SKYLINE was <u>not</u> an Authorized ADT Dealer and that if Mr. Hunter wanted to continue to be an ADT Customer, he would have to cancel his paperwork with SKYLINE. *See* Exhibit "E."

106.   Mr. Hunter sent a cancellation letter to SKYLINE that same day, along with a copy of the contract that MARQUEZ had Mr. Hunter sign. *See* Exhibit "E."

COMPLAINT

107.   Mr. Hunter had no reason to leave ADT at the time of Mr. Marquez's visit.  Mr. Hunter has been as satisfied ADT Customer since 2006 and remains an ADT Customer today. *See* Exhibit "E."

**Plaintiff's Efforts In 2011 To Resolve Defendants' Misconduct**

108.   In June 2011, ADT attempted to resolve SKYLINE's misleading and deceptive sales practices by contacting Defendant, EDWIN ARROYAVE, the President for SKYLINE.

109.   ADT Assistant General Counsel, June Adams, Esquire spoke with ARROYAVE on or about June 7, 2011 to raise ADT's concerns over the misuse of ADT's trademarks on business cards, flyers and other promotional items by SKYLINE.  *See* Exhibit "B."

110.   Ms. Adams followed up this conversation with a letter to ARROYAVE on June 14, 2011 ("the June 14th Letter") reiterating ADT's concerns over the misuse of its trademarks and the misleading and deceptive practices that had been conducted by SKYLINE's sales representatives.  *See* Exhibit "B."

111.   The June 14th Letter also outlined what Ms. Adams believed was an agreement in principle wherein SKYLINE would among other things, investigate and report back to ADT any known past or present misuses of ADT's trademarks, any deceptive sales practices aimed at ADT Customers by SKYLINE representatives and a summary of those actions taken by SKYLINE to correct such instances.  *See* Exhibit "B."

112.   ARROYAVE responded to Ms. Adams with a letter on or about June 24, 2011 ("the June 24th Letter").  In the June 24th Letter, ARROYAVE explained that SKYLINE did not believe the agreement as proposed in the June 12th Letter was necessary because SKYLINE maintains and always enforces a zero-tolerance company policy prohibiting the use of company trademarks other than those of companies with which SKYLINE is currently doing business ("the Zero-Tolerance Policy").  *See* Exhibit "B."

113.    ARROYAVE claimed the Zero-Tolerance Policy is signed by company employees as well as independent contractors and sub-dealers who sell on behalf of SKYLINE.  *See* Exhibit "B."

114.    ARROYAVE also claimed that SKYLINE had the right to use the ADT name as a "sub-dealer."  *See* Exhibit "B."

115.    ARROYAVE requested ADT provide details related to any alleged incidents of misconduct so that SKYLINE could investigate the incidents and enforce its policy where appropriate.  *See* Exhibit "B."

116.    Counsel for ADT contacted ARROYAVE by written correspondence on or about July 12, 2011 ("the July 12th Letter") to request SKYLINE enter into a settlement agreement to resolve the matter and to provide ADT with some measure of assurance that SKYLINE's representatives would no longer engage in fraudulent and misleading conduct.  The letter also provided evidence of AMMO's misconduct, including a copy of the business card and flyers provided by AMMO to Mr. Richert.  *See* Exhibit "B."

117.    Counsel for SKYLINE responded to the July 12th Letter on or about July 29, 2011 (the July 29th Letter).  The July 29th Letter stated that SKYLINE had taken remedial action to correct any misuse of ADT trademarks by contacting the sales representatives who had used the offending materials, by having the offending materials destroyed and by implementing a new marketing collateral review policy.  *See* Exhibit "B."

118.    Despite SKYLINE's prior claim to always enforce its Zero-Tolerence Policy and despite describing the alleged termination of ten (10) SKYLINE employees in 2010 for violation of the Zero-Tolerance Policy, the July 29th Letter made it clear that neither MARQUEZ nor BATIARA had been terminated.  The July 29th Letter also made it clear that SKYLINE <u>still</u> maintained its relationship with AMMO as an independent contractor.  *See* Exhibit "B."

119.   The July 29th Letter also made it clear that SKYLINE was willing to agree in writing that it would not directly or indirectly misuse ADT's trademarks and would continue to enforce its policies concerning such misuse.  *See* Exhibit "B."

120.   Over the next few months, the parties continued to discuss the settlement agreement.  *See* Exhibit "B."

121.   In or around October 2011, Counsel for SKYLINE indicated that AMMO no longer worked with SKYLINE.  *See* Exhibit "B."

122.   Granted SKYLINE's alleged corrective actions and its apparent willingness to cooperate, ADT was beginning to believe that SKYLINE's deceptive sales activities had ended.

123.   On or about December 30, 2011, Counsel for ADT sent a proposed settlement agreement to counsel for SKYLINE, which ADT was content would bring a final resolution to SKYLINE's deceptive sales activities.  *See* Exhibit "B."

124.   On or about February 14, 2012, Counsel for SKYLINE responded that a settlement agreement was not needed given that SKYLINE had taken corrective action and that ADT had not suffered any damages or injury.  *See* Exhibit "B."

## **Defendants' Escalated Misconduct In 2012**

125.   However, SKYLINE's fraudulent activity <u>resumed</u> <u>again</u> in 2012, despite its representations that it was no longer using ADT's names and marks and would no longer mislead ADT Customers as part of its sales tactics.

126.   On or about February 20, 2012, ADT Customers, Hem and Kushma Sharma, received a visit from an unidentified Man and Woman.  The Woman carried an ADT bag and possessed an ADT nametag.  *See* Exhibit "F," Declaration of Hem Sharma.

127.   The Woman stated that she and the Man were at Mr. Sharma's residence to offer a promotion from ADT.  The promotion would add four (4) new alarm contacts and lower the

monitoring rate if Mr. Sherma signed some paperwork.  *See Exhibit "F."*

128.    Because the Woman had an ADT nametag and an ADT bag, Mr. Sharma believed she worked with ADT and the paperwork she presented was from ADT.  *See Exhibit "F."*

129.    After Mr. Sharma signed the paperwork, the Man who had accompanied the Woman with the ADT nametag began installing alarm equipment.  *See Exhibit "F."*

130.    Before the Man and Woman left the Sharma residence on February 20th, Mr. Sharma's wife, Kushma Sharma returned home.  *See Exhibit "G,"* Declaration of Kushma Sharma.

131.    Upon arrival Mrs. Sharma spoke to the Woman inside her home with a badge and a bag bearing an ADT logo.  *See Exhibit "G."*

132.    The Woman flashed her ADT badge at Mrs. Sharma and told her she was there with a promotion from ADT.  Mrs. Sharma could not identify the name on the badge, but did identify an ADT logo.  *See Exhibit "G."*

133.    Mrs. Sharma informed the Woman that she wanted to discuss the promotion with her children.  The Woman responded that everything was already signed and the new contacts would be installed with a new monitoring rate.  *See Exhibit "G."*

134.    Mrs. Sharma told the Woman she would be right back.  Mrs. Sharma left the room to put her purse down.  When she returned the Woman was gone.  *See Exhibit "G."*

135.    Later that day after the Woman and Man had left, Mr. Sharma's son, Kapeel Sharma, and daughter, Ranjana Sharma arrived at the Sharma resident and reviewed the paperwork that had been presented to and signed by their father.  The paperwork was not a contract with ADT, but rather a contract with "Skyline Security Management."  *See Exhibit "F"* and Exhibit "H," Declaration of Ranjana Sharma.

136.    Upon learning of the deception, Mr. Sharma told his daughter that he had not

wanted to change his security service from ADT.  *See* Exhibits "F" and "H."

137.   Mr. Sharma engaged the help of his son and daughter to correct the problem and reinstate his ADT service.  *See* Exhibits "F" and "H."

138.   Mr. Sharma's son called SKYLINE at the telephone number identified on the paperwork signed by Mr. Sharma.  He demanded the contract be cancelled and the new alarm equipment be removed from the Sharma residence.  *See* Exhibit "F."

139.   Mr. Sharma's daughter called her father's bank to put a stop payment on the checks Mr. Sharma had provided to the Man and Woman from SKYLINE earlier that day.  *See* Exhibit "F."

140.   Mr. Sharma's daughter, Ranjana Sharma also called ADT to report the incident. She reported that her father had not wanted to switch from ADT and requested ADT come to the Sharma house to reconnect and reinstate Mr. Sharma's service with ADT.  *See* Exhibit "H."

141.   On or about February 22, 2012, a Man returned to the Sharma residence wearing plain clothes and removed the panel that SKYLINE had installed.  *See* Exhibit "H."

142.   As the Man was leaving the Sharma Residence, an ADT Technician, Darren Harvey arrived at the Sharma residence to reconnect the ADT system.  *See* Exhibit "H" and Exhibit "I," Declaration of Darren Harvey.

143.   Mr. Harvey was shown into the Sharma residence by Ranjana Sharma, who identified herself as Hem Sharma's daughter.  Mr. Harvey installed a new security panel and reconnected Mr. Sharma's ADT service.  *See* Exhibit "I."

144.   During the visit, Ranjana Sharma explained to Mr. Harvey the person who had just left was removing an alarm system that had been installed by someone pretending to be ADT, and that this system had been installed a couple of days earlier by a sales representative who had been wearing items branded with the ADT logo.  *See* Exhibit "I."

145.   Mr. Harvey inspected the contract which had been presented to Mr. Sharma by the sales representatives said to have been wearing the ADT branded items.  The contract listed the alarm company as "Skyline Security Management" located at 8011 Firestone Boulevard, Downey California.  The SKYLINE representative listed on the contract was "ADDISON AMMO" with a phone number of (209) 499-6268 and an address of 2009 Elwin Way, Modesto, California 95350.  *See* Exhibit "I."

146.   After reviewing the contract, and while still at the Sharma Residence, Mr. Harvey contacted his ADT manager, Naser Rashid.  *See* Exhibit "I" and Exhibit "J," Declaration of Naser Rashid.

147.   Mr. Harvey reported to Mr. Rashid that two (2) SKYLINE sales representatives pretended to be ADT representatives and had convinced Mr. Sharma to sign a new contract with SKYLINE.  *See* Exhibit "J."

148.   Mr. Harvey provided to Mr. Rashid the contact information listed on the SKYLINE contract that had been signed by Mr. Sharma, including AMMO's name and phone number.  *See* Exhibit "J."

149.   After hanging up with Mr. Harvey, Mr. Rashid called (209) 499-6268.  The phone was answered by a man who said, "This is Addison."  *See* Exhibit "J."

150.   Mr. Rashid told the man on the phone who identified himself as "Addison" that "Sorry, I was trying to reach ADT."  *See* Exhibit "J."

151.   The man who identified himself as "Addison" responded, "I am ADT."  *See* Exhibit "J."

152.   Mr. Rashid proceeded to have a conversation with "Addison" about the installation and cost of an alarm system.  Throughout the conversation, "Addison" pretended to be with ADT.  *See* Exhibit "J."

153.    AMMO is not an ADT employee.  *See* Exhibit "J."

154.    Upon information and belief, AMMO continues to represent himself as working for ADT or being "with" ADT in selling security services and in recruiting potential employees.

**Better Business Bureau Record**

155.    The Better Business Bureau of California ("BBB") has recorded nineteen (19) consumer complaints against SKYLINE in the last three (3) years.  *See* Exhibit "A."

156.    Of those nineteen (19) complaints, twelve (12) of the complaints lodged against SKYLINE relate to "Advertising/Sales" issues.  *See* Exhibit "A."

157.    Of those twelve complaints related to "Advertising/Sales" issues, six (6) involved ADT or were directed at self-identified ADT Customers.  *See* Exhibit "A."

Complaints lodged with the BBB against SKYLINE which involved or were directed at ADT Customers include the following:

158.    On or about December 7, 2011, an ADT Customer switched services to SKYLINE based on an advertised price that was roughly $2/month less than the price he was paying to ADT.  However, once the customer signed with SKYLINE, the price was increased to roughly $1/month more than the price the customer had been paying with ADT.  *See* Exhibit "A."

159.    On or about August 10, 2010, an ADT Customer was approached at her home by a SKYLINE representative who said that ADT was going out of business and that SKYLINE was taking over for ADT.  *See* Exhibit "A."

160.    On or about July 13, 2010, a resident was approached by a SKYLINE representative who claimed to be from ADT and who was wearing the same color shirt as ADT representatives.  The representative was offering an "upgraded equipment" and had installers staged around the corner of the person's home.  *See* Exhibit "A."

161.    On or about June 8, 2009, an ADT Customer was approached at his residence by

individuals from SKYLINE who were wearing ADT shirts and who were offering to "upgrade" the customer's ADT security system.  The customer later learned their service was switched to Monotronics.  *See* Exhibit "A."

162.   On or about March 18, 2009, a person reported receiving a flyer in the mail with an ADT logo.  Later a SKYLINE representative arrived at the person's home and confirmed that SKYLINE offered ADT services, but that the services were too expensive.  The SKYLINE representative then offered a Monotronics system for a lower price, which the customer ordered.  A week later, the customer was visited at his home by an authorized ADT representative who pointed out that SKYLINE representative had used a flyer with an ADT logo that was scanned on from another source.  *See* Exhibit "A."

163.   On or about July 22, 2011, on a Saturday evening, a 74-year old ADT Customer was visited at her home by a SKYLINE representative who said he needed to "upgrade" equipment because the battery was dangerous.  The woman, who was in her night clothes, told the representative that she was feeling ill.  The SKYLINE representative explained that he needed only five minutes and came in.  After thirty (30) minutes, the SKYLINE representative led the woman to believe he was a representative from ADT and convinced her to sign a three-year contract with SKYLINE.  *See* Exhibit "A."

164.   The BBB records also describe a customer complaint involving a SKYLINE representative who used similar deceptive sales tactics to mislead a customer of a different alarm company into switching to SKYLINE.  *See* Exhibit "A."

165.   On or about January 31, 2011, a customer of APX was approached by a SKYLINE representative who offered the customer an "upgrade" and who allowed the customer to believe the representative was from APX.  *See* Exhibit "A."

**Defendants' Unlawful Behavior**

166.    Upon information and belief, SKYLINE has called and has gone to the doors of ADT Customers and, through a number of unlawful tactics (such as deceit, fraudulent or misleading statements and outright lies) has been tricking ADT Customers into transferring their security monitoring accounts to SKYLINE.

167.    Upon information and belief, SKYLINE has called and has gone to the doors of potential ADT Customers and, through a number of unlawful tactics (such as deceit, fraudulent or misleading statements and outright lies) has been tricking potential ADT Customers into signing security monitoring accounts with SKYLINE.

168.    Upon information and belief, SKYLINE technicians gain entry to the ADT Customer's home by suggesting that SKYLINE is "taking over" or "upgrading" the ADT Customer's account and then overhaul the ADT Customer's existing security system.

169.    Upon information and belief, SKYLINE sales representatives also pose as ADT sales representatives and use ADT branded collateral to gain entry to the ADT Customer's home, have them sign new contracts with SKYLINE and then overhaul the ADT Customer's existing security system.

170.    By the time the ADT Customer discovers that the system has been switched from ADT to SKYLINE, he/she has already signed a contract switching the security monitoring service.

171.    Upon information and belief, the individual Defendant, ARROYAVE, is the President of SKYLINE.

172.    Upon information and belief, ARROYAVE directs, authorizes, approves, participates in, supervises and is responsible for the total management and operation of SKYLINE, including the unlawful acts and misrepresentations of SKYLINE's salespeople.

173.    Upon information and belief, the individual Defendant, BATIARA, is an employee

of SKYLINE or an authorized contractor and agent of SKYLINE.

174.   Upon information and belief, BATIARA has directly misrepresented to ADT Customers the existence of a relationship between SKYLINE and ADT and exploited that misrepresentation in order to deceive ADT Customers into switching to SKYLINE's services.

175.   Upon information and belief, the individual Defendant, MARQUEZ, is an employee of SKYLINE or an authorized contractor and agent of SKYLINE.

176.   Upon information and belief, MARQUEZ has directly misrepresented himself as an authorized and genuine representative of ADT to ADT Customers by wearing ADT branded collateral, including clothing and badges and by disseminating ADT branded promotional materials.

177.   Upon information and belief, the individual Defendant, AMMO, is an employee of SKYLINE or an authorized contractor and agent of SKYLINE.

178.   Upon information and belief, AMMO has directly misrepresented himself as an authorized and genuine representative of ADT to ADT Customers by wearing ADT branded collateral, including clothing and badges and by disseminating ADT branded promotional materials.

179.   Upon information and belief, AMMO directly misrepresented himself as an authorized and genuine representative of ADT to an ADT Manager by making such claims in a telephone call with the ADT Manager where he impersonated an ADT sales representative.

180.   Defendants' use of the ADT name and mark and the ADT Trademarks implies that Defendants are associated with, affiliated with, and/or are sponsored by Plaintiffs.

181.   Defendants are not associated with or affiliated with ADT and Defendants' activities, and Defendants' use of the ADT Trademarks is not sponsored or sanctioned by ADT. *See* Exhibit "K," Declaration of Joe O'Connell.

182.    Defendants' use of the ADT name and mark and the ADT Trademarks is in willful, intentional, and deliberate violation of Federal Trademark Law.

183.    Defendants have been misleading ADT Customers in, at least, California, and making false statements to ADT Customers in the following ways:

a.      Misinforming ADT Customers that SKYLINE is "taking over" or "handling" the accounts or technical support service for ADT Customer accounts;

b.      Misinforming ADT Customers that SKYLINE is ADT's new security service provider;

c.      Misrepresenting to ADT Customers that SKYLINE is affiliated with ADT and will be providing an "upgrade" to the ADT Customer's current security system;

d.      Misinforming ADT Customers that ADT is transferring select accounts to SKYLINE;

e.      Misrepresenting to ADT Customers that SKYLINE is a broker for ADT;

f.      Misinforming ADT Customers that ADT is endorsing SKYLINE and encouraging its customers to sign with SKYLINE;

g.      Misinforming ADT Customers that ADT is going out of business and changing its name to SKYLINE; and most egregiously,

h.      Misrepresenting to ADT Customers that SKYLINE representatives are in fact ADT representatives through the use of ADT branded materials, including but not limited to the wearing of ADT badges, the wearing of ADT clothing, the carrying of ADT bags, and the use of other ADT branded promotional material.

184.    SKYLINE's statements to ADT Customers about ADT as expressed in Paragraphs 183(a)-(g) are false. *See* Exhibit "K."

185.    Plaintiffs have been and will continue to be irreparably harmed if Defendants are

permitted to continue to engage in this systematic, unlawful scheme of luring ADT Customers away from ADT through lies, unlawful business practices, and deceit.

186.   Plaintiffs' revenue is based on the recurring revenue from ADT Customers for ADT's security monitoring services.   It would be difficult to determine the amount of compensation Plaintiffs have lost because Defendants have switched ADT Customer accounts. There is no indication how long an ADT Customer would have remained with ADT's security monitoring services if not for Defendants' interference.   Thus, it would be difficult, if not impossible, to determine how much revenue Plaintiffs have lost as a result of Defendants' unlawful activities.

187.   Former ADT Customers that are misled by Defendants may further communicate Defendants' misrepresentations to other ADT Customers, which may cause Plaintiffs to lose further revenue.   It would be difficult or impossible for Plaintiffs to determine the identity and number of ADT Customers and potential ADT Customers that will be lost as a result of Defendants' persistent, unlawful conduct.

188.   The amount of compensation that would afford Plaintiffs adequate relief for Defendants' continuing unlawful conduct would be difficult or impossible to determine, and Plaintiffs have no adequate remedy at law.

189.   Upon information and belief, the four (4) ADT Customers from whom ADT has secured Affidavits and Declarations are merely the "tip of the iceberg" of ADT Customers that SKYLINE has stolen through deceptive and fraudulent sales tactics

## COUNT I
### Federal Trademark Infringement Under Lanham Act – 15 U.S.C. § 1125 *et seq.*

190.   Plaintiffs incorporate by reference all allegations contained in the above paragraphs as though set forth fully herein.

191.    Defendants have intentionally used the ADT name and mark and the ADT Trademarks on promotional materials, including but not limited to nametags, badges, business cards, flyers, bags, as well as on clothing, in connection with soliciting ADT Customers and potential ADT Customers without Plaintiffs' permission, consent or authorization.

192.    Defendants' actions are likely to cause confusion as to source, cause mistake, or deceive consumers to believe that Defendants' products and/or services, bearing and/or referencing the ADT name and mark and the ADT Trademarks, are in some manner originate from, or are approved, associated with, sponsored by, or in some manner connected with Plaintiffs.

193.    Defendants' actions constitute Trademark Infringe under the Trademark Laws of the United States, namely the Lanham Act.

194.    Defendants knew of Plaintiffs' rights in the ADT name and mark and the ADT Trademarks, and knowingly, willfully, and deliberately infringed them, making this an exceptional case within the meaning of 15 U.S.C. § 1117.

195.    As a direct and proximate result of Defendants' Trademark Infringement, Plaintiffs have suffered and will continue to suffer monetary damage and irreparable harm.

WHEREFORE, Plaintiffs pray that this Court enter judgment in Plaintiffs' favor on the claims set forth above and award Plaintiffs injunctive relief, damages, lost profits, attorneys' fees and costs, treble damages and prejudgment interest.

**COUNT II**
**Unfair Competition and False Advertising Under Lanham Act – 15 U.S.C.**
**§ 1125 *et seq.***

196.    Plaintiffs incorporate by reference all allegations contained in the above paragraphs as though set forth fully herein.

197.    In promoting SKYLINE's own identical competitive services, Defendants are

making false, misleading statements about ADT's business, including but not limited to, the statements alleged herein.

198.    The statements actually have deceived some ADT Customers and have the tendency to deceive a substantial segment of ADT's Customers as to whether ADT is affiliated with SKYLINE.

199.    Defendants' statements have already confused, and will continue to confuse, ADT Customers as to the origin, sponsorship or approval of SKYLINE's goods and services.

200.    Defendants' false and misleading statements are material, in that they are likely to influence the customers' purchasing decisions.

201.    Defendants' acts constitute willful, deliberate, false, and misleading representations of fact as to the nature and characteristics of SKYLINE's services, in violation of 15 U.S.C. § 1125(a)(1)(B), because SKYLINE's security services are not affiliated with Plaintiffs in any way.   Defendants' misleading statements, therefore, constitute false advertising and promotion.

202.    Plaintiffs have been and will continue to be injured as a result of Defendants' false statements, either by direct diversion of sales from itself to SKYLINE or by a lessening of the goodwill associated with ADT's goods and services.

203.    Plaintiffs have suffered, and will continue to suffer, irreparable damage to its business and goodwill by reason of Defendants' unlawful acts unless Defendants are restrained and enjoined.

204.    As a direct and proximate result of Defendants' Unfair Competition and False Advertising, Plaintiffs have suffered and will continue to suffer monetary damages and irreparable harm.

WHEREFORE, Plaintiffs pray that this Court enter judgment in Plaintiffs' favor on the claims set forth above and award Plaintiffs injunctive relief, damages, lost profits, attorneys' fees and costs, treble damages and prejudgment interest.

### COUNT III
### Federal Trademark Dilution Under Lanham Act – 15 U.S.C. § 1125 *et seq.*

205.   Plaintiffs incorporate the allegations of the foregoing paragraphs as if fully set forth herein.

206.   The ADT name and mark and the ADT Trademarks are famous.

207.    Defendants have used the ADT name and mark and the ADT Trademarks to promote, market, and sell SKLYINE security system products and services, and commenced such use after the ADT name and mark and the ADT Trademarks became famous.

208.   Defendants' use of the ADT name and mark and the ADT Trademarks in connection with Defendants' deceptive and misleading sales tactics is likely to tarnish the ADT name and mark and the ADT Trademarks, and therefore constitutes willful Trademark Dilution pursuant to 15 U.S.C. 1125(c).

209.   Defendants' intentional and willful dilution and tarnishment of the ADT name and mark and the ADT Trademarks has caused, and will continue to cause damage and irreparable harm to the Plaintiffs, for which there is no adequate remedy otherwise available at law.

210.   As a result of Defendants' intentional and willful dilution and tarnishment of the ADT name and mark and the ADT Trademarks, Plaintiffs have suffered, and will continue to suffer, irreparable damage to its business and goodwill by reason of Defendants' unlawful acts unless Defendants are restrained and enjoined

WHEREFORE, Plaintiffs pray that this Court enter judgment in Plaintiffs' favor on the claims set forth above and award Plaintiffs injunctive relief, damages, attorneys' fees and costs and treble damages.

**COUNT IV**
**Violation of the California Unfair Competition Statutes**
**Cal. Bus. & Prof. Code § 17200 *et seq.***

211.     Plaintiffs incorporate the allegations of the foregoing paragraphs as if fully set forth herein.

212.     Defendants have engaged in Unfair Competition by unlawfully, unfairly and fraudulently making misrepresentations in connection with the sale of SKYLINE's security services in violation of the California Business and Professions Code § 17200 *et seq.*.

213.     As a direct and proximate result of Defendants' Unfair Competition, Plaintiffs have suffered and will continue to suffer irreparable harm and monetary damages.

WHEREFORE, Plaintiffs pray that this Court enter judgment in Plaintiffs' favor on the claims set forth above and award Plaintiffs injunctive relief, damages, attorneys' fees and costs and treble damages.

**COUNT V**
**Violation of the California False Advertising Statute**
**Cal. Bus. & Prof. Code § 17500 *et seq.***

214.     Plaintiffs incorporate the allegations of the foregoing paragraphs as if fully set forth herein.

215.     In promoting SKYLINE's identical competitive services, Defendants are making false statements about ADT's business, including but not limited to the statements alleged herein.

216.     The statements have actually deceived some ADT Customers and have the tendency to deceive a substantial segment of ADT's customer base.

217.    As a direct and proximate result of Defendants' False Advertising, Plaintiffs have suffered and will continue to suffer irreparable harm and monetary damages.

WHEREFORE, Plaintiffs pray that this Court enter judgment in Plaintiffs' favor on the claims set forth above and award Plaintiffs damages and injunctive relief.

**COUNT VI**
**Trade Libel/Trade Disparagement**
**<u>California Common Law</u>**

218.    Plaintiffs incorporate the allegations of the foregoing paragraphs as if fully set forth herein.

219.    Defendants have willfully and maliciously published non-privileged, false, misleading and disparaging statements about ADT and its products and services, which constitute Trade Libel and Trade Disparagement.

220.    Defendants know that these statements are false.

221.    Defendants' false statements have caused ADT Customers to cancel their contracts with ADT, thereby decreasing ADT's sales and goodwill.

222.    Defendants should have reasonably recognized that their false statements about ADT would adversely impact ADT's sales and cause damage to ADT's reputation.

223.    As a direct and proximate result of Defendants' Trade Libel and Trade Disparagement, Plaintiffs have suffered and will continue to suffer irreparable harm and monetary damages.

WHEREFORE, Plaintiffs pray that this Court enter judgment in Plaintiffs' favor on the claims set forth above and award Plaintiffs injunctive relief, damages, attorneys' fees and costs and punitive damages.

**COUNT VII**
**Intentional Interference with Current Economic Advantage**
**California Common Law**

224.     Plaintiffs incorporate the allegations of the foregoing paragraphs as if fully set forth herein.

225.     ADT has enforceable contracts with its current customers.

226.     Defendants have knowledge of the existence of ADT's contracts with its customers.

227.     Defendants' intentional acts are designed to induce ADT's Customers to breach or disrupt their contractual relationship with ADT.

228.     Defendants have no privilege or justification for interfering with ADT's contracts with its customers.

229.     ADT's contracts with its customers have, in fact, been breached or disrupted by Defendants' deceptive sales practices.

230.     As a direct and proximate result of Defendants' Intentional Interference with ADT's contracts, Plaintiffs have suffered and will continue to suffer irreparable harm and monetary damages.

WHEREFORE, Plaintiffs pray that this Court enter judgment in Plaintiffs' favor on the claims set forth above and award Plaintiffs injunctive relief and damages.

**COUNT VIII**
**Intentional Interference with Prospective Economic Advantage**
**California Common Law**

231.     Plaintiffs incorporate the allegations of the foregoing paragraphs as if fully set forth herein.

COMPLAINT

232.   ADT enjoys economic relationships with its current customers that contain probable future economic benefit or advantage to ADT in the form of future contractual relationships.

233.   Plaintiffs have a reasonable expectation that ADT will enjoy prospective business relationships with its customers in the form of contract renewals for ADT's security monitoring services.

234.   Defendants have knowledge of the existence of such expectation, and have intentionally and deliberately interfered with and disrupted such prospective relationships through misrepresentations and deceptive conduct.

235.   Defendants' wrongful conduct is intentionally designed to disrupt and prevent such relationships and cause damage to Plaintiffs.

236.   Defendants have no privilege or justification for interfering with ADT's prospective economic relationships with ADT Customers.

237.   As a direct and proximate result of Defendants' Intentional Interference, Plaintiffs have suffered and will continue to suffer irreparable harm and monetary damages.

WHEREFORE, Plaintiffs pray that this Court enter judgment in Plaintiffs' favor on the claims set forth above and award Plaintiffs injunctive relief and damages.

## COUNT IX
### Unfair Competition
### California Common Law

238.   Plaintiffs incorporate the allegations of the foregoing paragraphs as if fully set forth herein.

239.   Defendants invoke ADT's name and goodwill in deceptively soliciting ADT Customers and tricking them to cancel their accounts with ADT and sign a contract with SKYLINE.

240.   These false and misleading statements are material and tend to induce ADT Customers to stop using ADT's services.

241.   Defendants have fraudulently made false and misleading statements as to the source, sponsorship or approval of SKYLINE's services and statements that suggest an affiliation, connection or association between ADT and SKYLINE that does not exist which have caused and will continue to cause ADT to lose sales and goodwill.

242.   Defendants have benefitted from their deceptive statements by virtue of stealing ADT's Customers and business.

243.   As a direct and proximate result of Defendants' Unfair Competition, Plaintiffs have suffered and will continue to suffer irreparable harm and monetary damages.

WHEREFORE, Plaintiffs pray that this Court enter judgment in Plaintiffs' favor on the claims set forth above and award Plaintiffs injunctive relief and damages or an accounting of profits.

**COUNT X**
**Fraud/Deceit**
**Cal. Civ. Code § 1709 *et seq.***

244.   Plaintiffs incorporate the allegations of the foregoing paragraphs as if fully set forth herein.

245.   Upon information and belief, Defendants have knowingly made false representations to ADT Customers and potential ADT Customers by impersonating ADT representatives in an effort to convince customers and potential customers to sign documents and contracts that initiate security services with SKYLINE.

246.   Upon information and belief, Defendants have knowingly made false representations to ADT Customers and potential ADT Customers which implied that SKYLINE was ADT, or that SKYLINE was associated with, affiliated with, or sponsored by ADT in an

effort to convince customers and potential customers to sign documents and contracts that initiate security services with SKYLINE.

247.    Defendants intended ADT Customers and potential ADT Customers to rely upon such fraudulent statements in order to induce the customers and potential customers into signing documents and contracts that initiate security services with SKYLINE.

248.    Upon information and belief, ADT Customers and potential ADT customers reasonably and justifiably believed that the SKYLINE representatives were in fact representatives of ADT, or were associated with, affiliated with, or sponsored by ADT.

249.    Defendants have committed deceit under the Cal. Civ. Code § 1709 *et seq.* by making false representations in obtaining security monitoring accounts from ADT Customers and potential ADT Customers.

250.    As a direct and proximate result of Defendants' fraudulent activities, Plaintiffs have suffered and will continue to suffer irreparable harm and monetary damages.

WHEREFORE, Plaintiffs pray that this Court enter judgment in Plaintiffs' favor on the claims set forth above and award Plaintiffs injunctive relief, damages, attorneys' fees and costs and punitive damages.

**COUNT XI**
**Fraud**
**California Common Law**

251.    Plaintiffs incorporate the allegations of the foregoing paragraphs as if fully set forth herein.

252.    Upon information and belief, Defendants have knowingly made false representations to ADT Customers and potential ADT Customers by impersonating ADT representatives in an effort to convince customers and potential customers to sign documents and contracts that initiate security services with SKYLINE.

253.    Upon information and belief, Defendants have knowingly made false representations to ADT Customers and potential ADT Customers which implied that SKYLINE was ADT, or that SKYLINE was associated with, affiliated with, or sponsored by ADT in an effort to convince customers and potential customers to sign documents and contracts that initiate security services with SKYLINE

254.    Defendants intended ADT Customers and potential ADT Customers to rely upon such fraudulent statements in order to induce the customers and potential customers into signing documents and contracts that initiate security services with SKYLINE.

255.    Upon information and belief, ADT Customers and potential ADT customers reasonably and justifiably believed that the SKYLINE representatives were in fact representatives of ADT, or were associated with, affiliated with, or sponsored by ADT.

256.    As a direct and proximate result of Defendants' fraudulent activities, Plaintiffs have suffered and will continue to suffer irreparable harm and monetary damages.

WHEREFORE, Plaintiffs pray that this Court enter judgment in Plaintiffs' favor on the claims set forth above and award Plaintiffs injunctive relief, damages and punitive damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray that this Court enter judgment in Plaintiffs' favor on the claims set forth above and award Plaintiff the following relief:

a.    that Plaintiffs be awarded preliminary and then permanent injunctive relief against Defendants to halt Defendants' ongoing wrongful conduct;

b.    that Defendants be prohibited from using ADT's name in connection with any of Defendants' future communications or statements to potential customers, solicitations for business, letterheads, signature blocks, advertisements or in any manner, in conjunction with the sale of its security services;

c.       that Defendants be prohibited from making any representations that suggest or imply an association, sponsorship, connection or relationship between SKYLINE and ADT;

d.       that Defendants be prohibited from making any disparaging statements relating to ADT or ADT's services;

e.       that Defendants be prohibited from interfering with ADT's current and prospective contractual relationships with its customers;

f.       that Plaintiffs be awarded Damages in the amount of Plaintiffs' losses resulting from Defendants' wrongful conduct, to be determined at Trial;

g.       that Plaintiffs be awarded Treble Damages resulting from Defendants' wrongful conduct;

h.       that Plaintiffs be awarded Punitive Damages as a result of Defendants' willful, malicious and fraudulent conduct, in an amount to be determined at Trial;

i.       that Plaintiffs be awarded Attorneys' Fees and Costs incurred in the prosecution of this action;

j.       that Plaintiffs be awarded prejudgment interest in the maximum amount allowable by law; and

k.       that Plaintiffs be granted such other relief as the Court deems just and proper and/or as the nature of Plaintiffs' claims may require.

Dated:       March 30, 2012                    PEPPER HAMILTON LLP


                                               By:  /s/ Jeffrey M. Goldman

                                                    Jeffrey M. Goldman

                                               *Attorneys for Plaintiffs, ADT Services,*
                                               *A.G. and ADT Security Services, Inc.*

1

## **<u>JURY DEMAND</u>**

2

Plaintiffs hereby demands a Jury Trial on all issues for which a Jury Trial is available.

3

4    Dated:        March 30, 2012                    PEPPER HAMILTON LLP

5

6                                                   By:  /s/ Jeffrey M. Goldman

7

8                                                       Jeffrey M. Goldman

9                                                   *Attorneys for Plaintiffs, ADT Services,*
                                                    *A.G. and ADT Security Services, Inc.*
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT "A"

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADT SECURITY A.G., and<br>ADT SECURITY SERVICES, INC.,<br><br>Plaintiffs,<br><br>vs.<br><br>SKYLINE SECURITY MANAGEMENT,<br>INC. (aka SIMPLY ALARMS), EDWIN<br>ARROYAVE, VICTOR MARQUEZ, ALI<br>BATIARA and ADDISON AMMO,<br><br>Defendants. | CIVIL ACTION No.<br><br>**DECLARATION OF SEAN P.<br>MCCONNELL, ESQ.**<br><br>JURY TRIAL DEMANDED |

### DECLARATION OF SEAN P. MCCONNELL, ESQ.

I, Sean P. McConnell, hereby declare:

1.      I am an attorney with the law firm Pepper Hamilton LLP, the attorneys representing Plaintiffs, ADT Services A.G. and ADT Security Services, Inc. in the above-captioned opposition.

2.      I submit this declaration in support of Plaintiffs' Complaint against Defendants, SKYLINE SECURITY MANAGEMENT, INC. (aka SIMPLY ALARMS), EDWIN ARROYAVE, VICTOR MARQUEZ, ALI BATIARA and ADDISON AMMO.

3.      Attached to this Declaration, under the identified exhibit tabs, are true and correct copies of the following documents:

Exhibit 1:  The records of U.S. Trademark Registration Nos. 0710708, 1034716, 0710507 and 3511264, as maintained in the records of the United States Patent and Trademark Office located through the Trademark Applications and Registrations Retrieval portal - http://tarr.uspto.gov/ ; and

EXHIBIT A
PAGE 42

Exhibit 2:  Printouts from the Better Business Bureau's website (www.la.bbb.org) describing consumer complaints received by the Better Business Bureau concerning Skyline Security Management, Inc., of 8211 Firestone Boulevard, Downey, California 90241.

4.     I hereby affirm the foregoing under penalty of perjury.

Dated: March 26, 2012

_____

Sean P. McConnell
PEPPER HAMILTON LLP
3000 Two Logan Square
Eighteenth & Arch Streets
Philadelphia, PA  19103-2799
(215) 981-4000

EXHIBIT A
PAGE 43

# EXHIBIT  1

**Thank you for your request. Here are the latest results from the TARR web server.**

**This page was generated by the TARR system on** 2012-03-15 16:50:57 ET

**Serial Number:** 72086389 Assignment Information          Trademark Document Retrieval

**Registration Number:** 710708

**Mark(words only):** ADT

**Standard Character claim:** No

**Current Status:** The registration has been renewed.

**Date of Status:** 2011-01-27

**Filing Date:** 1959-12-01

**Transformed into a National Application:** No

**Registration Date:** 1961-01-31

**Register:** Principal

**Law Office Assigned:** (NOT AVAILABLE)


**If you are the applicant or applicant's attorney and have questions about this file, please contact the Trademark Assistance Center at TrademarkAssistanceCenter@uspto.gov**

**Current Location:** (NOT AVAILABLE)

**Date In Location:** 2011-01-27

---

## LAST APPLICANT(S)/OWNER(S) OF RECORD

1. ADT SERVICES AG

**Address:**
ADT SERVICES AG
Freier Platz 10 IP Law Department
Schaffhausen 8200
Switzerland
**Legal Entity Type:** Corporation
**State or Country of Incorporation:** Switzerland
**Phone Number:** 41 52 633 0244

EXHIBIT A
PAGE 45

**Fax Number:** 41 52 633 0299

---

## GOODS AND/OR SERVICES

---

**U.S. Class:** 100 (International Class 035)
**Class Status:** Active
Central Station Electric Protection Service, Including Fire Alarm Service, Watchmen's Supervisory Service, Sprinkler and Waterflow Supervisory Service, Intruder and Burglar Alarm Service, and Industrial Process Supervisory Service
**Basis:** 1(a)
**First Use Date:** 1903-00-00
**First Use in Commerce Date:** 1903-00-00

---

## ADDITIONAL INFORMATION

---

(NOT AVAILABLE)

---

## MADRID PROTOCOL INFORMATION

---

(NOT AVAILABLE)

---

## PROSECUTION HISTORY

---

**NOTE: To view any document referenced below, click on the link to "Trademark Document Retrieval" shown near the top of this page.**

2012-01-19 - TEAS Change Of Correspondence Received

2011-01-27 - Third renewal 10 year

2011-01-27 - Section 8 (10-year) accepted/ Section 9 granted

2011-01-18 - Combined Section 8 (10-year)/Section 9 filed

2011-01-27 - Review Of Correspondence Complete

2011-01-27 - Review Of Correspondence Complete

2011-01-18 - TEAS Section 8 & 9 Received

2008-10-24 - Case File In TICRS

2008-09-08 - Applicant/Correspondence Changes (Non-Responsive) Entered

2008-09-08 - TEAS Change Of Owner Address Received

EXHIBIT A
PAGE 46

2008-09-08 - Attorney Revoked And/Or Appointed

2008-09-08 - TEAS Revoke/Appoint Attorney Received

2001-05-26 - Second renewal 10 year

2001-05-26 - Section 8 (10-year) accepted/ Section 9 granted

2001-01-18 - Combined Section 8 (10-year)/Section 9 filed

1984-10-25 - Section 8 (6-year) accepted & Section 15 acknowledged

1981-01-31 - First renewal

---

## ATTORNEY/CORRESPONDENT INFORMATION

**Attorney of Record**
Colette A. Durst

**Correspondent**
Colette Durst
TYCO INTERNATIONAL
IP LAW DEPARTMENT
6600 CONGRESS AVENUE
BOCA RATON FL 33487
Phone Number: 561.912.6929
Fax Number: 0041 52 633 0299

**Domestic Representative**
Colette A. Durst
Phone Number: 561-988-3739
Fax Number: 561-988-7843

---

**EXHIBIT A
PAGE 47**

**Thank you for your request. Here are the latest results from the <u>TARR web server.</u>**

**This page was generated by the TARR system on** 2012-03-15 16:51:14 ET

**Serial Number:** 73061512 <u>Assignment Information</u>    .    <u>Trademark Document Retrieval</u>

**Registration Number:** 1034716

**Mark**



**(words only):** ADT

**Standard Character claim:** No

**Current Status:** The registration has been renewed.

**Date of Status:** 2006-04-03

**Filing Date:** 1975-08-27

**Transformed into a National Application:** No

**Registration Date:** 1976-03-02

**Register:** Principal

**Law Office Assigned:** (NOT AVAILABLE)

**If you are the applicant or applicant's attorney and have questions about this file, please contact the Trademark Assistance Center at <u>TrademarkAssistanceCenter@uspto.gov</u>**

**Current Location:** 40S -Scanning On Demand

**Date In Location:** 2007-10-26

---

## LAST APPLICANT(S)/OWNER(S) OF RECORD

---

EXHIBIT A
PAGE 48

1. ADT SERVICES AG

**Address:**
ADT SERVICES AG
Freier Platz 10 IP Law Department
Schaffhausen 8200
Switzerland
**Legal Entity Type:** Corporation
**State or Country of Incorporation:** Switzerland
**Phone Number:** 41 52 633 0244
**Fax Number:** 41 52 633 0299

---

## GOODS AND/OR SERVICES

---

**International Class:** 009
**Class Status:** Active
CLOSED CIRCUIT TELEVISION EQUIPMENT-NAMELY, CLOSED CIRCUIT TELEVISION
SYSTEMS, TELEVISION CAMERAS, TELEVISION MONITORS AND MONITOR UNITS,
TELEVISION CAMERA LENSES, TELEVISION CAMERA ZOOM LENSES AND REMOTE
CONTROL UNITS, TELEVISION CAMERA MOUNTINGS AND HOUSINGS AND VIDEO
SWITCHES FOR PROVIDING A SINGLE OUTPUT FROM A PLURALITY OF INPUTS
**Basis:** 1(a)
**First Use Date:** 1973-12-04
**First Use in Commerce Date:** 1973-12-04

---

## ADDITIONAL INFORMATION

---

**Prior Registration Number(s):**
700676
1010952

---

## MADRID PROTOCOL INFORMATION

---

(NOT AVAILABLE)

---

## PROSECUTION HISTORY

---

**NOTE: To view any document referenced below, click on the link to "Trademark Document
Retrieval" shown near the top of this page.**

2012-01-19 - TEAS Change Of Correspondence Received

2008-09-08 - Applicant/Correspondence Changes (Non-Responsive) Entered

2008-09-08 - TEAS Change Of Owner Address Received

EXHIBIT A
PAGE 49

2008-09-08 - Attorney Revoked And/Or Appointed

2008-09-08 - TEAS Revoke/Appoint Attorney Received

2007-10-26 - Case File In TICRS

2006-04-03 - Third renewal 10 year

2006-04-03 - Section 8 (10-year) accepted/ Section 9 granted

2006-04-03 - Assigned To Paralegal

2006-01-26 - Combined Section 8 (10-year)/Section 9 filed

2006-01-26 - TEAS Section 8 & 9 Received

1996-08-01 - First renewal 10 year

1996-05-16 - Section 9 filed/check record for Section 8

1996-05-16 - Section 9 filed/check record for Section 8

1982-05-10 - Section 8 (6-year) accepted

---

## ATTORNEY/CORRESPONDENT INFORMATION

---

**Attorney of Record**
Rick Comoglio

**Correspondent**
Colette Durst
TYCO INTERNATIONAL
IP LAW DEPARTMENT
6600 CONGRESS AVENUE
BOCA RATON FL 33487
Phone Number: 561.912.6929
Fax Number: 0041 52 633 0299

---

EXHIBIT A
PAGE 50

**Thank you for your request. Here are the latest results from the <u>TARR web server.</u>**

**This page was generated by the TARR system on** 2012-03-15 16:51:34 ET

**Serial Number:** 72086390 <u>Assignment Information</u>          <u>Trademark Document Retrieval</u>

**Registration Number:** 710507

**Mark(words only):** ADT

**Standard Character claim:** No

**Current Status:** The registration has been renewed.

**Date of Status:** 2011-02-02

**Filing Date:** 1959-12-01

**Transformed into a National Application:** No

**Registration Date:** 1961-01-31

**Register:** Principal

**Law Office Assigned:** (NOT AVAILABLE)

**If you are the applicant or applicant's attorney and have questions about this file, please contact the Trademark Assistance Center at <u>TrademarkAssistanceCenter@uspto.gov</u>**

**Current Location:** (NOT AVAILABLE)

**Date In Location:** 2011-02-02

---

### LAST APPLICANT(S)/OWNER(S) OF RECORD

---

1. ADT SERVICES AG

**Address:**
ADT SERVICES AG
Freier Platz 10 IP Law Department
Schaffhausen 8200
Switzerland
**Legal Entity Type:** Corporation
**State or Country of Incorporation:** Switzerland
**Phone Number:** 41 52 633 0244

EXHIBIT A
PAGE 51

**Fax Number:** 41 52 633 0299

---

## GOODS AND/OR SERVICES

---

**U.S. Class:** 021 (International Class 009)
**Class Status:** Active
Electric Protection Equipment, Including Fire Alarm Boxes, Fire Detecting and Alarm Devices, Watchmen's Tour Stations, Sprinkler Supervisory and Waterflow Alarm Devices, Intruder Alarm Apparatus, and Vault Alarm Devices
**Basis:** 1(a)
**First Use Date:** 1913-10-16
**First Use in Commerce Date:** 1913-10-16

---

## ADDITIONAL INFORMATION

---

(NOT AVAILABLE)

---

## MADRID PROTOCOL INFORMATION

---

(NOT AVAILABLE)

---

## PROSECUTION HISTORY

---

**NOTE: To view any document referenced below, click on the link to "Trademark Document Retrieval" shown near the top of this page.**

2012-01-19 - TEAS Change Of Correspondence Received

2011-02-02 - Third renewal 10 year

2011-02-02 - Section 8 (10-year) accepted/ Section 9 granted

2011-01-31 - Combined Section 8 (10-year)/Section 9 filed

2011-02-02 - Review Of Correspondence Complete

2011-02-02 - Review Of Correspondence Complete

2011-01-31 - TEAS Section 8 & 9 Received

2008-10-24 - Case File In TICRS

2008-09-08 - Applicant/Correspondence Changes (Non-Responsive) Entered

2008-09-08 - TEAS Change Of Owner Address Received

EXHIBIT A
PAGE 52

2008-09-08 - Attorney Revoked And/Or Appointed

2008-09-08 - TEAS Revoke/Appoint Attorney Received

2001-05-26 - Second renewal 10 year

2001-05-26 - Section 8 (10-year) accepted/ Section 9 granted

2001-01-18 - Combined Section 8 (10-year)/Section 9 filed

1984-10-25 - Section 8 (6-year) accepted & Section 15 acknowledged

1981-01-31 - First renewal

---

## ATTORNEY/CORRESPONDENT INFORMATION

**Attorney of Record**
Colette A. Durst

**Correspondent**
Colette Durst
TYCO INTERNATIONAL
IP LAW DEPARTMENT
6600 CONGRESS AVENUE
BOCA RATON FL 33487
Phone Number: 561.912.6929
Fax Number: 0041 52 633 0299

---

EXHIBIT A
PAGE 53

**Thank you for your request. Here are the latest results from the <u>TARR web server.</u>**

**This page was generated by the TARR system on** 2012-03-12 15:08:41 ET

**Serial Number:** 77348669 <u>Assignment Information</u>        <u>Trademark Document Retrieval</u>

**Registration Number:** 3511264

**Mark**



**(words only):** ADT

**Standard Character claim:** No

**Current Status:** Registered. The registration date is used to determine when post-registration maintenance documents are due.

**Date of Status:** 2008-10-07

**Filing Date:** 2007-12-11

**Transformed into a National Application:** No

**Registration Date:** 2008-10-07

**Register:** Principal

**Law Office Assigned:** LAW OFFICE 116

**If you are the applicant or applicant's attorney and have questions about this file, please contact the Trademark Assistance Center at <u>TrademarkAssistanceCenter@uspto.gov</u>**

**Current Location:** 650 -Publication And Issue Section

**Date In Location:** 2008-10-07

---

## LAST APPLICANT(S)/OWNER(S) OF RECORD

EXHIBIT A
PAGE 54

1. ADT Services AG

**Address:**
ADT Services AG
Freier Platz 10 IP Law Department
Schaffhausen 8200
Switzerland
**Legal Entity Type:** Corporation
**State or Country of Incorporation:** Switzerland
**Phone Number:** 41 52 633 0244
**Fax Number:** 41 52 633 0299

---

## GOODS AND/OR SERVICES

---

**International Class:** 037
**Class Status:** Active
Emergency roadside assistance services
**Basis:** 1(a)
**First Use Date:** 2006-05-15
**First Use in Commerce Date:** 2006-05-15

**International Class:** 038
**Class Status:** Active
Telecommunication services, namely, electronic transmission of voice messages and data; telecommunication services, namely, information transmission via electronic communications networks; transmission of sound, video and information over computer networks; and telecommunication services, namely, transmission of voice and data in the fields of automobile safety, vehicle theft, roadside safety, traffic, navigation and home security
**Basis:** 1(a)
**First Use Date:** 2006-05-15
**First Use in Commerce Date:** 2006-05-15

**International Class:** 045
**Class Status:** Active
Theft recovery services, namely, tracking, locating and monitoring of vehicles via a computer network; electronic monitoring for security purposes in the fields of intruder and burglar alarms, vehicle theft and emergency alarm services, fire protecting alarms, security systems, vehicle fire alarms and remote vehicle tracking and monitoring systems; monitoring telephone calls and messages from subscribers and notifying emergency facilities from a call center in the fields of vehicle fire and vehicle security; concierge services for others comprising making requested personal arrangements and reservations and providing customer-specific information to meet individual needs rendered together in vehicles; vehicle security services, namely, remote door unlock, theft detection and notification, stolen vehicle tracking, and automatic notification of airbag deployment; and security consultation in the fields of vehicle safety, vehicle fires and vehicle security
**Basis:** 1(a)
**First Use Date:** 2006-05-15
**First Use in Commerce Date:** 2006-05-15

---

EXHIBIT A
PAGE 55

# ADDITIONAL INFORMATION

**Color(s) Claimed:** Color is not claimed as a feature of the mark.

**Description of Mark:** The mark consists of a double bordered octagon with a rectangle inside containing the literal element "ADT".

**Design Search Code(s):**
26.11.21 - Rectangles that are completely or partially shaded
26.15.21 - Polygons that are completely or partially shaded

**Prior Registration Number(s):**
838956
846966
2857796

# MADRID PROTOCOL INFORMATION

(NOT AVAILABLE)

# PROSECUTION HISTORY

**NOTE: To view any document referenced below, click on the link to "Trademark Document Retrieval" shown near the top of this page.**

2012-01-19 - TEAS Change Of Correspondence Received

2011-01-20 - Notice Of Suit

2010-07-01 - Notice Of Suit

2008-10-07 - Registered - Principal Register

2008-09-08 - Applicant/Correspondence Changes (Non-Responsive) Entered

2008-09-08 - TEAS Change Of Owner Address Received

2008-09-08 - Attorney Revoked And/Or Appointed

2008-09-08 - TEAS Revoke/Appoint Attorney Received

2008-07-22 - Published for opposition

2008-07-02 - Notice of publication

2008-06-17 - Law Office Publication Review Completed

EXHIBIT A
PAGE 56

2008-06-16 - Assigned To LIE

2008-06-16 - Approved for Pub - Principal Register (Initial exam)

2008-06-12 - Teas/Email Correspondence Entered

2008-06-12 - Communication received from applicant

2008-06-12 - TEAS Response to Office Action Received

2008-05-20 - Attorney Revoked And/Or Appointed

2008-05-20 - TEAS Revoke/Appoint Attorney Received

2008-02-05 - Notification Of Non-Final Action E-Mailed

2008-02-05 - Non-final action e-mailed

2008-02-05 - Non-Final Action Written

2008-02-04 - Assigned To Examiner

2007-12-15 - Notice Of Design Search Code Mailed

2007-12-14 - New Application Entered In Tram

---

## ATTORNEY/CORRESPONDENT INFORMATION

**Attorney of Record**
Rick Comoglio

**Correspondent**
Colette Durst
TYCO INTERNATIONAL
IP LAW DEPARTMENT
6600 CONGRESS AVENUE
BOCA RATON FL 33487
Phone Number: 561.912.6929
Fax Number: 0041 52 633 0299

---

EXHIBIT A
PAGE 57

# EXHIBIT  2

Home > Business or Charity Reviews > Burglar Alarms and Monitoring Systems > **Skyline Security Management, Inc.**

# BBB BUSINESS REVIEW

Text Size

What is a BBB Business Review?

BBB ACCREDITED BUSINESS SINCE 08/18/2008

## Skyline Security Management, Inc. (Headquarters)
Find a Location

(888) 775-9732
8211 Firestone Blvd., Downey, CA 90241
http://www.skylinesecurity.org


Skyline Security Management, Inc.

1 image | See All Images >>


ACCREDITED BUSINESS


B+

On a scale of A+ to F
Reason for Rating
BBB Ratings System
Overview

Share    Print

### QUICK LINKS
File a Complaint

### ASSOCIATED SEARCHES
Still searching? Find more businesses offering similar services.

### FEEDBACK

**RECOMMEND**
Would you recommend this review to others?
**Please Select:**    Yes    No

**SHARE WITH US**
To better assist you, please take our brief survey about the format / readability of this review so that we may continually improve your experience.

**CONTACT US**
Use our Contact Us page to get in touch with us if you have any issues, questions or concerns.

## Description
This company's business is providing sale and installation of security systems for commercial and residential services.

### Request a Quote
Request a quote from Skyline Security Management, Inc.

## BBB Accreditation

A BBB Accredited business since 08/18/2008.

BBB has determined that this business meets BBB accreditation standards, which include a commitment to make a good faith effort to resolve any consumer complaints. BBB Accredited Businesses pay a fee for accreditation review/monitoring and for support of BBB services to the public.

BBB accreditation does not mean that the business's products or services have been evaluated or endorsed by BBB, or that BBB has made a determination as to the business's product quality or competency in performing services.

## Reason for Rating
BBB rating is based on 16 factors. Get the details about the factors considered.

Factors that *lowered* this business's rating include:

    4 serious complaint(s) filed against business
    Overall complaint history with BBB

Factors that *raised* this business's rating include:

    Length of time business has been operating
    Complaint volume filed with BBB for business of this size
    Response to complaint(s) filed against business
    Resolution of complaint(s) filed against business
    BBB has sufficient background information on this business

## Customer Complaints Summary          Read complaint details

19 complaints closed with BBB in last 3 years | 11 closed in last 12 months

| Complaint Type | Total Closed Complaints |
|---|---|
| Advertising / Sales Issues | 12 |
| Billing / Collection Issues | 1 |
| Problems with Product / Service | 6 |

EXHIBIT A
PAGE 59

| | |
|---|---|
| Delivery Issues | 0 |
| Guarantee / Warranty Issues | 0 |
| **Total Closed Complaints** | **19** |

**Additional Complaint Information**

Some previous complaints relate to allegations of representatives purporting to be from ADT. The company has advised our office that they have reorgaized their staff and have enforced training with their sales representatives. Recent complaints do not reflect that representatives are leading customers to believe they are affiliated with ADT.

Complaint Details |Definitions |BBB Complaint Process |File a Complaint

## Government Actions

BBB has no information regarding government actions at this time.

What government actions does BBB report on?

## Advertising Review

BBB has no information regarding advertising review at this time.

What is BBB Advertising Review?

## Additional Information

BBB file opened: 8/7/2008
Business started: 10/6/2004

**Licensing**
In California, an Alarm Company Operator operates a business that sells (at the buyer's home or business), installs, monitors, maintains, services, or responds to alarm systems or supervises such actions are required to obtain a license. (Retail stores do not have to be licensed if they sell alarm systems only at the store and do not perform any alarm company functions.) These licenses are issued by the Bureau of Security and Investigative Services (BSIS. For the most up-to-date information regarding licensing status of any alarm company in California visit www.dca.ca.gov/bsis You can also contact the BSIS by calling (916) 322-4000.



Directions

**Contact Information**
Aftab Hussein - CFO
Frank Vega (Customer Service)
Karla Zuniga (Collections Manager)
Dustin Reilich (Vice President of Sales)
Edwin Arroyave (President)
John Arroyave (Vice President)

**Number of Employees**
120

**Business Category**
Burglar Alarms and Monitoring Systems

**Alternate Business Names**
Skyline Security Management, Inc.
Skyline Security Management Inc

**Alternate Web Sites**

EXHIBIT A
PAGE 60

Home > Business or Charity Reviews > Burglar Alarms and Monitoring Systems > **Skyline Security Management, Inc.**

# BBB BUSINESS REVIEW

Text Size

What is a BBB Business Review?

CONSUMER COMPLAINTS

BBB ACCREDITED BUSINESS SINCE
08/18/2008
**Skyline Security Management,
Inc. (Headquarters)**
(888) 775-9732

Print

## Customer Complaints Summary

19 complaints closed with BBB in last 3 years | 11 closed in last 12 months

| Complaint Type | Total Closed Complaints |
|---|---|
| Advertising / Sales Issues | 12 |
| Billing / Collection Issues | 1 |
| Problems with Product / Service | 6 |
| Delivery Issues | 0 |
| Guarantee / Warranty Issues | 0 |
| **Total Closed Complaints** | **19** |

**Additional Complaint Information**

Some previous complaints relate to allegations of representatives purporting to be from ADT. The company has advised our office that they have reorganized their staff and have enforced training with their sales representatives. Recent complaints do not reflect that representatives are leading customers to believe they are affiliated with ADT.

Complaint Details |Definitions |BBB Complaint Process |File a Complaint

## Complaint Breakdown by Resolution

Complaint Resolution Log                    BBB Closure Definitions

 Complaint resolved with BBB assistance (13)

 12/07/2011 | Problems with Product/ServiceView Details

**Additional Notes**
**Complaint:** 12/07/2011: When I first sought information and signed the contract it stated that it would be $42.99 a month for 36 months. Then a few days later just before I got a call from the company's customer service to verify my contract P. Chin called and informed me that the company (Skyline) was going to be charging me $45.99 a month and that he would reimburse me the difference which is $3 x 36 months = $108. I was already paying about $45 to ADT for their services and a co-worker referred me to Peter Chin. After looking at the services and ability to access alarm system via web and smart phone I was hooked and would have gladly paid $45.99 a month, but it is the principal here that I was offered the difference and now I can't get a hold of Peter via phone or email.

**Business response:** Mr. Agulto is now satisfied and I will follow up with him in 3-5 business days to insure that the check was received.

**Consumer rebuttal:** Yes, I got the check on Saturday 01/14/2011.

12/14/2011 | Problems with Product/ServiceView Details

**Additional Notes**

EXHIBIT A
PAGE 61

### QUICK LINKS
File a Complaint

### ASSOCIATED SEARCHES
Still searching? Find more businesses offering similar services.

### FEEDBACK

**RECOMMEND**
Would you recommend this review to others?
**Please Select:**   Yes   No

**SHARE WITH US**
To better assist you, please take our brief survey about the format / readability of this review so that we may continually improve your experience.

**CONTACT US**
Use our Contact Us page to get in touch with us if you have any issues, questions or concerns.



**Complaint:** 11/14/2011: I signed up for a security system after a sales pitch in our home. I changed my mind shortly after and contacted the sales person to cancel. I was initially told the check would not be cashed at all because the system was not installed, but the check cleared my bank account a week after I cancelled. Their sales person told me they cancelled and could not understand why the check was cashed; she gave me two different phone numbers that do not return my calls. When I contacted Skyline at the phone number on the Agreement they assured me that my file shows as cancelled during 3 day right to rescind and confirmed that I should not have been charged however, each time I speak with them I am told that they will have to get back to me, which never happens. I am hoping this BBB complaint will help me get it resolved. Thank you so much for your assistance.

**Business response:** I have called Ms Mercy Hetherington and have left a voice message informing her that we have mailed out a check to her mailing address.

**Consumer rebuttal:** Many thanks to the Better Business Bureau and the California Consumer Protection Agency for finally impelling the refund from Skyline. Their check arrived today. Barring unforeseen complications (such as the check not clearing), my complaint is resolved. Regards, Marcy

 09/15/2011 | Advertising/Sales IssuesView Details

**Additional Notes**

**Complaint:** 09/15/2011: I have been getting multiple calls per week for the past few months. Every time I go through the automated process to talk to a live person, they hang up on me as soon as I request to be removed. Today I spoke to someone who said nobody should have hung up on me, only to hang up on me moments later himself. I called 888-775-9732 to speak to someone today, and they deny having any type of telemarketing system at all. Right after she denied having a call system, she asked for my phone number. I asked her what she was going to do with my phone number and she said "she didn't know me, and there wasn't anything she could do for me". I am forced to file this complaint despite my several attempts to resolve with them.

**Business response:** We would like to take this time to apologize for any inconvenience this may have caused Andrea. We work with a third party telemarketing company and have removed Andrea from their system and she will not be receiving any more telemarketing phone calls regarding our services. We once again apologize for any inconvenience this may have caused. Thank you.

 08/02/2011 | Advertising/Sales IssuesView Details

**Additional Notes**

**Complaint:** 08/02/2011: The company denies having an automated advertising call system.

**Business response:** We would like to apologize for any inconvenience this may have caused Mr. Ken. We recently started with a telemarketing company and have notified them to stop all calls to Mr. Ken and has been removed from the system. Mr. Ken will not be receiving anymore calls from our company.

07/25/2011 | Problems with Product/ServiceView Details

**Additional Notes**

**Complaint:** 07/25/2011: They are not willing to install the camera's in had ordered unless I pay them more money. The camera's I was supposed to get were at least $110.00 each, the ones they installed were only $40.00 each (based on web searches).

**Business response:** There was a misunderstanding between the subcontractor and client in regards to the cameras but we have replaced the lower end cameras with the high end cameras the customer was requesting at no additional cost.

**Consumer rebuttal:** Dear BBB, Thanks to your help the company came out and replaced the camera with better ones I was supposed to get, they also fixed the DVR that was provided since technician did not install this device correctly. All matters are taken care of. Still think this company is trying to be slick and also using bad sales tactics.

1 2 3

BBB found business made good faith effort to resolve complaint but customer not satisfied with business response (6)

EXHIBIT A
PAGE 62

Home > Business or Charity Reviews > Burglar Alarms and Monitoring Systems > **Skyline Security Management, Inc.**

# BBB BUSINESS REVIEW

Text Size

CONSUMER COMPLAINTS

What Is a BBB Business Review?

BBB ACCREDITED BUSINESS SINCE
08/18/2008
**Skyline Security Management,
Inc. (Headquarters)**
(888) 775-9732

Print

## Customer Complaints Summary

19 complaints closed with BBB in last 3 years | 11 closed in last 12 months

| Complaint Type | Total Closed Complaints |
|---|---|
| Advertising / Sales Issues | 12 |
| Billing / Collection Issues | 1 |
| Problems with Product / Service | 6 |
| Delivery Issues | 0 |
| Guarantee / Warranty Issues | 0 |
| **Total Closed Complaints** | **19** |

**Additional Complaint Information**

Some previous complaints relate to allegations of representatives purporting to be from ADT. The company has advised our office that they have reorgaized their staff and have enforced training with their sales representatives. Recent complaints do not reflect that representatives are leading customers to believe they are affiliated with ADT.

Complaint Details |Definitions |BBB Complaint Process |File a Complaint

## Complaint Breakdown by Resolution

Complaint Resolution Log

BBB Closure Definitions

| Complaint resolved with BBB assistance (13) |
|---|

| 07/11/2011 | Advertising/Sales IssuesView Details |
|---|---|

**Additional Notes**

**Complaint:** 07/11/2011: On July 2, a salesperson from this company came to my door. She pressured me into buying a security system with monitoring. The paperwork says I have until Midnight tonight to cancel. I have called every number provided to me to cancel, but no one answers the phone. I sent an email from their webpage to notify them I wish to cancel. The system does not work. Paperwork that was to be provided to me was not included. I just want to cancel the service, have the system removed, and get a full refund.

**Business response:** We received customers email and responded to her on 07/08/2011 in regards to her concerns. We canceled and pulled her alarm system on 07/08/2011. Contract has been canceled and customer has a zero balance with our company. Checks that customer gave our company were never cashed and will be mailed to her today. Customer gave check # 3063 in the amount of $32.99 which will be mailed out today. Customer also gave check # 3064 in the amount of $69.99 which was originally waived and shredded. Customer has no obligation with our company and has a zero balance. We would like to take this time to apologize for any inconvenience this may have caused.

| 04/25/2011 | Advertising/Sales IssuesView Details |
|---|---|

**EXHIBIT A
PAGE 63**

### QUICK LINKS

File a Complaint

### ASSOCIATED SEARCHES

Still searching? Find more businesses offering similar services.

### FEEDBACK

**RECOMMEND**

Would you recommend this review to others?

**Please Select:**  Yes    No

**SHARE WITH US**

To better assist you, please take our brief survey about the format / readability of this review so that we may continually improve your experience.

**CONTACT US**

Use our Contact Us page to get in touch with us if you have any issues, questions or concerns.

**Additional Notes**

**Complaint:** 04/25/2011: On 1-26-11 two salesman came to my house representing Skyline Security. They informed me that if I signed a contract with them they would install the system for free and that the monthly charge would be $45.00. They showed me a flier that showed my payment would go down to $30.00 after proof of homeowner insurance. They also said that Skyline would pay for the first two months of service. Right away I received the first bill for $45.00. I called the company and the representative he would take care of the free two months and would look into the discount. Not only did they not take care of the problem, they never even called me back with a reason. And when I called the salesman (Troy Wardle), there was no answer. I believe that the salesman lied just to make a sale. He misrepresented himself and the company. He also came back the day after signing the contract because he lost his copy.

**Business response:** We have contacted customer to apologize for the delay in this matter and have issued a two month credit which will make his next payment due on 06/31/2011. I have also informed customer we will mail out today a certificate of installation that will need to be given to his insurance company in order to recieve discount on his home owners insurance which will help out with his monitoring rate. Customer is happy with issue being resolved. We do apologize for the delay in this matter, this is not the way we like to represent Skyline Security Management. We would like to thank you for being a part of the monitronics family.

---

🖥 01/31/2011   Advertising/Sales IssuesView Details

**Additional Notes**

**Complaint:** 01/31/2011: On 6-26-2008 I signed a 60 month agreement with APX Alarm Company. On12-1-2009 a salesman came to our door. He saw the APX sign at the entrance. He said to me Mrs, I see you are with APX. W are in the neighborhood doing upgrade. It will cost you less money and have more features. She thought he was from our existing alarm company and agreed to the upgrade.I was in a convalescent home at the time and my wife was not aware of the binding agreement with APX.

**Business response:** This is not the way we conduct business at Skyline Security and do apologize for any misunderstandings this customer may have had. We will Speak to sales rep in regards to issue and contact APX Security immediately to get customer back online with APX. We do not want to take business from other monitoring companies, this is not the way we sale here at Skyline. We will contact customer and if refund is requested we will refund customer for the full year that customer was being monitored with us at Skyline.

---

🖥 10/28/2010   Advertising/Sales IssuesView Details

**Additional Notes**

**Complaint:** 10/28/2010: I called the office many times, and was always getting the run around, then after 5months was told a tech had to come out and fix the problem there was no signal. Found out I purchased a system that didn't work, tried to get credit for the months there was no signal. Had a rude manager named ALEX laugh and interrupt me say "You will not be getting a single penny form me!" when I asked to speak to a CEO or some one higher then him he said he was the only one to speak to and even if he did get someone to listen he would tell them not to give me my money back because the system is fixed now and that's all he was concerned with. Then after a couple of more calls that went like this. He called to see how things were going I left a message saying I left a report with BBB and got a call back from a man named MARCO saying he was doing a survey from my monitoring company and for me to say I was satisfied. I didn't believe him and after question him for 15mins asked him if he was sure he was who he said he was, he then said he was a supervisor for skyline and if I didn't say I was satisfied they would shut off my system and pick it up, I said you cant I purchased it, he told me only 2items the rest we loaned you. I said that's not what I was told. He also said my monitoring company is going to cut my contract for being a bad customer! Then he said was I sure I just didn't want to say I was satisfied! I said I'm satisfied with my monitoring company but not skyline! Then he hung up.

**Business response:** We have resolved this issue concerning Alicia Yniguez and have issued credit to customer for 5 months of monitoring a total of $224.95. Customer is satisfied with system and no longer has any complaints with our company. Customer has also completed survey with our company to confirm that all issues have been resolved and that customer is satisfied and happy with security system and will continue with the monitoring.

---

🖥 08/10/2010   Advertising/Sales IssuesView Details

**Additional Notes**

**Complaint:** 08/10/2010: Consumer alleges company used deceptive and misleading selling tactics. A man from the company came to her home late in the evening and advised her that ADT was going out of business and they would be taken over for them. He requested that he come in and do the

EXHIBIT A
PAGE 64

paper work to make sure that everything would be switched over. She asked
if he could return the following day and he informed her that he couldn't
since he was already there. Her old system was taken and she recieved a
new one. A month later she recieved her CC statement and learned that she
was charged by both companies. She contacted ADT and was advised that
they were not going put of business and that they had no ideal who the
company was.

**Business response:** We have contacted customer Equipment has been
pulled and we have cancelled contract.,.

**Consumer rebuttal:** Consumer letter states that they called and cancelled
and stopped the payment on the check.

. 1 2 3

 BBB found business made good faith effort to resolve complaint but customer not
satisfied with business response (6)

EXHIBIT A
PAGE 65

Home  >  Business or Charity Reviews  >  Burglar Alarms and Monitoring Systems  >  **Skyline Security Management, Inc.**

# BBB BUSINESS REVIEW

Text Size

**CONSUMER COMPLAINTS**

What is a BBB Business Review?

BBB ACCREDITED BUSINESS SINCE
08/18/2008
**Skyline Security Management,
Inc. (Headquarters)**
(888) 775-9732

Print

## Customer Complaints Summary

19 complaints closed with BBB in last 3 years | 11 closed in last 12 months

| Complaint Type | Total Closed Complaints |
|---|---|
| Advertising / Sales Issues | 12 |
| Billing / Collection Issues | 1 |
| Problems with Product / Service | 6 |
| Delivery Issues | 0 |
| Guarantee / Warranty Issues | 0 |
| **Total Closed Complaints** | **19** |

**Additional Complaint Information**

Some previous complaints relate to allegations of representatives purporting to be from ADT. The
company has advised our office that they have reorganized their staff and have enforced training with their
sales representatives. Recent complaints do not reflect that representatives are leading customers to
believe they are affiliated with ADT.

Complaint Details |Definitions |BBB Complaint Process |File a Complaint

## Complaint Breakdown by Resolution

Complaint Resolution Log                                    BBB Closure Definitions

 **Complaint resolved with BBB assistance (13)**

 07/13/2010 | Advertising/Sales IssuesView Details

> **Additional Notes**
> **Complaint:** 07/13/2010: Claim to be representatives of ADT.Wear same
> color shirts. Offering free upgraded equipment for no charge if you allow
> them an open window for installation. Had installers around the corner.
> According to contract monitoring service higher than ADTand charged an
> activation fee. all with 1 1/2 hr. Everything happened so fast my head was
> spinning. Notified representatives that I do not want this service after I
> thoroughly refiewed contact. Still waiting for them to come and get their
> equipment..
>
> **Business response:** Equipment was picked up and contract was voided
> cust no longer has an obligation with monitronics.

07/08/2009 | Advertising/Sales IssuesView Details

> **Additional Notes**
> **Complaint:** 06/08/2009: They misrepresented by wearing ADT shirts and
> claiming they were going to upgrade our ADT security system. Later, we
> found out they signed us up with a new company, Monotronics. The
> salesperson never called us back despite our multiple attempts to get a hold
> of him and his supervisor. They send out emails every day claiming that "
> free upgrades" are available. I managed to speck to the supervisor once who

EXHIBIT A
PAGE 66

### QUICK LINKS

File a Complaint

### ASSOCIATED SEARCHES

Still searching? Find more businesses
offering similar services.

### FEEDBACK

**RECOMMEND**

Would you recommend this review to
others?

**Please Select:**     Yes     No

**SHARE WITH US**
To better assist you, please take our brief
survey about the format / readability of
this review so that we may continually
improve your experience.

**CONTACT US**
Use our Contact Us page to get in touch
with us if you have any issues,
questions or concerns.

promised me a new contract and he would terminated with my old company ADT but he never called back with the information. I am very disappointed in their level of service.

**Business response:** We have contacted our customer by phone and we have resolved the issue , she will cancel her A.D.T alarm system and will honor her Monitronics contract.,Skyline Security is a dealer for A.D.T and Monitronics.,.

03/18/2009 | Advertising/Sales IssuesView Details

---

### Additional Notes

**Complaint:** 03/18/2009: I received a flyer in the mail with an ADT logo for home security. A salesperson arrived at my home and confirmed that they offered ADT services, but it was too expensive. They said they could offer more from Monitronic for much less to do the same thing as ADT. A week later, they installed Monitronic alarm system in my home. On the day of installation, an actual ADT rep. came by my home. I told them that a dealer of their company already installed another type of system in my home. That was when the ADT rep said that Skyline misrepresented themselves as an authorize dealer of ADT security products and pointed out on the flyer that the ADT logo was scanned off another source. In short, they fraudently used the ADT logo as a selling tool to get my business. The ADT rep. saw my Skyline contract and said I was within the three day timeline to cancel. I called the company, and they kept saying someone was going to return my call to cancel the contract. On the third and last day to cancel, they said the timeline started when the salesman brought the contract to my home. If I wanted to cancel, I can pay them $3175. When on the contract, it said the agreement "shall not be binding upon company unless either approved in writing by an officer or company -- or company begins installation of the system." Further it had a place for an employee signature, but no employee signed the contract. It read: accepted by company _____ (authorized signature) Date: ___

**Business response:** On March 4, 2009 one of our representatives made contact with customer at her place of residents, our company is licensed with ADT and Monitronics Security, our representative did his presentation and customer decided to go with Monitronics as her home security. Contract was signed on March 4, 2009 it specified that she had three business days to cancel contract, Insallation was done on March 9, 2009 customer then called the next day to have contract canceled at witch point the three days had already transpired. Customer was approached by a ADT representative on March 9, 2009 told customer that we misrepresented ADT and that we were not licensed through ADT nor Monitronics, the ADT representative is just trying to make a sale and that is why he is stating all this false arguments toward Skyline Security. Our policy clearly states that if customer decides to cancel before the term of the contract he/she is responsible for the three year early cancellation fee. Customer was contacted by Frank Vega who is responsible for reviewing and dealing with cancellations who tried to explain to customer the terms of the contract, customer refused to listen and kept saying that she was under the terms and that she can cancel three days after installation. Any questions or if you need proof of our identity as a dealer for ADT and Monitronics we can provide that for you at your request.

1 2 3

BBB found business made good faith effort to resolve complaint but customer not satisfied with business response (6)

EXHIBIT A
PAGE 67

Home > Business or Charity Reviews > Burglar Alarms and Monitoring Systems > **Skyline Security Management, Inc.**

# BBB BUSINESS REVIEW

Text Size

What Is a BBB Business Review?

CONSUMER COMPLAINTS

BBB ACCREDITED BUSINESS SINCE
08/18/2008
## Skyline Security Management, Inc. (Headquarters)
(888) 775-9732

Print

## Customer Complaints Summary

19 complaints closed with BBB in last 3 years | 11 closed in last 12 months

| Complaint Type | Total Closed Complaints |
|---|---|
| Advertising / Sales Issues | 12 |
| Billing / Collection Issues | 1 |
| Problems with Product / Service | 6 |
| Delivery Issues | 0 |
| Guarantee / Warranty Issues | 0 |
| **Total Closed Complaints** | **19** |

**Additional Complaint Information**

Some previous complaints relate to allegations of representatives purporting to be from ADT. The company has advised our office that they have reorgaized their staff and have enforced training with their sales representatives. Recent complaints do not reflect that representatives are leading customers to believe they are affiliated with ADT.

Complaint Details |Definitions |BBB Complaint Process |File a Complaint

## Complaint Breakdown by Resolution

Complaint Resolution Log                              BBB Closure Definitions

| | Complaint resolved with BBB assistance (13) |
|---|---|
| | BBB found business made good faith effort to resolve complaint but customer not satisfied with business response (6) |

 08/29/2011   Problems with Product/ServiceView Details

### Additional Notes

**Complaint:** 08/29/2011: Since July 28, 2011 when our phone service was switched from Time Warner to AT&T, our security system has not worked. We contacted Skyline Security and informed them of the problem. They initially said that their equipment is not compatible with AT&T's service. They sent service personnel 3 or 4 times over the last three weeks to remedy the problem, each time resulting in our loss of phone service or the non-functioning of their security system. When we requested that our contract with them be cancelled and that they retrieve their equipment, they refused, and insisted once again that they send out service personnel, at their convenience, to remedy the problem. We informed them that we are no longer willing to suffer their incompetence and the lack of security service, as well as our home phone service, and that we want our contract terminated. They are attempting to bully us and will not even consider our request and tell us that they will send us to collections. Each time they have sent installation personnel to our home they have improperly installed their equipment, damaging our home walls and windows, and spending hours of our time causing a tremendous inconvenience to my wife and myself. It has been a thoroughgoing disaster from the beginning.

QUICK LINKS

File a Complaint

ASSOCIATED SEARCHES

Still searching? Find more businesses offering similar services.

FEEDBACK

RECOMMEND

Would you recommend this review to others?

**Please Select:**   Yes   No

SHARE WITH US

To better assist you, please take our brief survey about the format / readability of this review so that we may continually improve your experience.

CONTACT US

Use our Contact Us page to get in touch with us if you have any issues, questions or concerns.

**EXHIBIT A
PAGE 68**

**Business response:** The company advised the BBB on October 17, 2011 that they agreed to cancel the customers contract, and cease all billing. They also picked up the equipment. The issue was resolved.

**Consumer rebuttal:** The company did collect their equipment, at our request, but we have had no confirmation from them that they have cancelled the contract between us.

07/22/2011   Advertising/Sales IssuesView Details

### Additional Notes

**Complaint:** 07/22/2011: Rep came to door early eve that Saturday. I was not feeling well and was in night clothes. He told me he needed to upgrade my equipment/ battery was dangerous. I explained not feeling well and he said only needed 5 minutes & came in. Over half an hour later he left after convincing me to renew a 3 yr contract with new equipment. In the meantime he led me to believe he was connected to previous installer. I am a 74 yr old woman and do not need another 3 yr contract. After digesting what went on I called and cancelled prior to installation and within the 3 day cancel agreement. I requested my checks be returned. They said they normally shred and I said I wanted them returned. As I noted above I find out Cris, the rep, never sent my paperwork in. He also came to my door and called me the day I cancelled even though I asked he not contact me. He had to be the one to cancel my ADT coverage since he had not processed the paperwork. Fortunately the Company notified me of the cancel request. I changed my password since they had my old one and told ADT not to cancel by anyone but me or my children (in case of death or serious health issues). I feel I need to check every month to make sure my needs are taken care of (I have a life alert).

**Business response:** We would like to take this time to apologize for any misunderstandings consumer had with attempting to transfer her alarm system. As of 06/21/2011 consumer's account was canceled out at no penalty and system was never installed. Consumer has no obligation with Skyline Security nor Monitronic's Alarms. Once an account has been canceled we make sure to have checks shredded to avoid check floating around and accidentally being cashed. We can assure that consumer will not be charged for the two check that were given check # 627 and check # 628.

**Consumer rebuttal:** When I questioned my two checks the company told me they did not have them as rep did not process. Now they say they shredded (even though when I cancelled with the Company office I requested checks be returned. I am just glad I did not go through with this transaction of changing company.

**Final business response:** Company called stating the checks were not cashed, they were shredded and as previously stated they did help the consumer cancel account with no penalty. They offer apologies to the consumer for any inconvenience.

07/19/2011   Billing/Collection IssuesView Details

### Additional Notes

**Complaint:** 07/19/2011: Consumer states she had alarm system installed on 6.9.11. The company came out and installed under the promotion but never disclosed the right to cancel on the contract. The alarm system went off the police came out and asked for her son. She was furious and learned that the contract was written under her son's name even though she signed. Her son is not the owner of the home. At that time she contacted the company asking to cancel the contract informing she could no longer afford it. She was told that the monthly costs were so minimal she could afford it. She was assured a new contract would be written but it was not. She decided she no longer wants their service but was told because it was past the 3 days she would be responsible for paying 1500.00, the term of the contract. She cannot afford to and the contract was signed by her but in her son's name as they never changed the contract.

**Business response:** We have canceled the agreement with her sons name and have placed consumer as the primary, new contract will be signed by consumer. Consumer is agreeing to continue with the agreement since she was the one who originally signed the contract. The Right to cancel is in bold writing above the signature. We would like to take this time apologize for any misunderstandings or inconveniences this may have caused our client.

**Consumer rebuttal:** REVISED: Consumers state the contract should be null & void as company agreed and therefore company should cease harassing phone calls to her & her son and pick up their equipment. ---------------------
--------------------------------------------------------------- Consumer states: The company was supposed to come out and have a new contract signed. That is not what they did, they came to my house asking for a check and I gave them a voided. There was no contract signed. I told the company I no longer trust them. I no longer want to do business with this company. The company then called me this week, welcoming my son to the company. The system has been disarmed since July. They are causing too much trouble. Please come and pick up equipment immediately.

EXHIBIT A
PAGE 69

**Final business response:** We have already cancelled the agreement which was under Eddie's name and switched it over to Patricia's name as requested. We have not made any harassing calls as customer is stating we have made customer aware to come in to our office to sign a new agreement but customer has not responded. We can schedule a representative to go visit customer to have a new agreement signed if requested by the customer. Patricia signed the previous agreement and is responsible for contract terms. Last time we spoke to customer she was agreeing to continue with the contract and was not requesting to cancel we did make her aware of contract terms. Please have customer contact our office at 562-622-7114 to schedule an appointment to either come in or have a representative go out to her location and sign a new contract. Thank You

 03/11/2011   Problems with Product/ServiceView Details

**Additional Notes**

**Complaint:** 03/11/2011: Since the installation of the alarm system I have not been able to use the alarm system properly. The system keep giving a false alarm and went the system is reset it happens again. while we are at home and the system I not on the sensor in the garage keeps going off and then we hget a call that the alarm has been trigered when it has not. my family and I are concerned about this since we have heard our neighbors complain of burglaries in the past.

**Business response:** We recently serviced customers alarm system because he did not have a phone line so we added a cell unit and some additional contacts for the garage at no cost. We have left message on Franks cell phone and wife Ana cell phone but no response yet from customer, we have a tech manager ready to service customers system to resolve issue at no cost to customer but have not recieved a call back.

**Consumer rebuttal:** REVISED05/18/11: Consumer called stating his complaint has not been resolved as company has not properly repaired his alarm system. Company sent tech out 04/20 for repairs but he is still experiencing the same problems, having false alarms. Consumer recently called company to bring this to this to their attention and tech was scheduled to come out on 05/18 but company called to reschedule for Monday, 05/23. Consumer is frustrated with not having a properly working alarm system for over a year now after this being the 6th time he has had to call company to come out & repair. Consumer states when he spoke to company rep on 05/17 she informed him that they had no record of it being his 6th repair call, which to him reflects company's lack of concern. Consumer is willing to give company one more opportunity to repair his alarm system but seeks company to cease from billing him until the system is properly repaired and working and if system cannot be repaired he seeks company to honor their 04/20 response to BBB stating: "If we are unable to resolve this issue with this service call we will refund and cancel per customers request. We wish to keep the customer happy." .

**Final business response:** We do apologize for any inconvenience this may have caused the customer. We have replaced and installed brand new contacts where customer has been having problems. The service date was changed to May 23rd because we wanted to make sure we sent a tech that would be able to spend as much time as needed in order to make sure Mr. Frank is satisfied and system if working properly. We once again want to apologize for the equipment malfunction and want to assure that our products are very trust worthy and last a long time. We understand Mr. Frank's frustration and would like to give a credit to his account for one month or until issues have been fixed. We once again would like to apologize for any inconveniences this may have caused the customer. Thank You!

04/21/2010   Problems with Product/ServiceView Details

**Additional Notes**

**Complaint:** 04/21/2010: The service wasn't done correctly the sales Rep: misrepresented the contact, and the last sales Rep. He didn't even know the system, then tried to steal a battery form the old system. I stopped him, I cant trust what this company saids, I call ,they don't hear me, and still they couldn't fix their system. No matter ho many times I Call them, I gave them apple enough time to fix this issue. I cant take another phone call from them they don't hear me to please give me a cancelation number, It to stressful for me.

**Business response:** Attempted to contact this customer to resolve this issue. Left message on both contact numbers.

**Consumer rebuttal:** They still haven't come to a agreement with me,to cancel the contract and refund me my money. I dont trust there company because one of there Rep.tech was going out my front door with property of mine without my permission. I feel the company make's me feel uncomfortable. When I brought it up to the company, their responds was, he didn't get away with it. So want's the problem. So I'm sure no one wants anyone in their home that will pick up something that doesn't belong to them. And have the Rep: call you and curse you out, for something they did. I didn't deserve to be treated like this. Justfor a alarm system.

**Final business response:** The company called and states that the customer has been contacted. The company issued a full refund of $179 for

EXHIBIT A
PAGE 70

the months without service, as well as a letter of cancellation. They will be setting up a date to come retrieve the equipment.

1 2

EXHIBIT A
PAGE 71

Home > Business or Charity Reviews > Burglar Alarms and Monitoring Systems > **Skyline Security Management, Inc.**

# BBB BUSINESS REVIEW

Text Size

What is a BBB Business Review?

CONSUMER COMPLAINTS

BBB ACCREDITED BUSINESS SINCE
08/18/2008
**Skyline Security Management, Inc. (Headquarters)**
(888) 775-9732

Print

**QUICK LINKS**

File a Complaint

**ASSOCIATED SEARCHES**

Still searching? Find more businesses offering similar services.

**FEEDBACK**

RECOMMEND
Would you recommend this review to others?

**Please Select:**   Yes   No

SHARE WITH US
To better assist you, please take our brief survey about the format / readability of this review so that we may continually improve your experience.

CONTACT US
Use our Contact Us page to get in touch with us if you have any issues, questions or concerns.

## Customer Complaints Summary

19 complaints closed with BBB in last 3 years | 11 closed in last 12 months

| Complaint Type | Total Closed Complaints |
|---|---|
| Advertising / Sales Issues | 12 |
| Billing / Collection Issues | 1 |
| Problems with Product / Service | 6 |
| Delivery Issues | 0 |
| Guarantee / Warranty Issues | 0 |
| **Total Closed Complaints** | 19 |

**Additional Complaint Information**

Some previous complaints relate to allegations of representatives purporting to be from ADT. The company has advised our office that they have reorgaized their staff and have enforced training with their sales representatives. Recent complaints do not reflect that representatives are leading customers to believe they are affiliated with ADT.

Complaint Details |Definitions |BBB Complaint Process |File a Complaint

## Complaint Breakdown by Resolution

Complaint Resolution Log                                      BBB Closure Definitions

 Complaint resolved with BBB assistance (13)

 BBB found business made good faith effort to resolve complaint but customer not satisfied with business response (6)

 04/16/2010   Advertising/Sales IssuesView Details

**Additional Notes**

**Complaint:** 04/16/2010: The tried to pressure me into buying their system. I researched on the internet and did not like what I found. They kept trying to explain away the reviews. Because I stood firm an not purchasing the regional sales manager told me I had no brain. I was shocked! Then when I called the sales guy, Shane Martin, to get that persons name Shane told me that he was not going to waste anymore time on me and then he hung up on me. They became Jekyll and Hide because I would not buy. They can't make me buy and should respect my decision not to. In addition, when Shane was trying to sell the product I caught him in about 10 lies. That is what encouraged me to do some research. Shane was just a kid. I feel really bad that he is stooping so low at such a young age. It is really unfortunate.

**Business response:** Company called and states that the salespersons in question were reprimanded and retrained. They had a long talk with the customer, and everything should be settled at this point.

**Consumer rebuttal:** They call and we discussed the matter. Although I will not do business with this company I do appreciate them taking the time to call and discuss the issue.

EXHIBIT A
PAGE 72

1 2

EXHIBIT A
PAGE 73

EXHIBIT "B"

## DECLARATION OF JUNE ADAMS

I, June Adams being duly sworn according to law, depose and say that I am Assistant General Counsel for ADT Security Services, Inc. ("ADT") and am authorized to execute this Declaration on its behalf.

I certify, under penalty of perjury, that the foregoing facts stated it this Declaration are true and correct to the best of my knowledge, information and belief.

1.      ADT's Legal Department tracks complaints related to deceptive sales practices that are received directly or forwarded into the department from ADT's operations. Some of the complaints received include customer complaints about other alarm or security companies, including Skyline Security Management, Inc. ("Skyline").

2.      Attached to this declaration as Exhibits 1 and 2 are true and correct copies of charts summarizing the complaints ADT's Legal Department received in 2010 and 2011 which involve or reference Skyline.

3.      In 2010, ADT employed outside legal counsel to contact Skyline concerning complaints ADT had received from customers about Skyline's deceptive sales tactics. Attached to this declaration as Exhibits 3 and 4 are true and correct copies of ADT's October 7, 2010 Letter to Skyline and Skyline's October 12, 2010 Letter in response.

4.      On or about June 7, 2011, I spoke with the President of Skyline, Edwin Arroyave by telephone. On or about June 14, 2011, I forwarded a letter to Mr. Arroyave to follow up on our telephone conversation. True and correct copies the June 14, 2011 letter to Edwin Arroyave and Mr. Arroyave's acknowledgement of receipt are attached hereto as Exhibit 5.

EXHIBIT B
PAGE 74

5.      On or about June 24, 2011, I received an email from Mr. Arroyave to which he attached a letter in response to my correspondence of June 14, 2011. A true and correct copy of the June 24, 2011 letter from Edwin Arroyave is attached hereto as Exhibit 6.

6.      On or about July 12, 2011, counsel for ADT sent a letter to Skyline, a copy of which was forwarded to the ADT Legal Department. A true and correct copy of this letter, without its enclosures, is attached hereto as Exhibit 7.

7.      On or about July 29, 2011, counsel for Skyline faxed a letter to counsel for ADT, a copy of which was forwarded to the ADT Legal Department. A true and correct copy of this letter is attached hereto as Exhibit 8.

8.      Skyline and ADT continued to discuss a settlement agreement during 2011. On or about December 30, 2011, counsel for ADT sent counsel for Skyline a proposed settlement agreement.

9.      On or about February 14, 2012, counsel for Skyline responded to counsel for ADT stating in part that Skyline believed a settlement agreement was no longer needed.


I understand that false statements made herein are subject to the penalties of Title 28 U.S.C. §1746.

Dated: 3/28/2012

EXHIBIT B
PAGE 75

-2-

# EXHIBIT  1

# SKYLINE

## 2010

EXHIBIT B
PAGE 77

| Last Name | First Name | City, State | Contact Type | Described Activity | Source of Information | Date of activity | Dealer |
|---|---|---|---|---|---|---|---|
| Dodds | Lois | Tustin, CA | Door to Door | Customer had a visit from Skyline Security where the representative told the customer that his company made the ADT equipment in her home. He went on to state that the equipment was inferior and he was out to offer her an update on her equipment. he also told her that becase of the old equipment, the police would not respond as fast. customer specifically asked if he was from ADT and he kept saying that he makes ADT equipment. He did not have any ADT equipment and he also left a card after asked by customer for one. | Sharon Watkins | May 20, 2010 | Skyline |
| Silva | Dennis | Visalia, CA | Email | Pam Silva forwarded a copy of an email she received about Skyline claiming to be an ADT authorized dealer in order to solicit business. She states that the business is representing themselves as ADT and that the people behind the name are being investigated by the DA in her area. The company used to be affiliated with ABC Alarm- a former dealer of ADT- who she actually sued and won judgment. She provided contact info for the owner of the company she sued. | Michael Schultz | June 8, 2010 | Skyline |
| Rawald | Maria | Los Angeles, CA | Door to Door | Marketing consultant went to the customer's home and told her that he was with ADT and wanted to upgrade her system to a new system that would link with On-Star. Customer refused and sent him away bu then called into to ADT to verify what he said. He did eventually admit to her he was NOT with ADT. | Corporate Fax | July 1, 2010 | Skyline |
| Detwiler | Patricia | Santa Ana, CA | Door to Door | Customer called in stating tha a dealer from Skyline Security came at the house claiming to be ADT, alleging he was there to check her system. She was advised tha her equipment needed to be updated, so she signed the paperwork for it to be done. She soon discovered that the company was not ADT once they removed the ADT equipment and signs. The one time she was able to reach someone, she was told that since she signed the contract, she was legally bound to Skyline Security. | Sharon Watkins | May 12, 2010 | Skyline |
| Nelson | Paul | Anaheim, CA | Door to Door | Skyline came to customer's residence and implied that they were ADT and wanted to upgrade his system. As a result, the ADT system was replaced and is now being monitored by Monitronics. The customer signed an agreement for three years of monitoring. The customer has already contacted the company and they are pulling their equipment. The daughter of customer got involved and is currently sending in complaints regarding Skyline. She has documented all of the activity. | Del Nelson | June 1, 2010 | Skyline |

EXHIBIT B
PAGE 78

# EXHIBIT  2

# SKYLINE

## 2011

EXHIBIT B
PAGE 80

| Last Name | First Name | City, State | Contact Type | Described Activity | Source of Information | Date of activity | Dealer |
|---|---|---|---|---|---|---|---|
| Richert | Wesley | Stockton, CA | Door to Door | Skyline representatives, wearing ADT badges came to the door claiming they were there to update his system. They claimed they would give him a new Module. The entire time mr. Richert believed that they where members of ADT, until after he had signed a contract. They said they were associated with ADT and would work with us on this matter. He was then called by another individual Jerry S. He is sending all materials including a business card of the rep, and the contract from skyline. | Diana Espio Jacksonville account rep | March 31, 2011 | Skyline |
| Milner | Jim/Shawna | Huntington Beach, CA | Door to Door | This customer states they were contacted by Skyline Security advising them that they can switch out their system. The customer states they told her what kind of system she had installed, when she was activated, and also had accessed to their address and phone number which the customer states is unlisted. When she asked Eric Willis from Skyline Security how they got their information, she was told it was purchased from Lee or Lead Brokers online through the internet. She didn't have a phone number for them or an address. She is concerned about her information being solicited from ADT and she wants a call back to see how they received her information about her alarm. | Addison Perez Customer Service Representative, Direct Service Jacksonville Account Services Center | April 20, 2011 | Skyline |
| Trembath | Louis | Santa Ana, CA | Door to Door | Mrs. Trembath says she has made an appointment for this Friday to have the work done and decided to check with ADT to make sure Skyline is legit. She doesn't remember the verbiage but she states that they gave her the impression that they were working for ADT. She was told that teenagers would cut her phone lines and that would block her access from coming or leaving. They gave her two phone numbers:<br><br>1-888-777-8129<br>1-253-736-4766<br><br>And they also gave her a number SA1796<br>Mrs. Trembath is very disturbed that Skyline knew when she started service with ADT and what type of equipment she had etc. She wants to know why ADT is giving out this information.<br><br>Mrs. Louis Trembath just called back and said her local police dept. would not take a complaint on this company. They told her that Skyline is based in Downey and they are just trying to get her business. | Sharon Watkins | April 20, 2011 | skyline |

| Last Name | First Name | City, State | Contact Type | Described Activity | Source of Information | Date of activity | Dealer |
|---|---|---|---|---|---|---|---|
| Richert | Wesley | Stockton, CA | Door to Door | Skyline representatives, wearing ADT badges came to the door claiming they were there to update his system. They claimed they would give him a new Module. The entire time mr. Richert believed that they where members of ADT, until after he had signed a contract. They said they were associated with ADT and would work with us on the matter. He was then called by another individual Jerry S. He is sending all materials including a business card of the rep, and the contract from skyline. | Diana Espio Jacksonville account rep | March 31, 2011 | Skyline |
| Milner | Jim/Shawna | Huntington Beach, CA | Door to Door | This customer states they were contacted by Skyline Security advising them that they can switch out their system. The customer states they told her what kind of system she had installed, when she was activated, and also had accessed to their address and phone number which the customer states is unlisted. When she asked Eric Willis from Skyline Security how they got their information, she was told it was purchased from Lee or Lead Brokers online through the internet. She didn't have a phone number for them or an address. She is concerned about her information being solicited from ADT and she wants a call back to see how they received her information about her alarm. | Addison Perez, Customer Service Representative, Direct Service Jacksonville Account Services Center | April 20, 2011 | Skyline |
| Trembath | Louis | Santa Ana, CA | Door to Door | Mrs. Trembath says she has made an appointment for this Friday to have the work done and decided to check with ADT to make sure Skyline is legit. She doesn't remember the verbiage but she states that they gave her the impression that they were working for ADT. She was told that teenagers would cut her phone lines and that would block her access from coming or leaving. They gave her two phone numbers:<br><br>1-888-777-6129<br>1-253-736-4766<br><br>And they also gave her a number SA1795<br>Mrs. Trembath is very disturbed that Skyline knew when she started service with ADT and what type of equipment she had etc. She wants to know why ADT is giving out this information.<br><br>Mrs. Louis Trembath just called back and said her local police dept. would not take a complaint on this company. They told her that Skyline is based in Downey and they are just trying to get her business. | Sharon Watkins | April 20, 2011 | skyline |

| Name | Business | Location | Type | Description | Contact | Date | Company |
|---|---|---|---|---|---|---|---|
| King | Marsha | Los Angeles, CA | Door to Door | Ms. King was contacted by Skyline Security over the weekend telling her that her home is in jeopardy of a break in because she does not have a radio back up. They know all of her personal information as well as how long she has been with ADT. She was told that ADT endorsed their product and was encouraging their customers to sign with Skyline Security. Ms. King was also told to google ADT and she would see that ADT is in a class action law suit. She is requesting a manager She is afraid this company may take revenge out on her if she writes a letter or anything that would alert them that she has reported them. | Watkins, Sharon | April 25, 2011 | Skyline |
| Hunter | Willie | Los Angeles, CA | Door to Door | Skyline Representative came to customers door purporting to be from ADT. Rep was wearing ADT shirt and Name tag - Victor Marquez. Also Went to neighbors homes.   Reps #901-879-9344. Skyline Security . signed up customer, he called and cancelled with skyline the same day | Gaccetta, Stephanie J | May 5, 2011 | Skyline |
| Bermudez | Ruth | Santa Ana, CA | Door to Door | ruth bermudez was told by skyline company that she can cancel with adt and they switched her for service and equipment...cust is upset with the other company for lying. | Harold F. Johnson Spanish Team Manager Jacksonville CMC | May 7, 2011 | Skyline |
| Business | Josephine Beauty Salon | San Antonio, Texas | Door to Door | Skyline going into one of our customer's business, saying that she is out of her contract and that ADT is stealing from her because of charging her CTC's.  She ended up letting them take our equipment out and putting theirs in.  She wants to be with ADT. | Harold F. Johnson Spanish Team Manager Jacksonville CMC | May 9, 2011 | Skyline |
| Lowe | Theresa | Los Angeles, CA | Door to Door | Was approached by a skyline rep named AU, Was told that coming in the next couple of months all of the ADT systems will become obsolete, and that Skyline was the new security provider in the area, and that ADT was handing over these customers to skyline. The representative led Theresse to believe that they where associated with ADT. Additionally, they claimed that because ADT was going to make an upgrade of her system Mandatory, it would cost her 1,000's of dollars if she did not switch over to Skyline. The rep told Thereoso to not contact ADT, and that Skyline and ADT were working closely together and that the Rep would handle everything in regards to cancellations. | Susan C Parker Area Operations Manager Patrol CA/NV ADT Security Services 21171 S Western Ave Torrance, CA 90501 | May 18, 2011 | Skyline |
| Lowe | Armien | Los Angeles, CA | Door to Door | All a representative from Skyline came to Armien's home claiming that a big mandatory upgrading of equipment will be starting in July, ADT doesn't have this equipment and General Electric does. They told Armien not to call ADT regarding changing systems, and that Skyline and ADT are working closely together, and that they would take care of everything in regards to changing the system to skyline. | Daniel Sands- Spoke to this customer directly after being handed over by Thereasa Lowe | May 18, 2011 | skyline |
| Ross | | | | | | | |
| Impression Oaxaquena | (Business) | Los Angeles, CA | Door to Door | Customer, Zorafino Garcia called in to ADT and stated a female come to his business and told him ADT was going to close down and change to come to Skyline. Since this was happening, his account was going to close and he will need to sign with Skyline. There will be no cancellation fees from ADT. Skyline also said they would provide new equipment.  He claims his ADT system wasn't working anyhow, so that seemed like a good deal.  But now he received a bill and he has cancellation fees. | | May 19, 2011 | |

| Name | First | City | Method | Description | Contact | Date | Company |
|---|---|---|---|---|---|---|---|
| Goble | Patty | San Pedro, CA | Phone | A representative from Skyline Security called Ms. Goble from the phone number 253-736-2301. The Representative from Skyline told Ms. Goble that he knew she was an ADT customer and how old her security system was, and that her security system was not up to date. Ms. Goble was concerned Skyline had her personal information because her phone number was not listed. She believed Skyline was taping her phone call. Ms. Goble told the representative not to call anymore, that she would discuss the matter with her husband and call back the representative if she wanted to learn more about options from Skyline. Despite being told not to call again, a representative from Skyline called from the same number at least one more time within two weeks of the first call. | | April 12, 2011 | Skyline |
| Leedom | Jeanine | Foothill Ranch, CA | Phone | The following customer was contacted by Skyline Security (888-777-6129) telling them that they are not safe to have an alarm with ADT because the phone lines can be cut. She was also told that ADT would charge them $600.00 to put a radio back up on their alarm. The customer is a business woman so she asked how they got her information because they knew how long she was a ADT customer, what type of equipment etc. She was told that they purchased the information but couldn't say from who. The customer has said that she would send an e-mail with details but there has not been one sent as of today. The customer wants to know how these people got her information and why doesn't ADT protect it. | Sharon Watkins | April 18, 2011 | Skyline |
| Anthis | Bob | Dana Point, CA | Phone | Bob Anthis received a call from Skyline Security. They wanted to upgrade his system by adding a radio. They allowed the customer to believe that they were ADT until the customer started asking questions. Again, Mr. Anthis was upset that they had his information and that ADT is giving out the information to other companies. | Sharon Watkins | April 20, 2011 | Skyline |
| Ho | Hansen | Diamond Bar, CA | Phone | customer has been contacted by Skyline Security claiming that they have taken over ADT customer base is calling about the fact that they do not have back up radio. Skyline told Mr. Ho that that leaves his home without proper protection, thought that they were affiliated with ADT. | Sharon Watkins | April 21, 2011 | skyline |
| Nixon | Brian | Long Beach, CA | Phone | customer was contacted by Skyline Security (Also went by the name Simply Alarm) in regards to his account. Customer is concerned because he has already had a break-in. He states the agent that spoke with him advised him that the system he currently has will not protect him, and was very pushy and demanding. He further stated that the agent described to him the exact system he has in his home, and the year it was installed. The number he was called on is his cell phone number not his premise number.

Customer is contacting his attorney and is considering filing legal action against ADT for letting this information get into the hands of a third-party company. He would like to be called back in regards to this to know what ADT is going to do. | | April 28, 2011 | Skyline |
| Luther | Ronald/Ruth | Cowan Heights, CA | Phone | Skyline Security calling them about their system. Told them that ADT was being sued by the state of California and that they do not have proper coverage for their home because they need a back up radio. | Heather Page Corporate Customer Relations Consultant | May 5, 2011 | Skyline |

EXHIBIT B
PAGE 84

| Korneff | Neil | Diamond Bar, CA | Phone | Was Solicted by Skyline over the phone, claiming they wanted to "upgrade" the system to digital. Called angry that skyline had all of their information, on following up with the complaint, Skyline in this case did not represent themselves as being a part of ADT. | | May 16, 2011 | Skyline |
|---|---|---|---|---|---|---|---|

EXHIBIT B
PAGE 85

# EXHIBIT  3

# SANDER INGEBRETSEN & WAKE P.C.

ATTORNEYS AT LAW
1660 17TH STREET, SUITE 450
DENVER, COLORADO 80202
PHONE: 303-285-5300
FAX: 303-285-5301

DIRECT: 303-592-5169
EMAIL: rsander@siwlegal.com

RICHARD G. SANDER

October 7, 2010

**VIA OVERNIGHT DELIVERY AND UNITED STATES MAIL**

Owner/Manager
Skyline Security Management, Inc.
8211 Firestone Blvd., 1st Floor
Downey, CA  90241

     **RE:**   **Unauthorized use of Intellectual Property**

To Whom It May Concern:

     This firm represents ADT Security Services, Inc. ("ADT"). It has come to our attention that representatives from Skyline Security Management Inc., and/or an affiliated entity ("Skyline") have been using ADT's intellectual property, including but not limited to its trade name and trademarks, in connection with Skyline's sales practices. Skyline does not have authority to use the ADT's intellectual property, including but not limited to the ADT trade name, trademarks, and ADT logo (collectively "ADT's IP"), in connection with your marketing practices or otherwise. This letter is to place you and your company on formal notice that your past and continued use of ADT's IP constitutes a serious violation of state and federal consumer protection laws, trademark laws, laws and administrative rules prohibiting unfair and deceptive trade practices, and other state and federal laws.

     You and your company are directed to immediately cease and desist from (1) using ADT's IP, including but not limited to the trade name, trademark, and ADT logo; and (2) contacting or soliciting customers using ADT's IP. Further, you and your company must immediately execute the attached "Acknowledgment and Agreement" and cause it to be delivered to the undersigned within ten (10) days of the date of this letter.

     In the event that ADT does not receive such written assurances within the time frame prescribed above, or learns that you are continuing to improperly solicit its customers, ADT hereby reserves its right to pursue all legal remedies available.

     Sincerely,

     Richard G. Sander

cc:    June Adams (by email)

EXHIBIT B
PAGE 87

# ACKNOWLEDGMENT AND AGREEMENT

This Acknowledgment and Agreement is entered this _____ day of _____, 2010, by _____, an individual, and by Skyline Security Management, Inc., a corporation with its principal place of business and corporate office at 8211 Firestone Blvd., 1st Floor, Downey, CA 90241.

WHEREAS, ADT SECURITY SERVICES, INC. (hereinafter referred to as "ADT") has informed the above-named parties of certain deceptive and illegal sales practices committed by Mr. _____ and said party desire to avoid further violations and illegal sales practices.

By signing this Acknowledgement and Agreement, the above-named parties pledge to immediately cease the sales practices that are the source of ADT's complaint and respond in writing to ADT within (45) forty-five days of receipt hereof of the preventative and restorative measures taken to ensure that future deceptive sales practices do not occur and otherwise identify the customer accounts for which improper actions were taken.  Such response shall be mailed to:

**Sander Ingebretsen & Wake, P.C.**
Attorneys at Law
1660 17th Street, Suite 450
Denver, CO 80202

With a copy to:

**ADT Security Services, Inc.**
One Town Center Road
Boca Raton, FL 33486

Signed: this day_____ of _____, 2010.

BY:   _____        BY:   _____

ITS:   _____

EXHIBIT B
PAGE 88

# EXHIBIT  4

Edwin Arroyave
Skyline Security Management, Inc.

October 12, 2010

Dear Mr. Sander:

I received your October 7, 2010 letter regarding my Skyline Security Management, Inc.'s ("Skyline" or the "Company") purported conduct. Please be advised that Skyline takes these accusations very seriously and that we deny violating any state or federal laws of any kind. On August 24, 2010, at the time it ceased doing business with ADT, Skyline informed its employees that they should no longer use ADT's name or other property, and will reiterate that directive again in light of your letter. In addition, if you have specific information about which Skyline employee is purportedly engaging in the conduct alleged in your October 7 letter, the Company will promptly investigate those allegations and take appropriate disciplinary action.

I trust that this adequately addresses your concerns. Please contact me if you have any questions.

Very truly yours,

Edwin Arroyave
Chief Executive Officer,
Skyline Security Management, Inc.

EXHIBIT B
PAGE 90

eb-Based Email :: Print

http://email04.secureserver.net/view_print_multi.php?uidArray==1260|INBOX,Sent_Items...

Print | Close Window

Subject: We are no longer accepting adt at skyline

From: ea@skylinesecurity.org

Date: Tue, Aug 24, 2010 6:13 pm

To: "Nancy Arteaga" <nancy.arteaga@skylinesecurity.org>, "Natasha esparza" <n.esparza@yahoo.com>, "Dave C" <dcaro77@yahoo.com>, "John3108558010 Arroyave" <john_arroyave0315@yahoo.com>, "Alex (albert delgado)" <downeycollections@yahoo.com>, "Yesenia" <ynieto27@gmail.com>

Cc: "Steve Baker" <Sbaker@monitronics.com>

To: All Skyline Employees
From: Edwin Arroyave - CEO Skyline Security Management

As of August 25, 2010 Skyline Security Management will solely be an authorized dealer for Monitronics. Due to a conflict of interest, we will no longer be doing any ADT sales, Monitronics ONLY. *also, please no more adt signs, shirts etc - monitronics, skyline and GE only.

From this point on if you continue selling ADT systems for any other authorized dealer your employment at Skyline Security Management will immediately be terminated. In addition, we will hold any of your pending Monitronics alarm deals as reserves for chargebacks for 13 months.

If you have any questions regarding this matter, don't hesitate to contact me. However, I believe I have made myself clear that from now on Skyline will be selling MONITRONICS deals only.

To reiterate, if I find out you are submitting deals through another dealer, you are forever done here.

My apologies for having to be so blunt, but, I refuse to risk our amazing relationship with Monitronics for some Sales Rep not playing by the rules. Skyline and Monitronics are a great team and if you want to be a part of it, you have to behave like a team player. If you don't follow my instructions, there is no "get out of jail free card", you will be fired immediately.

From here on out, if you know of an employee that is not following new guidelines/regulations please let me know and you will be compensated for your company loyalty.

Thank you all for understanding and implementing new strategies to your sales pitches so that we end 2010 with a bang.

Best,
Edwin Arroyave

Sent on the Sprint® Now Network from my BlackBerry®

EXHIBIT B
PAGE 91

Copyright © 2003-2010. All rights reserved.

10/9/2010 9:17 AM

# EXHIBIT  5



**June Adams**
**Assistant General Counsel**
**ADT Security Services, Inc.**
One Town Center Road
Boca Raton, FL 33486
Tel: 561-988-3606
Fax: 561-892-0938

June 14, 2011

Edwin Arroyave
Skyline Security Management, Inc.
8211 Firestone Blvd 1st Floor
Downey, CA 90241

Dear Mr. Arroyave:

This letter is to confirm our June 7, 2011 telephone conversation regarding the actions of sales representatives of Skyline Security Management, Inc's. ("Skyline") unlawful use of ADT's trademark on business cards, flyers, and other items. Apparently, the actions appear to be an attempt to mislead ADT's customers to believe that Skyline has a business affiliation with ADT.

Per our conversation you have agreed to the following actions to address ADT's concerns:

(1) **Investigate and Report** - on what is known of past and present instances of the (1) misuse of ADT's trademark, (2) deceptive sales practices aimed at ADT's customers by Skyline, and (3) actions taken by Skyline to correct such instances.
(2) **Proposal to Address Current and Future Issues** - Skyline will provide ADT with a proposal as to what measures Skyline shall implement for the deterrence of deceptive practices by Skyline's representatives, agents, and employees in the immediate future, as well as long term.
(3) **Bounce Your Customer List** - Skyline agrees to enter into an account "bounce" process with ADT, which will be handled by an independent 3rd party vendor. Skyline's customer list (customer names and addresses) will be compared against ADT's customer list (names and addresses). This process will identify any of ADT's customers in their initial term, who are now Skyline's customers. The cost of the bounce process will be paid by ADT. The purpose of this procedure is to identify ADT's customers' potentially "converted" by Skyline. Once the "overlapping" customers are identified, the issue of whether a conversion occurred will be determined by customer interviews, with a script and implementation procedure mutually agreed to by both parties.

To implement the bounce process, we have enclosed the following documents:

(1) **3 Way Non-Disclosure Agreement** - This document ensures that all Skyline and ADT customer information is kept confidential.
(2) **Agreement to Bounce Accounts** - This is the agreement to implement the bounce procedure.
(3) **Licensed User Agreement for Services with Fulcrum** - This is the agreement to be signed with Fulcrum, the 3rd party provider, to implement the bounce process.
(4) **Work Order** - This is the document which describes the scope of the services retained from Fulcrum.

Please sign the documents (#1, #2, and #3) where appropriate, and return these documents within (5) business days upon receipt.

Best regards,

June Adams
Assistant General Counsel

EXHIBIT B
PAGE 93



06/16/2011

Dear June Adams,

     I received your letter dated June 14, 2011 (the "June 14 Letter") and have forwarded it to my lawyer for review. Unfortunately, she is out of the office this week and won't be able to assess the issues until next week. Accordingly, we will respond to the June 14 Letter by the end of next week.

Sincerely,

Edwin Arroyave

EXHIBIT B
PAGE 94

# EXHIBIT  6



June 24, 2011

Dear Ms. Adams:

Skyline Security Management, Inc. ("Skyline") received and reviewed your June 14, 2011 letter (the "June 14 Letter"). As a preliminary matter, your letter misrepresented, perhaps unintentionally, our June 7, 2011 conversation. Contrary to the insinuation in your letter, I did not at any time agree with you that Skyline had engaged in unlawful use of ADT's trademarks, etc. in "an attempt to mislead ADT's customers to believe that Skyline has a business affiliation with ADT." (June 14 Letter para. 1.) In addition, I did not agree that Skyline would undertake the actions listed in the second full paragraph of the June 14 Letter. As will be more fully explained below, Skyline has a company policy prohibiting use of company trademarks other than those of companies with which Skyline is currently doing business and violation of the policy is cause for (and has resulted in) termination of anyone engaging in such conduct.

Skyline has been in the business of selling and installing alarm systems since 2004. In connection therewith, Skyline engages independent contractors and sub-dealers, some of whom sold security services for companies other than Skyline, including ADT. Skyline is currently an authorized Monitronics dealer and has been since 2009. In addition, and as you are no doubt already aware, from May, 26, 2008 to September 1, 2010, Skyline was a sub-dealer, through Millennium Security of ADT security services. Millennium Security, which Skyline understood to be an authorized ADT dealer, provided Skyline with ADT yard signs, decals, etc. for use in selling ADT's security services and which Skyline used only in connection with selling ADT services. Indeed, during the time we were working through Millennium Security, we sold and installed approximately 700 ADT systems.

Skyline has in place, and enforces, a policy prohibiting use of company trademarks other than those of companies with which Skyline is currently doing business. Since September, 2010, skyline has had in place, and enforces a zero- tolerance policy. On the few occasions brought to our attention that our zero-tolerance policy was violated, we have always enforced the termination sanction. Skyline requires its independent contractors and sub-dealers to sign an agreement acknowledging its zero-tolerance policy. In addition, Skyline brands all marketing material with the logos, etc. of Skyline and the companies of which it is an authorized dealer. Moreover, Skyline's customer service department goes through a "double confirmation" process to ensure that the customer is knowingly and willingly switching services from its previous provider to Skyline/Monitronics. Of course, Skyline is not responsible for and is not at fault for a customer who wants to switch companies because they are unhappy with their current service provider.

Given the policies and procedures in place at Skyline, we do not see the propriety or necessity of entering into the overreaching agreements and burdensome procedures you suggest in the June 14 Letter and enclosures. In our June 7th conversation, you declined to provide me with any specifics of the alleged misconduct you claim Skyline is currently engaged in. Skyline will, of course, be happy to address any instances of alleged misconduct that you care to share with us and will enforce its zero-tolerance policy should you bring to our attention any such misconduct. In addition, we are, of course, willing to consider any appropriate suggestions that you may have to prevent these types of issues from arising.

I trust that I have addressed the issues raised in the June 14 Letter. Please feel free to contact me if you would like to provide specific examples of the alleged conduct of which you complain or if you have appropriate suggestions to further address these issues.

Sincerely,

Edwin Arroyave

EXHIBIT B
PAGE 96

# EXHIBIT  7

EXHIBIT B
PAGE 97

**Pepper Hamilton LLP**
——————Attorneys at Law——————

3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, PA 19103-2799
215.981.4000
Fax 215.981.4750

M. Kelly Tillery
direct dial: 981-4000
tilleryk@pepperlaw.com

July 12, 2011

**VIA FEDERAL EXPRESS**

Edwin Arroyave, President
Skyline Security Management, Inc.
8211 Firestone Boulevard, 1st Floor
Downey, CA 90241

Re:  ADT Security Services, Inc.. v. Skyline Security Management, Inc.
and Adison Ammo and Victor Marquez and Ali ___ and Jerry Saude
and Adreen G. and Ann Marie L.

Dear Mr. Arroyave:

This firm represents ADT Security Services, Inc. and ADT Services AG.

As you know from your June 7, 2011 telephone conversation with June Adams, Esquire, Assistant General Counsel of ADT Security Services, Inc., and from her June 14, 2011 letter to you, at least 16 ADT customers (15 in the Los Angeles area and 1 in San Antonio) have reported to ADT that Skyline Security Management, Inc. employees, including but not limited to those referenced in the above-caption, have engaged in illegal and unfair trade practices.

These practices include but are not limited to: 1) unauthorized use of the ADT Federally Registered Trademarks on apparel and/or badges in connection with promotion and sale of security systems, 2) representing affiliation with ADT and requiring homeowners to change their security system contract and systems to Skyline Security, 3) stating that "all of ADT's equipment will be obsolete," 4) stating that Skyline Security was the new security provider in the area and that ADT was handing over their customers to Skyline Security, 5) telling customers that they were required to upgrade their systems with Skyline Security systems, 6) representing that Skyline Security and ADT are working closely together on such upgrades, 7) telling customers that Skyline Security would handle everything related to cancellation of their ADT contract, 8) utilizing a flyer bearing ADT's Federally Registered Trademarks, 9) using business cards bearing the ADT Trademarks, 10) saying that ADT had partnered with Monotronics and that Skyline acts as a "broker for both companies", all of which are untrue and

#14528153 v1

| Philadelphia | Boston | Washington, D.C. | Detroit | New York | Pittsburgh |
| Berwyn | Harrisburg | Orange County | Princeton | Wilmington | |

www.pepperlaw.com

EXHIBIT B
PAGE 98

**Pepper Hamilton LLP**
Attorneys at Law

Edwin Arroyave, President
Page 2
July 12, 2011

in violation of the Lanham Act, 15 U.S.C. §1114 and §1125(a), California Business and Professions Code §17200 and §17500 and state common law of Unfair Competition, Trade Libel and Intentional Interference with Existing and/or Prospective Economic Advantage. I enclose with this letter for your reference a copy of Skyline collateral that includes ADT Trademarks that was provided to current ADT customers.

We have already obtained a number of affidavits from ADT customers in support of a legal action against Skyline and its agents detailing Skyline's illegal use of the ADT logo and various deceptive sales practices and continue to investigate and discover additional evidence of Skyline's illegal activities.

While I have read and appreciate the representations made by you in your June 24, 2011 letter in response to Ms. Adams, since this activity appears to be systemic, ADT requires further security that it will not happen again.

In that regard, we propose that the parties enter into a Settlement Agreement in which Skyline Security Management, Inc. will compensate ADT for its losses arising from Skyline's illegal conduct and represent that this type of activity will not occur in the future and that, if it does, a substantial Liquidated Damages provision will come into effect.

In addition, in order to insure that other ADT customers have not been deceived, we would require you to enter into a "Bounce Agreement" similar to the one sent to you along with the June 14, 2011 letter, a copy of which I have enclosed for your review.

The procedure we propose for the Bounce Agreement as set forth in the proposed Agreement is not at all unusual in this industry and it works quite well. The vendor which we use, Fulcrum, has provided this service for ADT and other security companies for quite some time and there have been no significant problems with the procedure from the standpoint of any of the parties.

In any event, the information that we seek via the Bounce Agreement would be readily discoverable in any federal lawsuit, indeed very quickly on a preliminary basis in preparation for a Preliminary Injunction Hearing.

As you may know, ADT aggressively enforces its Trademarks and does not tolerate this type of Unfair Competition by anyone in the industry. We are fully prepared to file a federal lawsuit against all persons involved in this illegal activity and to seek Preliminary Injunctive Relief therein. Such a lawsuit would also seek monetary damages, and attorneys' fees. If we have not been able to come to terms regarding a Settlement Agreement as referenced

#14528153 v1

EXHIBIT B
PAGE 99

**Pepper Hamilton LLP**
<span style="font-size:smaller">Attorneys at Law</span>

Edwin Arroyave, President
Page 3
July 12, 2011

above and a Bounce Agreement, ADT will have no choice but to seek this same type of relief from a Federal Judge.

Please get back to me as soon as possible. If I have not heard from you by July 18, 2011, we shall have no choice but to institute an action in the United States District Court seeking relief in order to protect the interests of ADT.

I trust that will not be necessary and that you will agree to discuss the settlement as proposed.

Sincerely yours,

M. Kelly Tillery
Counsel for ADT Security Services, Inc.
and ADT Services AG

MKT:pab
Enclosures
cc:    Michael Epstein, Esquire
       June Adams, Esquire
       Lee Jackson, Esquire

#14528153 v1

EXHIBIT B
PAGE 100

## CONFIDENTIALITY AND NON-DISCLOSURE AGREEMENT

**THIS CONFIDENTIALITY AND NON-DISCLOSURE AGREEMENT (the "Agreement")** is entered into this _____ day of June, 2011 (the "Effective Date") by and between Skyline Security Management, Inc. a California Corporation, with offices at 8211 Firestone Blvd,1st Floor, Downey, California 90241, ("**Skyline**"), ADT Security Services, Inc., with offices at One Town Center Road, Boca Raton, Florida 33486 ("**ADT**"), and Fulcrum Analytics, Inc. , with offices at 70 West 40th Street, New York, NY 10018 ("**Fulcrum** ") (collectively the "Parties", and each individually a "Party").

### RECITALS

**WHEREAS,** Skyline and ADT desire to negotiate an agreement to have Fulcrum provide certain services in connection with reviewing information relating to alarm accounts generated by Skyline (the "Purpose"); and

**WHEREAS,** in connection with the negotiations concerning an agreement to have Fulcrum provide certain services to Skyline and ADT, the Parties wish to provide a mechanism for the protection of the confidentiality and use of information that either of them may provide to the other or to Fulcrum in the negotiations.

**NOW, THEREFORE,** for good and valuable consideration, the receipt of which is hereby acknowledged, and in consideration of the mutual promises and agreements hereinafter set forth the Parties, intending to be legally bound, hereby agree as follows:

**1.    DEFINITION**

"Confidential Information" means any information or data of a confidential or proprietary nature, including, but not limited information that relates to customers, prospective customers, technical, development, marketing, sales, operating, performance, cost, business and process information, computer programming techniques, services, data, pricing, and all records bearing media containing or disclosing such information and techniques, in whatever medium, whether disclosed by a Party in writing, orally, by visual means, or in any other form, to another Party, either directly or indirectly.  These confidentiality obligations do not apply to any information which: (a) is already in the public domain through no breach of this Agreement, (b) was lawfully in the receiving Party's possession prior to receipt from disclosing Party, (c) is received by the receiving Party independently from a third party free of any obligation of confidentiality at the time of receipt, or (d) is subsequently developed independently by the receiving Party without reference to any of the disclosing Party's Confidential Information.

**2.    RESTRICTIONS**

The receiving Party agrees, unless required by law or ordered by any regulatory authority and not objected to by the disclosing Party, to hold in confidence and not to disclose or reveal to any person or entity for any reason, the disclosing Party's Confidential Information and that the receiving Party shall not to use the disclosing Party's Confidential Information for any purpose other than in connection with the Purpose.  The receiving Party further agrees that it will not use the Confidential Information in its business operations.  Without limiting the generality of the foregoing, the receiving Party shall not disclose the disclosing Party's Confidential Information to any third party, or any of its employees except those employees with a bona fide need to know such Confidential Information for the Purpose.  The receiving Party agrees to protect the disclosing Party's Confidential Information using the same degree of care used to protect its own Confidential Information but in any case, using no less than a reasonable degree of care.  The receiving Party shall advise each employee or agent to whom Confidential Information is disclosed of his/her obligations regarding confidentiality and non-use of the disclosing Party's Confidential Information.  The receiving Party shall be fully responsible for any breach of this Agreement by its employees, representatives or agents to which it provided the disclosing Party's Confidential Information.

EXHIBIT B
PAGE 101

The receiving Party may disclose Confidential Information of a disclosing Party if required in writing by law or by court, arbitral or governmental order or process, provided that the receiving Party shall promptly notify in writing the disclosing Party of any such order in order to afford the disclosing Party the opportunity to seek a protective order or other appropriate relief.

In addition to the above restrictions, (a) Fulcrum shall not disclose Confidential Information received from Skyline to ADT and shall not disclose Confidential Information received from ADT to Skyline; (b) Skyline shall not disclose Confidential Information received from Fulcrum to ADT; and (c) ADT shall not disclose Confidential Information received from Fulcrum to Skyline.

## 3.    RETURN OR DESTRUCTION OF MATERIALS

The receiving Party agrees to return to the disclosing Party, or to destroy, all Confidential Information received from the disclosing Party, together with all copies (including but not limited to complete or partial copies incorporated into other materials) that may have been made, promptly upon written request and, if not requested earlier, upon the earlier of termination of this Agreement or completion of the Purpose. Upon destruction of Confidential Information or any copies thereof, the receiving Party such destruction shall certify in writing to the disclosing Party that such destruction has occurred. Upon written request of the disclosing Party, the receiving Party shall provide documentary evidence that such Confidential Information has been either returned or disclosed, as the case may be.

## 4.    EQUITABLE RELIEF

ADT, Skyline and Fulcrum each hereby acknowledge and agree that money damages may not be an adequate remedy to compensate a disclosing Party for any breach of this Agreement by a receiving Party and that any breach of this Agreement may cause irreparable injury to the disclosing Party and that in addition to any other remedies that may be available in law, equity, or otherwise, a Party shall be entitled to seek specific and injunctive relief as a remedy for any such breach.

## 5.    OWNERSHIP

The disclosing Party's Confidential Information shall remain the sole and exclusive property of the disclosing Party. No patent, copyright, trademark or other proprietary right is licensed, granted or otherwise transferred by this Agreement or any disclosure hereunder, except for the right to use such Confidential Information in accordance with this Agreement. No warranties of any kind are given for the Confidential Information disclosed under this Agreement.

## 6.    ENTIRE UNDERSTANDING

This Agreement sets forth the entire understanding and agreement of the Parties with respect to Confidential Information disclosed in the course of the subject negotiations and supersedes all other oral or written representations, agreements or communications with respect to such Confidential Information. Nothing in this Agreement shall be deemed to invalidate, supersede, or otherwise modify, amend, change the Master Services Agreement entered into between Fulcrum and ADT.

## 7.    TERM AND TERMINATION

This Agreement will be effective as of the Effective Date and will continue until the earlier of (a) six (6) months from the Effective Date, (b) termination in writing by a Party upon thirty (30) days prior written notice to the other Parties, or (c) upon termination of the Purpose

## 8.    ASSIGNMENT

No Party may delegate its duties or rights hereunder, without the prior written consent of the other Parties, which consent shall not be unreasonably withheld. All of the terms and provisions contained in this Agreement shall inure to the benefit of and shall be binding upon the Parties hereto and their respective heirs, successors and permitted assigns.

EXHIBIT B
PAGE 102

**9.   CONSTRUCTION**

If any provision of this Agreement is held invalid or unenforceable, such provision shall be deemed deleted from the Agreement and the remaining provisions shall continue in full force and effect.  The provisions of this Agreement may not be modified, amended or waived, except by a written instrument duly executed by all Parties.

**10.   GOVERNING LAW**

This Agreement shall be governed by the law of the State of Colorado without regard to its conflicts of law principles.  In addition, any action or proceeding brought by any party hereto against another arising out of or relating to this Agreement shall only be brought in a court of competent jurisdiction located in Arapahoe County, Colorado.   The Parties hereto hereby irrevocably consent to the in personam jurisdiction of such court for purposes of any such action or proceeding.

**11.   NOTICES**

All notices, requests, demands, and other communications hereunder shall be in writing and shall be deemed to have been duly given if delivered by hand (and duly receipted) or sent via next-day delivery by a nationally recognized carrier (e.g., the United States Post Office, United Parcel Service, or Federal Express) with proof of delivery requested, to the address for each Party provided in this Agreement or to such other address as any party may furnish or designate to the other in writing in accordance herewith. Notice given by next-day delivery shall be deemed to have been given upon the date sent to the recipient.

**12.   AUTHORITY**

Each party warrants that it has the authority to enter into this Agreement and to lawfully make the disclosures contemplated hereunder.


**THE REMAINDER OF THIS PAGE INTENTIONALLY IS LEFT BLANK**

**IN WITNESS WHEREOF**, the Parties have executed this Agreement as of the Effective Date.

**SKYLINE SECURITY MANAGEMENT, INC.**

By:_____

Print Name:_____

Title:_____

**ADT SECURITY SERVICES, INC.**

By:_____

Print Name:_____

Title:_____

**FULCRUM ANALYTICS, INC.**

By:_____

Print Name:_____

Title:_____

EXHIBIT B
PAGE 104



Adison Ammo
Sr. Executive

Monitronics
Authorized Dealer.

SKYLINE SECURITY
Special Promotions

209-499-6268 Cell
209-408-0482 Fax
ACO# 7571




Secured by ADT





582-
633-7114

510-
386-6659

Ref

All Security

## Who's watching your home...WHEN YOU'RE NOT?

**Monitronics** and ADT *WOULD LIKE TO HELP YOU PROTECT YOUR HOME, YOU AND YOURS*

# Receive A FREE  Home Security System



VALUED at
$1500.00 -
$1800.00



**Free upgrades to older Existing Home Security Systems**

**Free On-Site audio Two – Way Voice  Available**

### WIRELESS HOUSE

1 Master Control Keypad
1 Infrared Motion Detector (Pet Immune)
3 Magnetic Door or Window Sensors
1 Interior Siren
1 Back Up Battery
Zone By-Passing
1 Yard Sign

### PRE-WIRED HOUSE

1 Master Control LCD Keypad
1 Infrared Motion Detector (Pet Immune)
10 Magnetic Door or Window Sensors
1 Interior Siren
1 Back Up Battery
Zone By-Passing
1 Yard Sign

### Special Promotions

*Adreen G.  (209) 872-9265*                    *Ann-Marie L. (209) 480-8377*

*General Manager:  Jerry S. (209) 735-2090*

**SAVE UP TO 20 % ON HOMEOWNERS INSURANCE**

'SE HABLA ESPANOL                    * MEDICAL PENDANTS AVAILABLE

DISTRICT DIRECTOR  ADISON AMMO (209) 499-6268 #OFFICE 209 MODESTO, CA 95350

One time customer activation charge. 24 months monitoring agreement required at $39.99-$40.99 per month depending what city. Form of payment must be by credit card or  electronic charge to your checking account. Offer applies to homeowners. Satisfactory credit history required.

EXHIBIT B
106

## COMMERCIAL PROPERTY ALARM  SYSTEMS AVAILABLE.









## Who's watching your home... <u>WHEN YOU'RE NOT?</u>

**Monitronics** and ADT *WOULD LIKE TO HELP YOU PROTECT YOUR HOME, YOU AND YOURS*

# Receive A FREE Home Security System



**VALUED at $1500.00 - $1800.00**



**Free upgrades to older Existing Home Security Systems**

**Free On-Site audio Two – Way Voice Available**

### WIRELESS HOUSE

1 Master Control Keypad
1 Infrared Motion Detector (Pet Immune)
3 Magnetic Door or Window Sensors
1 Interior Siren
1 Back Up Battery
Zone By-Passing
1 Yard Sign

### PRE-WIRED HOUSE

1 Master Control LCD Keypad
1 Infrared Motion Detector (Pet Immune)
10 Magnetic Door or Window Sensors
1 Interior Siren
1 Back Up Battery
Zone By-Passing
1 Yard Sign

**Special Promotions**

Adreen G. *(209) 872-9265*          *Ann-Marie L. (209) 480-8377*

*General Manager: Jerry S. (209) 735-2090*

**SAVE UP TO 20 % ON HOMEOWNERS INSURANCE**

**'SE HABLA ESPANOL**          \* MEDICAL PENDANTS AVAILABLE

DISTRICT DIRECTOR ADISON AMMO (209) 499-6268 #OFFICE 209 MODESTO, CA 95350

One time customer activation charge. 24 months monitoring agreement required at $39.99-$40.99 per month depending what city.
Form of payment must be by credit card or electronic charge to your checking account. Offer applies to homeowners. Satisfactory credit required.

**COMMERCIAL PROPERTY ALARM SYSTEMS AVAILABLE.**

EXHIBIT B
PAGE 07





# Who's watching your home... __WHEN YOU'RE NOT?__

*Skyline Security , Monitronics* and *ADT* would like to help you protect your home you and yours.

## Receive A FREE  Home Security System



VALUED AT
$1500.00
To 1800.00



**WIRELESS HOUSE**
1 Master Controll LCD Keypad
1 Infrared Motion Detector (Pet Immune)
3 Magnetic Door or Window Sensors
1 Interior Siren
1 Back Up Battery
1 Two Way Voice
1 Yard Sign

**PRE-WIRED HOUSE**
1 Master Control
1 LCD Keypad
1 Infrared Motion Detector (Pet Immune)
10 Magnetic Door or Window Sensors
1 Interior Siren
1 Back Up Battery
1 Yard Sign

$100
A Deal



Special Promotions

JERRY SAUDE
(209)735-2192
MANGER

**SAVE UP TO 20 % ON HOMEOWNERS INSURANCE**
'SE HABLA ESPANOL        * MEDICAL PENDANTS AVAILABLE

time customer activation charge, in Ca. 24-36 months monitoring agreement required at $39.99 to $43..99 per month depending what city tent or payment must be by card- or electronic charge to your checking account. Offer applies to homeowners. Satisfactory credit history required  Limited time promotion MERCIAL PROPERTY ALARM SYSTEMS AVIALABLE.

# EXHIBIT  8

EXHIBIT B
PAGE 109

*Skyline*

# CHAUMONT LAW INC.

6520 Platt Avenue, Suite 553
West Hills, California 91307-3218
818.222.7345
Toll Free 866.222.2525
Fax 818.222.7309
Lilianne@Chaumontlaw.com

## FACSIMILE COVER SHEET

This fax may contain confidential or privileged information. **Any distribution, reading, copying, or use of this message by anyone other than the named addressee(s) is strictly prohibited and may be unlawful.** If you receive this communication in error, please notify the sender immediately by telephone and return the original to the above address. You will be reimbursed your reasonable expenses. Thank you.

TO:      M. KELLY TILLERY

FAX:     (215) 981-4750

FROM:    LILIANNE CHAUMONT

DATE:    July 29, 2011

RE:      *ADT Security Services, Inc. / Skyline Security Management, Inc.*

PAGES:   7, including cover sheet

## M E S S A G E

Please see attached letter dated July 29, 2011.

EXHIBIT B
PAGE 110

**Chaumont Law**
Inc.

6520 Platt Ave | Suite 553 | West Hills, California | 91307-3218

Corporate Formation | Acquisitions | Contract Preparation | Electronic Security and Life Safety Law

P 818-222-7315
F 818-222-7309
E lilianne@chaumontlaw.com
W chaumontlaw.com

July 29, 2011

*Via Facsimile and U.S. Mail*

M. Kelly Tillery
Pepper Hamilton LLP
3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, Pennsylvania 19103-2799

        Re:    ADT Security Services, Inc. / Skyline Security Management, Inc.

Dear Mr. Tillery:

        This letter is in response to yours dated July 12, 2011 regarding ADT Security Services, Inc. ("ADT").

        First, after a thorough review, I disagree with your assertion that the alleged activity, which you believe constitutes unfair trade practices, is "systemic." At this point in time, Skyline Security Management, Inc. ("Skyline") has no reason to believe that any of the activity of which ADT complains has occurred since Skyline took a variety of corrective actions some time ago.

        For this reason, we request that ADT provide Skyline with the 16 declarations claimed to have been obtained from disgruntled customers located in Los Angeles and San Antonio, including any other declarations obtained. To properly respond to your letter, it is important for Skyline to know when the alleged activity presumably described in the declarations occurred. Do any of the declarations detail activity which occurred in the past 30 days or do the declarations detail activity which occurred months ago and before Skyline's corrective actions?

        Once provided with the information, Skyline will run its own analysis and determine the status of the accounts within Skyline as of today. If an account is no longer active with Skyline, then presumably the account is currently being serviced by ADT. If that is the case, where is the requisite harm given the corrective action Skyline has already taken?

        From records kept, Skyline will also be able to determine who generated the account and determine whether that person remains affiliated with Skyline. If still affiliated with Skyline, Skyline can confirm whether that individual has been spoken to regarding the

**EXHIBIT B
PAGE 111**

CHAUMONT LAW INC.

M. Kelly Tillery
Pepper Hamilton LLP
July 29, 2011
Page 2

alleged activity of which ADT complains and determine whether further corrective action is required.

Skyline has been involved in the electronic security industry for several years. As you know, a company acquired by Skyline was an authorized sub-dealer for ADT for approximately 18 months. As a result of that relationship, Skyline was provided with ADT apparel, yard signs, decals, and other collateral ("ADT Collateral"). These materials were used to sell or used in connection with the installation of alarm systems on behalf of ADT.

That sub-dealer relationship ended on approximately August 31, 2010. After the sub-dealer relationship ended, Skyline stopped using the ADT name or ADT Collateral and disposed of it.

In late August 2010, Skyline informed its employees and sales representatives in writing and in a rather stern manner that Skyline was an authorized Monitronics dealer, and that alarm systems would be sold through Monitronics only, and no other company, including ADT. Employees were further instructed to not use the ADT name or Collateral. Finally, the employees were notified that any employees violating this policy would be terminated immediately.

Subsequently, Skyline received a letter dated October 7, 2010 on behalf of ADT from Richard Sander, Esq. of Sander Ingerbretsen & Wake P.C. The October 7 letter alleged that Skyline was improperly using and was not authorized to use ADT Collateral. Skyline promptly responded. In its response to Mr. Sander, Skyline stated that it had previously informed its sales representatives not to use ADT's name or Collateral in connection with marketing activities on behalf of Skyline. In addition, Skyline stated that it would again instruct its sales representatives that ADT's name or Collateral must not be used.

In addition, Skyline requested ADT to provide specific information regarding the alleged activity and promised that the activity would be investigated and appropriate disciplinary action taken. ADT did not respond.

As you know, Skyline is an authorized Monitronics dealer. Skyline highly values its relationship with Monitronics and its partners. In the past several months, Skyline has spent significant amounts of time and money branding its own name. Skyline has developed new written materials, promotional items, yard signs, decals, and vehicle wraps that promote only the Skyline and Monitronics name along with GE Security. Samples of these materials are included with this letter.

As to the collateral attached to your July 12, 2011 letter, rest assured that Skyline did not authorize the preparation or use of that collateral by its sales representatives. If Skyline had been aware of the collateral, it certainly would not have approved its use. Indeed, Skyline

EXHIBIT B
PAGE 112

CHAUMONT LAW INC.

M. Kelly Tillery
Pepper Hamilton LLP
July 29, 2011
Page 3

was not aware of that collateral until earlier this year. At that time, immediate corrective action was taken and the sales representative told in no uncertain terms that the materials must no longer be used and must be destroyed immediately. Skyline was assured that the materials were destroyed and would not be used. If you have information that the collateral attached to your letter has been used in the past three to four months on behalf of Skyline, please provide the information so that appropriate actions can be taken again immediately. By the way, Skyline understands that All Security is an authorized ADT dealer.

On a related point, Skyline is now implementing a collateral review protocol. The protocol requires high-level management review of all marketing materials among other things.

Regarding the individuals mentioned in your letter, Adison Ammo is an outside sales representative for Skyline. Mr. Ammo was spoken to directly by Edwin Arroyave, Skyline's President, several months ago. Mr. Ammo was told the same things referenced in the written policy discussed on page 2 of this letter. Mr. Ammo was further instructed to have a similar conversation with all his sales representatives, including Jerry Suade. Skyline was assured that happened. And yes, Mr. Ammo was told that the relationship with Skyline would be terminated should it learn that he or his sales representatives continued to use the collateral attached to your letter.

From the collateral forwarded, it appears that Adreen G. or Ann Marie L. may have worked with Adison Ammo. Skyline did not have direct contact with or control over these individuals. Skyline is informed that Ann Marie L. is no longer affiliated with Mr. Ammo. Skyline is further informed that Adreen G. has recently become affiliated again with Mr. Ammo but is unaware of her departure or return dates.

Victor Marquez and Ali Batiara continue to represent Skyline. Again, Mr. Arroyave spoke directly with these individuals regarding Skyline's policies to represent Skyline and Monitronics only. Again, please provide any specific information you have regarding these individuals and Skyline will determine whether further corrective action is needed.

No sales representatives have *ever* been authorized or encouraged by Skyline to make the various statements (or statements to that effect) referenced on the first page of your letter. Skyline is in the process of informing its sales representatives in writing that these types of statements are not authorized and are not necessary in the sales process.

Moreover, at least eight individuals were terminated in approximately October 2010 and thereafter when Skyline determined that they had violated or would not comply with Skyline's policies and procedures. These eight individuals no longer represent Skyline in any capacity.

**EXHIBIT B**
**PAGE 113**

CHAUMONT LAW INC.

M. Kelly Tillery
Pepper Hamilton LLP
July 29, 2011
Page 4

Finally, all outside sales representatives are required to sign a written agreement and to comply with a variety of matters. The agreement prohibits the sales representative from acting as a representative for any other provider of electronic security services.

The agreement requires the sales representatives to (1) follow Skyline's and Monitronics's most current guidelines, policies, and procedures; (2) comply with all laws, ordinances, statutes, and regulations relating to the conduct of its business; (3) adequately train and supervise all their personnel; and (4) assume personal responsibility for their personnel's actions. Further, the agreement imposes a substantial fine for the first violation of Skyline's procedures or the Agreement. Subsequent violations result in the immediate termination of the Agreement and are reported to the authority having jurisdiction.

Based upon all the above, Skyline does not believe that it is necessary for, or reasonable for ADT to require, Skyline to sign the proposed Agreement to Bounce Accounts ("Bounce Agreement") and the related 3-Way Non-Disclosure Agreement, Licensed Service User Agreement, and the Work Order (Development & Management of the Preventative [sic] Bounce Application and Verification Bounce Processes). The Bounce Agreement is far too invasive and borders on being anticompetitive.

Skyline is willing to do the following:

- After receipt of the declarations referenced in your letter, run its own analysis and determine the status of the accounts within Skyline as of today.

- Follow up with ADT regarding the results of its analysis.

- Agree in writing that it will not, either directly or indirectly, utilize ADT's intellectual property, including without limitation, ADT's trade name, trademarks, or service marks.

- Continue to enforce its policies and procedures discussed in this letter.

Skyline took ADT's allegations contained in your letter seriously. Skyline believes the significant steps already taken and the items outlined above address ADT's concerns.

Very truly yours,

*Lilianne Chaumont*

LILIANNE CHAUMONT

LC:mtf

**EXHIBIT B**
**PAGE 114**











F: 562-904-7006
8211 Firestone Blvd., Downey, CA 90241

 **Simon XT**

## ARMING/DISARMING
· Arm Stay or at Home: Press Doors/Windows button
· Arm Away: Press Doors/Windows and Motion buttons
· Disarm: Enter 4 digit Master Code

## CHIME
· Scroll up/down until display shows Chime - Press OK
· Scroll up/down to turn On/Off - Press OK
· Press Status to exit

## ZONE BYPASS
· Arm System
· Press Bypass, then enter Master Code
· Scroll up/down to desired zone - Press OK
· Repeat process to bypass additional zones

## PANICS
· For Panic, press desired Panic 2 times rapidly until alarm sounds

Password: _____

Alarm.com Log-in: _____

Website: _____

Tech Support: 1-800-447-9239 • Customer Service: 1-888-775-9732

**Quick Reference Guide**
**Simon XT**

**Simon XT**   **Simon XT**

## CHANGING MASTER CODE
· Scroll up/down to System Programming - Press OK
· Type the existing Master Code - Press OK
· When you see Access Codes - Press OK
· When you see Master Code - Press OK
· Enter new Master Code - Press OK
· Press Status 3 times to exit programming

**EXHIBIT B
PAGE 116**

EXHIBIT "C"

## Affidavit of Ms. Theresa Lowe

I, Ms. Theresa Lowe, being duly sworn according to law, state and affirm under oath as follows:

1. I am 45 years old and have personal knowledge of the matters stated herein.

2. I currently reside at 1758 Buckingham Rd. Los Angeles California. 90019

3. I have been an ADT Security Services, Inc. customer since December 5, 2005 and have been satisfied with the security service provided by ADT.

4. On May 18, 2011, a man named Ali knocked on my door he stated that he was from Skyline Security.

5. Ali told me in the next couple of months, "All of ADT's equipment will be obsolete."

6. Ali said that Skyline Security was the "new" security provider in the area, and that ADT was "handing over" these customers to Skyline Security.

7. Because of Ali's claim that Skyline Security was taking over ADT's customers, I was led to believe that Skyline Security and Ali were affiliated with ADT.

8. Additionally, Ali said that ADT was going to require me to make an "upgrade" to my system.

9. Ali said ADT's "upgrade" would cost me $1,000's if I stayed with ADT and did not switch over to Skyline Security.

10. Ali also told me not to contact ADT, and that Skyline Security and ADT were working closely together on these "upgrades."

11. Ali told me that Skyline Security would handle "everything" related to the cancellation of my security service with ADT.

12. I did not sign up to do an "upgrade" with Skyline Security as Ali requested.

EXHIBIT C
PAGE 117

13. I spoke to ADT about these events, and conference called in my neighbor Armien Ross, who resides at 1861 Buckingham Rd, Los Angeles California, 90019. It was my understanding that Ali had also visited this neighbor's home.

14. I have no reason to leave ADT, I continue to be satisfied with ADT's security services at this time.

Ms. Theresa Lowe

STATE OF CALIFORNIA

LOS ANGELES COUNTY

Subscribed and sworn to before me this day of June 2011, by Theresa Lowe

WITNESS my hand and official seal

My Commission Expires: MAY 18, 2014

RHONDA LOUISE PAYNE
Notary Public

RHONDA LOUISE PAYNE
Commission # 1890113
Notary Public - California
Los Angeles County
My Comm. Expires May 18, 2014

EXHIBIT C
PAGE 118

EXHIBIT "D"

**Affidavit of Mr. Wesley Richert**

I, Mr. Wesley Richert , being duly sworn according to law, state and affirm under oath as follows:

1. I am 79 years old and have personal knowledge of the matters stated herein.

2. I currently reside at 2050 Bishop St.  Stockton California. 95205

3. I have been an ADT Security Services, Inc. customer since November 12, 1990 and have been satisfied with the security service provided by ADT.

4. On March 31, 2011, two men, knocked on my door. Both of these men were wearing ADT badges around their necks, and stated that they were from Skyline Security.

5. These men said they were at my home to upgrade my ADT system.

6. One of the men gave me a business card with the name Addison Ammo.  This business card has the ADT Authorized Dealer logo on it. A true and exact copy of this card is attached as Exhibit A.

7. Addison Ammo also gave me a flyer with ADT Security Services' logo located in several spots. A true and exact copy of this flyer is attached as Exhibit B.

8. Because these men were wearing ADT badges, had business cards and a flyer with ADT's logos, and claimed to be at my home to "upgrade" my ADT security system, I believed they were affiliated with ADT, my security services company.

9. Addison Ammo explained to me that ADT had partnered with Monotronics. He stated that Skyline Security acts as a "broker for both companies."

10. Addison Ammo gave me paperwork to sign, had me write out a check, and set up an appointment for my "upgrade" to be installed the next day.

11. After the men left, I figured something was not right as I remembered just recently paying my yearly ADT bill. It did not make sense that I would have to pay yet another fee to ADT.

12. I called ADT's Customer Service line that same day to discuss this visit.

13. I was told that Skyline Security is not an ADT Authorized Dealer and is not affiliated with ADT. I was advised to cancel my paperwork with Skyline Security, because I wanted to continue to have ADT provide my security service.

14. After calling ADT's Customer Service line, I looked at the flyer left by Addison Ammo. It identified Jerry S. as a general manager at Skyline Security.

15. I called the telephone number (209)-735-2090 for Jerry S. printed on the flyer to cancel my Skyline Security contract.

16. I made a stop payment order through my bank on the check I had given Addison Ammo of Skyline Security.

17. I have no reason to leave ADT, I continue to be satisfied with ADT's security services at this time.

Mr. Wesley Richert

STATE OF CALIFORNIA

San Joaquin COUNTY

Subscribed and sworn to before me this 13 day of June 2011, by Mr. Wesley Richert

WITNESS my hand and official seal

My Commission Expires: April 18, 2015

THERESA SMITH
Commission # 1935031
Notary Public - California
San Joaquin County
My Comm. Expires Apr 18, 2015

Theresa Smith

Notary Public

EXHIBIT D
PAGE 120



 

Secured by **ADT**

  

## Who's watching your home...<u>WHEN YOU'RE NOT?</u>

**Monitronics** and ADT *WOULD LIKE TO HELP YOU PROTECT YOUR HOME, YOU AND YOURS*

# Receive A FREE  Home Security System



**VALUED at
$1500.00 -
$1800.00**



**Free upgrades to older Ex-
isting Home Security Systems**

**Free On-Site audio Two –
Way Voice  Available**

### WIRELESS HOUSE

1 Master Control Keypad
1 Infrared Motion Detector (Pet Immune)
3 Magnetic Door or Window Sensors
1 Interior Siren
1 Back Up Battery
Zone By-Passing
1 Yard Sign

### PRE-WIRED HOUSE

1 Master Control LCD Keypad
1 Infrared Motion Detector (Pet Immune)
10 Magnetic Door or Window Sensors
1 Interior Siren
1 Back Up Battery
Zone By-Passing
1 Yard Sign

**Special Promotions**

*Adreen G.  (209) 872-9265*               *Ann-Marie L. (209) 480-8377*

*General Manager:  Jerry S. (209) 735-2090*

**SAVE UP TO 20 % ON HOMEOWNERS INSURANCE**

*SE HABLA ESPANOL                    * MEDICAL PENDANTS AVAILABLE

DISTRICT  DIRECTOR  ADISON AMMO (209) 499-6268  #OFFICE 209  MODESTO, CA 95350

One time customer activation charge, 24 months monitoring agreement required at $39.99-$40.99 per month depending what city.
Form of payment must be by credit card or  electronic charge to your checking account. Offer applies to homeowners. Satisfactory credit history required.

## COMMERCIAL PROPERTY ALARM  SYSTEMS AVAILABLE

EXHIBIT D
PAGE 122

EXHIBIT "E"

**Affidavit of Mr. Willie Hunter**

I, Mr. Willie Hunter, being duly sworn according to law, state and affirm under oath as follows:

1. I am **56** years old and have personal knowledge of the matters stated herein.

2. I currently reside at 332 E. 85th St. Los Angeles California. 90003

3. I have been an ADT Security Services, Inc. customer since September 25, 2006 and have been satisfied with the security service provided by ADT.

4. On May 5, 2011, a man wearing a shirt with an ADT logo, knocked on my door, he also had an ADT badge that read ADT Authorized Dealer.

5. Because I am an ADT customer, I thought that this visit had something to do with my ADT security service.

6. The man identified himself as Victor Marquez, and stated that he was affiliated with ADT.

7. Victor Marquez stated that he was at my home to "upgrade" my system.

8. Because Victor Marquez wore an ADT shirt and had an ADT badge, I believed that he was affiliated with ADT, my security service provider.

9. Because I thought Victor Marquez was affiliated with ADT, I signed the paperwork that he requested that I sign.

10. After signing the paperwork for Skyline Security, I was told to takeout my ADT yard sign and replace it with a Skyline Security sign.

11. Victor Marquez gave me a number to contact him at 801-879-9344.

12. After Victor Marquez left my home, I thought about this visit and suspected that I had been deceived.

EXHIBIT E
PAGE 123

13. One reason I thought this was a deception is because when I looked at the paperwork more closely and noticed the paperwork was actually for Skyline Security because it had Skyline Security's name printed on it. This made me question if Victor Marquez was really from Skyline Security and not ADT.

14. I called ADT's customer service line that same day to discuss this visit. I was told that Skyline Security is not an ADT authorized dealer, and was advised to cancel my paperwork with Skyline Security if I wanted to continue to have ADT provide my security service.

15. I also sent a cancellation letter to Skyline Security, the same day, to stop Skyline Security from coming to my home to "upgrade" my existing ADT system.

16. I faxed to ADT a copy of the paperwork I signed with Skyline Security Management, Inc. A true and exact copy of this signed document is attached to this affidavit as Exhibit A.

17. I have no reason to leave ADT and I continue to be satisfied with ADT's security services at this time.

*Willie Hunter*

Mr. Willie Hunter

STATE OF CALIFORNIA

_Los Angeles_ COUNTY

Subscribed and sworn to before me this _ day of June 2011, by Mr. Willie Hunter

WITNESS my hand and official seal

My Commission Expires: _November 1, 2011_

*Stephanie Bushie*

Notary Public



EXHIBIT E
PAGE 124

# Skyline Security Management, Inc.

8211 Firestone Blvd., 1st Floor
Downey, CA 90240
(562) 622-7114
License: (CA)6480; (TX) B15964

## ALARM SYSTEM SALES AND INSTALLATION AGREEMENT

1. This ALARM SYSTEM SALES AND INSTALLATION AGREEMENT(the "Agreement") is made as of the ___29___ day of ___April___ 20 _11_ by and between Skyline Security Management, Inc. (the "Company") and the "Customer" located at the address shown below (the "premises").

Customer Name: __Willie Hunter__  Home Phone: __323-758-154__  Work Phone: _____  Email: _____

Spouse Name: _____  Home Phone: _____  Work Phone: _____  Email: _____

Business Name: _____  Contact Name: _____  Phone: _____

Business Type (check one): ☐ Corporation ☐ LLC ☐ Partnership ☐ Proprietorship ☐ Other: _____

Premises: Address, City, State Zip: __332 E 25th St LA 9003__

Billing Address (if different from Premises): Address, City, State Zip: __SAME__

2. Purchase of the System. Customer hereby agrees to buy, and Company hereby agrees to sell, at the Premises the Alarm system described below and incorporated herein for all purposes by this reference (the "System"), in accordance with the terms and conditions hereinafter set forth.

### Basic
1 - Control Panel
1 - Digital Keypad
2 - Door Contact
1 - Motion detectors
1 - RJ31x Phone Jack
2 - Window Decals
1 - Yard Signs

| Qty | Equipment Description | Unit Cost | Total Cost |
|---|---|---|---|
| 1 | GLASS BRAKe | 200 | 0 |
|  | Motion | 250 | 0 |
|  | INSTALATION | 250 | 0 |
|  | ACTIVATION | 99 | 0 |

Payment
Check One
___ Vise
___ MasterCard
___ Check

| | |
|---|---|
| Subtotal | $ |
| | $ |
| Permits | $ |
| Tax | $ |
| Total | $ |

3. Purchase Price and Payment  Customer agrees to pay to Company for the System and the installation thereof the total amount shown.

4. Installation of the System. Company agrees to install or cause to be installed the System at the Premises in a workmanlike manner and in compliance with applicable laws, regulations and industry standards, and to furnish all material and labor necessary for such installation, subject to the following conditions: (a) Customer authorizes and empowers the Company to enter upon the Premises for such purpose and agrees to make the Premises available for such purpose during normal working hours (consisting 8:00 a.m. – 5:00 p.m., Monday through Friday, excluding national holidays); (b) Customer will provide required electrical power outlets at the location or locations designated by Company for equipment requiring such power; (c) Customer will provide any communication network to which the system may be connected, including any internet, intranet, cable transmission, or telephone lines and service (Company recommends that Customer properly install a RJ31X jack for connection of the system to Customer's telephone service); (d) Customer understands that installation will require drilling and cutting into certain parts of the Premises, which shall be identified to Customer before the work commences, and that certain wiring may be required to be exposed, although Company will attempt to conceal wiring in the furnished areas of the Premises whenever possible; and Customer agrees to provide for lifting and replacing carpeting, if required, for installation of floor mats, switches, or wiring; and (e) Company will attempt to complete installation within 14 days following execution of this Agreement by Company, but Company expressly assumes no liability for delay in installation of the System due to strikes, riots, floods, storms, earthquakes, fires, power failures, insurrection, acts of God, shortages of labor or materials, or any other cause beyond the control of Company.

5. Title to the System; Risk of Loss. Customer acknowledges and agrees that title to and ownership of the System, and all component parts, shall remain the sole and exclusive property of Company until Customer has paid in full all amounts required hereunder. However, until the System has been paid for in full by Customer, Customer shall bear the entire risk of loss to the System. If Customer defaults in any payment under this agreement for the System, then Customer hereby authorizes and empowers Company to enter upon the Premises and to remove the System. Removal of the System shall not be deemed a waiver of Company's right to damages or to collect any payments due hereunder, and Company shall continue to have the right to enforce any legal remedy or right available to Company. Further, Company shall be in no way obligated to restore the Premises to its original condition or redecorate same in the event the System is removed as a result of Customer's default.

6. Limited One Year Warranty. a) Company warrants that the System will be free from defects in material and workmanship under normal use and operating conditions for a period of one year from the date of installation. Company will repair or replace, at Company's sole option, any component of the System proven to be defective during such period without further charge to Customer. b) Warranty Service will be furnished during Company's regular business hours of Monday – Friday, excluding holidays, from 8:00 a.m. until 5:00 p.m. Emergency Service provided at other times shall be paid by Customer at Company's customary rate. Customer must provide full access to the Premises and to the System requiring repair at the time agreed upon by Company and Customer. c) Warranty Service excludes: repair of the system as a result of replacement of batteries; or damage from accident or abuse; misuse; faulty communication network, transmission, telephone or electrial connections; unauthorized repair, modification of or tampering with the System; remodeling or construction; vandalism, theft, acts of God, cosmetic damage, or other causes other than normal wear and tear. Company reserves the right to use new or reconditioned parts in fulfillment of this warranty, and retain any parts removed from the System. Parts required which were not defective shall be at additional cost to Customer. Company shall not be responsible for failure to render service due to causes beyond Company's control. d) Company shall not be required to make repairs or replace any parts of the System that has been abused or not operated in accordance with instructions provided to Customer. Any other service provided shall be paid by Customer at Company's prevailing material and hourly rates.

__Willie Hunter__

**RIGHT TO CANCEL**

YOU, THE CUSTOMER, MAY CANCEL THIS TRANSACTION AT ANY TIME PRIOR TO MIDNIGHT OF THE THIRD BUSINESS DAY AFTER THE DATE OF THIS TRANSACTION. (CONSUMER TRANSACTIONS ONLY) PLEASE SEE THE ATTACHED NOTICE OF CANCELLATION FORM FOR

EXHIBIT E
PAGE 125

## FINANCIAL DISCLOSURE STATEMENT

### THERE IS NO FINANCE CHARGE OR COST OF CREDIT (0% APR ASSOCIATED WITH THIS AGREEMENT.

| A. Number of Payments for the Original Term is | B. Amount of Each Payment is | Total of Payments for the Original Term is $ |
|---|---|---|
| 36 | $ 41.40 (Total Monthly Fee from above) | (A. times B.) (exclusive of any applicable prices, charges, taxes, fees, fines and rate increases) |

| Late Charge – Company may impose a one time late charge on each payment that is more than ten days past due, at the maximum amount permitted by law, up to $5.00. | Prepayment – If you prepay the Total of Payments prior to the end of the original term of this Agreement, there is no penalty or refund. | See Section 15 of this Agreement for additional information about nonpayment, default and liquidated damages. |
|---|---|---|

### RIGHT TO CANCEL

YOU, THE CUSTOMER, MAY CANCEL THIS TRANSACTION AT ANY TIME PRIOR TO MIDNIGHT OF THE THIRD BUSINESS DAY AFTER THE DATE OF THIS TRANSACTION. PLEASE SEE THE ATTACHED NOTICE OF CANCELLATION FORM FOR AN EXPLANATION OF THIS RIGHT.

### CUSTOMER RESPONSIBILITY TO READ AGREEMENT

CUSTOMER ACKNOWLEDGES THAT THEY HAVE RECEIVED A COPY OF THIS AGREEMENT AND HAVE READ AND UNDERSTOOD ALL TERMS AND CONDITIONS INCLUDING THOSE CONTAINED ON THE REVERSE SIDE INCORPORATED BY REFERENCE HEREIN. THESE TERMS AND CONDITIONS INCLUDE DISCLAIMER OF WARRANTIES IN SECTION 5, A $1,000 LIMITATION OF LIABILITY IN SECTION 6, A LIST OF CUSTOMER'S RESPONSIBILITIES IN SECTION 7, AND AN ARBITRATION CLAUSE IN SECTION 14. CUSTOMER AUTHORIZES PAYMENT BY THE METHOD SPECIFIED ABOVE.

Accepted and Copy Received by:

Willie Hunter
_____
Customer Name  (Please Print)          Social Security No.

Willie Hunter          4-29-11
_____
Customer Signature                     Date

Nailo Monique
_____
Sales Representative  Signature        04/29/11  Date

_____
Customer Name  (Please Print)          Social Security No.

_____
Customer Signature                     Date

_____
Representative's State ID#             Date

THIS AGREEMENT SHALL NOT BE BINDING UPON COMPANY UNLESS EITHER APPROVED IN WRITING BY AN OFFICER OF COMPANY OR COMPANY BEGINS MONITORING SERVICE.

ACCEPTED BY COMPANY: _____ (Authorized Signature) Date: _____

### Company Use Only

| Digital Monitoring Account Number | Special Services | Date Installed | No. Billing Dates |
|---|---|---|---|
| Two Way Voice | | | |

If you are an Alabama resident, complaints against the licensee may be directed to the Alabama Electronic Security Board of Licensure, 7956 Vaughn Rd., Suite 392, Montgomery, AL36116, (334) 264-9388. In Arkansas, licensing is regulated by the Arkansas Board of Private Investigators and Private Security Agencies, #1 State Police Plaza Drive, Little Rock, AR 72209, (501) 618-8600. In California alarm company operators are licensed and regulated by the Bureau of Security and Investigative Services, Department of Consumer Affairs, CA95814. In Florida, licensing is regulated by the Florida Department of Professional Regulation. Complaints may be directed to P.O. Box 8887, Tallahassee, FL 32314-6687, (904) 488-5381. In North Carolina, licensing is regulated by the North Carolina Alarm Systems Licensing Board, 1631 Midtown Place, Suite 104, Raleigh, NC 27609 (919) 875-3611. In Texas, licensing is regulated by the Texas Department of Public Safety Commission on Private Security Bureau, P.O. Box 15999, Austin, TX 78761-5999 (512) 424-2003

EXHIBIT E
PAGE 126

EXHIBIT "F"

## Declaration of Hem Sharma

I, Hem Sharma, being duly sworn according to law, depose and state as follows:

1.      I am _69_ years of age and have personal knowledge of the matters stated herein.

2.      I currently reside at 1809 Langton Lane, Modesto, CA 95350.

3.      On February 20, 2012, a female and a male knocked on my door.  The female had a handbag and a nametag with ADT on it.  The female stated they had a promotion from ADT.

4.      The female was roughly _5' 2"_ tall with _Brown_ colored hair.  Additional physical descriptors are:

5.      The male was in plain clothes. He was roughly _5' 9"_ tall with _Black_ colored hair.  Additional physical descriptors are:

6.      The female told me ADT would add four (4) new alarm contacts and a lower monitoring rate if I signed some paperwork.   A true and correct copy of the paperwork is attached hereto as Exhibit A.

7.      Because this female had ADT on her nametag and an ADT handbag, I believed she was with ADT and that the paperwork she presented was for ADT.

8.      After I signed the paperwork, a male in plain clothes installed some alarm equipment.  He was roughly _6'_ tall with _Brown_ colored hair.  Additional physical descriptors are:

9.      Later that afternoon my son, Kapeel Sharma, and daughter, Rangana Sharma, came home and reviewed the paperwork.  They informed me that the paperwork was not with ADT but with Skyline Security Management.

EXHIBIT F
PAGE 127

10.     My son called the telephone number that appeared on the paperwork for Skyline Security Management and demanded that they cancel the contract and take out the alarm equipment that they installed.

11.     My daughter called my bank and put a stop payment on the checks I had given to Skyline Security Management in order to block Skyline Security Management from withdrawing monies on my bank account.

12.     My daughter called ADT and reported what happened.  She told ADT not to cancel my ADT account as I wanted to stay with ADT.  My daughter also told ADT my alarm system had been switched and helped me to have my alarm system reconnected with ADT.

13.     On February 22, 2012, a technician from ADT came to my residence and reconnected my alarm system.

14.     I have been a customer of ADT Security Services, Inc. ("ADT") since 2006 and have been happy with ADT's alarm service.

15.     I did not want to leave ADT and would not have signed the paperwork with Skyline Security Management except that the persons who came to my residence falsely represented themselves as ADT by wearing items with ADT's logo on them, and claiming the contract was for a promotion with ADT.

I understand that false statements made herein are made subject to the penalties of Title 28 U.S.C. §1746.

_____
Hem Sharma

EXHIBIT F
PAGE 128

below at the address shown below (the "Premises")

**Subscriber Information Form**

☑ RESIDENTIAL ☐ NEW INSTALL ☐ NEW CONNECT

☐ COMMERCIAL ☐ SYSTEM MOVE ☐ CUSTOMER MOVE

☐ TAKE or Abandoned Phone Service

**Subscriber Information**

SHATHA ACH D

1804 Livingston Ln

Modesto CA 95350

☐ CONTRACT MONITORING ☐ PURCHASE ☐ UPGRADE

ENGLISH

**Dealer Information**

**Subscriber Contact List**

| | Telephone Number | | Date | Password |
|---|---|---|---|---|
| KONKANSANE SHANNA | 209-284-3990 | CELL | | |
| N KONKANSANE SHAWNA | 209-765-5410 | Home | | |
| ROHA | 900 UK 909-980-4654 | CELL | | |

**Installation & Equipment Sales**

**Post Installation Upgrades**

| Panel Type | Qty | Price | Total | Qty | Price | Total |
|---|---|---|---|---|---|---|
| | | | | | | |
| SENSORS | 3 | | | | | |
| | 1 | | | | | |

**Customer Authorization : To Be Completed by Customer Only**

EXHIBIT F
PAGE 129

Premises Address: 1301 LANGSTON INN

MODESTO  State CA Zip 95350

One Time Monitoring Activation Fee $ 49.00

Total Monthly Fee $ 51.99

By installing cellular communication below, customer acknowledges receiving appropriate terms and conditions:

Alarm.Com    AlarmNET    Tellular

This agreement is made by and between Skyline Security Management, Inc. ("the Company") and the owner of the home or business shown above ("the Customer") as the effective date indicated above. The Company agrees to provide, or cause to be provided, the alarm monitoring services for the alarm system ("the System") installed at the residence or business address indicated above (the "Premises").

1. THE SERVICE: Upon receipt of an alarm signal from the Customer Premises, the Company is responsible for attempting to notify, as appropriate to the type of signal, the Customer, persons designated to Company, or a police or fire department, and/or the appropriate monitoring agency. For company signals, Company will attempt to verify that an emergency signal by calling the Customer's primary contact number and then, if necessary, the person designated for enhanced verification...

2. DISCLAIMER OF WARRANTIES: NEITHER COMPANY NOR ITS CONTRACTOR REPRESENTS OR WARRANTS THAT THE SYSTEM OR THE MONITORING SERVICES WILL PREVENT ANY LOSS BY BURGLARY, FIRE, ROBBERY OR OTHERWISE, OR, WILL, IN ALL CASES, PROVIDE THE SPECIFIED NOTIFICATION SERVICE...

CUSTOMER ALSO UNDERSTANDS THAT, IN THE EVENT THAT THE COMPANY IS DETERMINED TO BE DIRECTLY OR INDIRECTLY LIABLE FOR ANY LOSS, DAMAGE OR INJURY THAT THE $1,000 LIMIT OF LIABILITY IN SECTION 5 APPLIES.

3. SERVICE FEES AND TERM OF AGREEMENT: This Agreement shall continue for an initial term of three (3) years (the "Initial Term") unless earlier terminated...

FINANCIAL DISCLOSURE STATEMENT
THERE IS NO FINANCE CHARGE OR COST OF CREDIT (0% APR) ASSOCIATED WITH THIS AGREEMENT

Total of Payments for the Initial Term is $ _____ (A x B)
(Plus applicable taxes, charges, taxes, fees, fines, and rate increases)

CUSTOMER RESPONSIBILITY TO READ AGREEMENT: CUSTOMER ACKNOWLEDGES RECEIPT OF A COMPLETE COPY OF THIS AGREEMENT AND TWO COPIES OF THE NOTICE OF CANCELLATION FORM AND HAS READ AND UNDERSTOOD ALL TERMS AND CONDITIONS INCLUDING THOSE CONTAINED ON THE REVERSE SIDE AND INCORPORATED BY REFERENCE HEREIN. THESE TERMS AND CONDITIONS INCLUDE A DISCLAIMER OF WARRANTIES IN SECTION 2, A ONE THOUSAND DOLLAR ($1,000) LIMITATION OF LIABILITY IN SECTION 5, A LIST OF CUSTOMER'S DUTIES IN SECTIONS, TRANSMISSION SYSTEMS IN SECTION 8, AN ARBITRATION CLAUSE IN SECTION 13, AND AN AUTHORIZATION TO OBTAIN A CONSUMER CREDIT REPORT IN SECTION 17. CUSTOMER AUTHORIZES PAYMENT OF ALL AMOUNTS DUE TO COMPANY BY THE METHOD SPECIFIED ABOVE.

RIGHT TO CANCEL: YOU, THE BUYER, MAY CANCEL THIS TRANSACTION AT ANY TIME PRIOR TO MIDNIGHT OF THE THIRD BUSINESS DAY FROM THE DATE OF THE TRANSACTION. PLEASE SEE ATTACHED NOTICE OF CANCELLATION FOR AN EXPLANATION OF YOUR RIGHTS TO CANCEL THIS AGREEMENT.

THIS AGREEMENT SHALL NOT BE BINDING UPON COMPANY UNTIL COMPANY BEGINS MONITORING SERVICE.

ACCEPTED AND COPY RECEIVED BY:

Homeowner/Business Owner Signature    Date  03-30-2012

Salesperson Signature

Spouse/Resident Signature    Date

EXHIBIT F
PAGE 130

EXHIBIT "G"

## Declaration of Kushma Sharma

I, Kushma Sharma, being duly sworn according to law, depose and state as follows:

1.      I am _63_ years of age and have personal knowledge of the matters herein.

2.      I currently reside at 1809 Langton Lane, Modesto, CA 95350.

3.      On February 20, 2012, I came home and found a female was inside with my husband. She had a badge and handbag that featured ADT Security Services, Inc. ("ADT")'s logo.

4.      The female was roughly _5' 2"_ tall with _Brown_ colored hair. Additional physical descriptors are:

5.      The female told me she was there with a promotion from ADT and flashed me the badge that was on her belt. I was able to see the blue octagon with ADT on it, but she did not allow me enough time to read the name.

6.      I told the female I wanted to call my children about the promotion. The female responded that everything was already signed, that four (4) new alarm contacts would be added and we were going to have a monitoring rate of $39.00.

7.      I told the female I would be right back and left the room to put my purse down. When I returned the female was gone.

8.      My husband and I have been a customer of ADT since 2006 and have been happy with ADT's alarm service.

9.      The female that had been in my home represented herself falsely by wearing items with ADT's logo on them and claiming her visit was a promotion from ADT.

I understand that false statements made herein are made subject to the penalties of Title 28 U.S.C. §1746.

_K. Sharma_                     _3/18/12_
---
Kushma Sharma                     Date

EXHIBIT G
PAGE 131

EXHIBIT "H"

## Declaration of Ranjana Sharma

I, Ranjana Sharma, being duly sworn according to law, depose and state as follows:

1.     I am _36_ years of age and have personal knowledge of the matters herein.

2.     My father and mother reside at 1809 Langton Lane, Modesto, CA 95350.

3.     On February 20, 2012, I learned that my father had been deceived into signing a contract with Skyline Security Management ("Skyline") by one or more persons wearing items with an ADT Security Services, Inc. ("ADT") logo.

4.     My father told me he did not want to change alarm service providers.  He asked for my help in reinstating his ADT account and/or alarm system.

5.     That afternoon I called ADT and reported this occurrence.  A true and correct copy of my conversation with the ADT operator is attached hereto as Exhibit A.

6.     On February 22, 2012, a male in plain clothes arrived at the residence and removed the panel that Skyline had installed.  He was roughly _6"_ tall with _brownish_ colored hair.  Additional physical descriptors are:

7.     As that male was leaving, Darren Harvey, an ADT service technician, arrived at the residence.  He installed a new panel and reconnected my father's ADT alarm system.

I understand that false statements made herein are made subject to the penalties of Title 28 U.S.C. §1746.

_RSharma_
_____
Ranjana Sharma

| | |
|---|---|
| Val: | [two beeps]  Good evening, my name is Val.  May I please have the address where your system is located? |
| HS: | It's 1809 Langton Lane, Modesto, California. |
| Val: | Thank you.  May I have your name, please? |
| HS: | It's Hem Sharma. |
| Val: | Thank you, Ms. Sharma.  How can I help you tonight? |
| HS: | My dad got conned into changing from ADT to Skyline today by mistake.  These guys came to give him promotion, and they had ADT jackets on, stickers on, so he's thinking they're from ADT.  And then he ended up signing the papers, thinking it's ADT, to end up adding more sensors to our house. |
| Val: | Oh. . . . |
| HS: | And then we came home and see that he canceled the ADT account. |
| Val: | Oh! |
| HS: | So, and he had no idea that he was doing that.  He was thinking those guys were from ADT, and they had him change from ADT to Sky – some Skyline Security Management, so. |
| Val: | Skyline? |
| HS: | Yeah.  So, we're – we're talking to the Skyline people right now and telling them, what the hell?  I mean, the man doesn't speak English, and you had him change – |
| Val: | Oh, my God! |
| HS: | – things without realizing. |
| Val: | So sorry to hear that, Ms. Sharma.  So basically you wanted to – |
| HS: | I want my ADT back.  [laughter] |
| Val: | X1S01.  Cancel ADT. |
| HS: | Yeah. |
| Val: | Okay, I can help you with that.  Let me just check real quick.  Oh, gosh, it looks like your billing department is already closed.  I could give you their phone number. |

HS:         Uh-huh.

Val:        You should give them a call first thing tomorrow morning.  Usually a cancellation will take three weeks to process.

HS:         Okay.

Val:        You should be able to get them in time so that they don't –

HS:         Okay.

Val:        – cancel the account permanently.

HS:         Okay.

Val:        Would you like me to give you their number so that –

HS:         Yeah, let me get a pen so I can write it down.

Val:        Take your time, Ms. Sharma.

HS:         Go get me a pen.  Okay, go ahead.

Val:        The phone number to your billing department is going to be 1-800 –

HS:         1-800.

Val:        662.

HS:         662.

Val:        53.

HS:         53.

Val:        78.

HS:         78.

Val:        I'll repeat that, ma'am.  1-800-662-5378.  They open –

HS:         5378.

Val:        Uh-huh.  Monday to Friday, 8 to 10 Eastern time.

HS:         Okay, 8 to 10 Eastern.  And then they ended up taking our ADT panel off and putting some – some of their own panel on.

Val:        Oh, my gosh!

#15724811 v1

EXHIBIT H
PAGE 134

| | |
|---|---|
| HS: | So what happens? |
| Val: | They disconnected the alarm system. |
| Male: | _____. [incomprehensible]. |
| HS: | Yeah. |
| Val: | Oh, my God.  Well, usually those companies can come back out there and remove their system.  In doing so, they may be able to connect it back on. |
| HS: | Okay.  So we can have them take their crap off and put our – our stuff back on? |
| Val: | Yeah, you should be able to have them – 'cause they – they still have to pick up their – their equipment. |
| HS: | Yeah, they still have to pick up their equipment. |
| Val: | Um-hm. |
| HS: | 'Cause I mean, my poor dad, he doesn't understand.  And they had all the ADT stuff.  And he's thinking, oh – |
| Val: | Oh, my God! |
| HS: | – ADT's promoting, giving new sensors. |
| Val: | I'm so sorry about that, Ms. Sharma. |
| HS: | Yeah. |
| Val: | Give us – give billing a call tomorrow so that they could clarify that.  That way, they – they don't charge you for – for the cancellation. |
| HS: | Okay. |
| Val: | Okay.  I'm so sorry, ma'am.  Is there anything else you wanted me to check for you? |
| HS: | No, that's it. |
| Val: | Okay. |
| HS: | So I'll have them call the first thing in the morning. |
| Val: | Okay.  That's correct, Ms. Sharma. |
| HS: | Okay. |

Val:            Thank you for your business.  You have a good night.

HS:             Uh-huh.  Bye-bye.

#15724811 v1

EXHIBIT H
PAGE 136

EXHIBIT "I"

## <u>Declaration of Darren Harvey</u>

I, Darren Harvey, being duly sworn according to law, depose and state as follows:

1.    I am over 18 years of age and have personal knowledge of the matters stated herein.

2.    I am currently employed with ADT Security Services, Inc. ("ADT") as a residential service technician for the Modesto, California area.

3.    My duties at ADT include the installation, repair and activation of ADT alarm equipment.

4.    On February 22, 2012, I was dispatched to the residence of Hem Sharma, located at 1809 Langton Lane, Modesto, CA 95350-0454 to reconnect an alarm system.

5.    Upon arrival at the residence I saw a male in plain clothes walking out of the door with a Simon XT panel.

6.    A female, Rangana Sharma, showed me into the residence.  She stated she was the daughter of Hem Sharma.

7.    Ms. Sharma explained that the person who just left was removing an alarm system that was installed by someone who pretended to be with ADT.  Ms. Sharma stated a sales representative had visited her father a couple of days before wearing items with ADT on it and deceived him into signing a contract with another company.

8.    Ms. Sharma presented the contract to me.  Upon reviewing the contract, I saw the alarm company was Skyline Security Management, located at 8011 Firestone Blvd, Downey, CA.  The representative's name was Addison Ammo, phone number (209) 499-6268, located at 2009 Elwin Way, Modesto, CA 95350.  I reviewed the license information on the contract and noted there was no California license listed.

1

EXHIBIT I
PAGE 137

9.      While at the residence I contacted my manager, Naser Rashid, and relayed the information to him.

10.     I installed a Simon 3 panel and reconnected it to the ADT alarm system.

11.     I did not charge the customer for this visit.

I understand that false statements made herein are made subject to the penalties of Title 28 U.S.C. §1746.

Darren Harvey          2·28·12

EXHIBIT I
PAGE 138

EXHIBIT "J"

### Declaration of Naser Rashid

I, Naser Rashid, being duly sworn according to law, depose and state as follows:

1.     I am over 18 years of age and have personal knowledge of the matters stated herein.

2.     I am currently employed with ADT Security Services, Inc. ("ADT") as a service team manager for the Modesto and Pleasanton, California area.

3.     My duties at ADT include the management of residential and small business service technicians and providing technical and customer support when service issues on residential and small business accounts arise.

4.     On February 22, 2012, I received a call from Darren Harvey, one of the service technicians I manage.  Mr. Harvey reported to me that a customer, Hem Sharma, had been scammed.

5.     The customer's daughter had reported to Mr. Harvey that one or more persons had visited the residence a couple days before pretending to be with ADT but, as evidenced by the contract they had Mr. Sharma sign, they were really with Skyline Security Management.

6.     Mr. Harvey read information on the contract to me, including the representative's name and phone number: Addison Ammo, (209) 499-6268.

7.     I called (209) 499-6268 and a male answered, "This is Addison".  I told Addison, "Sorry, I was trying to reach ADT".  Addison responded, "I am ADT".

8.     I proceeded to ask Addison about the installation and cost of an alarm system.  Throughout the conversation, Addison pretended to be with ADT.

9.     Addison Ammo is not an ADT employee.

1

EXHIBIT J
PAGE 139

I understand that false statements made herein are made subject to the penalties of Title 28 U.S.C. §1746.

_Naser M Rashid_   3-5-2012

Naser Rashid

EXHIBIT J
PAGE 140

# EXHIBIT "K"

## DECLARATION OF JOE O'CONNELL

I, Joe O'Connell being duly sworn according to law, depose and say that I am Vice President of Residential Sales for ADT Security Services, Inc. ("ADT") and am authorized to execute this Declaration on its behalf.

I certify, under penalty of perjury, that the foregoing facts stated it this Declaration are true and correct to the best of my knowledge, information and belief.

1. Skyline Security Management, Inc. ("Skyline"), Edwin Arroyave, Victor Marquez, Ali Batiara, and Addison Ammo are not and have never been associated with or affiliated with ADT, nor have they ever been authorized to use ADT's trademarks.

2. ADT is <u>not</u> going out of business.

3. ADT is <u>not</u> changing its name to Skyline.

4. Skyline is <u>not</u> working for or on behalf of ADT.

5. Skyline is <u>not</u> an authorized ADT security services provider.

6. Skyline is <u>not</u> a broker for ADT.

7. ADT is <u>not</u> endorsing Skyline or encouraging its customers to sign with Skyline.

8. ADT is <u>not</u> "handing over" any accounts to Skyline.

9. Skyline is <u>not</u> "taking over" any accounts or technical support services for ADT and has never done so.

10. Skyline is <u>not</u> authorized to provide an "update" or "upgrade" to any ADT customer's current security system.

11. The statements made by Skyline and its representatives, employees and/or representatives about ADT as set forth in the Affidavits and Declarations attached to the Complaint are <u>false</u>.

EXHIBIT K
PAGE 141

I understand that false statements made herein are subject to the penalties of Title 28 U.S.C. §1746.

Dated: 3/29/2012

EXHIBIT K
PAGE 142